**CV11-5839**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ALEXANDER MARCHAK, HOLLY MARCHAK, ANN MARIE
DELIA, ESTATE OF WILLIAM DELIA, SHIRLEY ABRAMS,
LYNNE BELAIEF, JANICE BINI, CONNIE BOCCIA, FRANK
BOCCIA, MARGOT BOCCIA, THOMAS BOGAN, JOAN
BOGAN, GIULIANA BONA, MARY CAMERON, ANDREA
CHIARAPPA, YOLANDA CHIARAPPA, OLIVER COLONNA,
RITA CORREALE, DOREEN DALY, FRANCIS DALY,
LORRAINE DALY, ADELIA DEL TRECCO, DOMENIC
DeSANTIS, LINDA DeSANTIS, LORENZO DeSANTIS, MARIA
DeSANTIS, ADELE DISARMATO, ELVIRA FEDERICO,
SILVIO FEDERICO, ONELIA FEDERICO, CARL GAMBELLO,
SANDRA FERRARO, CAROLE GAMBELLO, BARBARA
GREBIN, STEPHANIE GREBIN, LUDVIG HAUGEDAL,
DOMINICK IOCCO, MARIA LoCASCIO, JOSEPH
LoVECCHIO, JANET LoVECCHIO, EDWARD MAHONEY,
TARA MAHONEY, LEONARD MANDATO, JOSEPH
MANNANICE, DOREEN MANNANICE, BRIAN MARCHESE,
MICHAEL MARCHESE, BARBARA McINTOSH, LIDIA
OHRYN, MARIKA OHRYN, PETER OHRYN, OHRYN
FAMILY TRUST, INGA POSLITUR, JOSEPH RUDIS, IRENE
RUDIS, LOIS SARLI-KREBS, MYRON SECH, LISA CAPRARA
SECH, ANTHONY SECH BY HIS MOTHER AND NATURAL
GUARDIAN LISA CAPRARA SECH, MARIA SHAW, ROBERT
SWEENEY, VERONICA SWEENEY, TARA SROKA, DYLAN
TARRAZI, CAROLINE TARAZZI, FREDERICK TARAZZI,
GREGORY TARAZZI, VICTOR TARAZZI JR., GEORGE
TARAZZI, KATHLEEN TARAZZI, MANUEL TUTUNJIAN,
SANDRA WETRICH TRUST, MAUREEN ZAWISLAK, AND
ALICE ZINNA,

Plaintiffs,

v.

JP MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A.,
M&T BANK CORPORATION, HSBC NORTH AMERICA INC.,
d/b/a HSBC BANK USA, N.A., and TD BANK, N.A., AS
SUCCESSOR IN INTEREST TO COMMERCE BANK,

Defendants.

---

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 1 - 2011 ★

BROOKLYN OFFICE

**NO SUMMONS ISSUED**

**NOTICE OF**
**REMOVAL**

Case No. _____

GARAUFIS, J.
MANN, M.J.

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendants TD Bank, N.A. ("TD Bank"), JPMorgan

Chase Bank, N.A. ("Chase Bank"), and JPMorgan Chase & Co. (collectively the "Defendants")

by and through their respective undersigned counsel, submit this Notice of Removal pursuant to

28 U.S.C. § 1331, 1441, 1446, and 15 U.S.C. §§ 77p(c) and 78bb(f)(2), removing this action

from the Supreme Court of the State of New York, Kings County, where it is pending, to the

United States District Court for the Eastern District of New York, which is the district embracing

the place where the action is pending. In support of this Notice of Removal, the Defendants state

the following:

1.      On or about October 27, 2011, Plaintiffs filed a Verified Complaint against the

Defendants in the Supreme Court of the State of New York, Kings County, styled *Alexander*

*Marchak et al. v. JPMorgan Chase & Co. et al.*, Index No. 500984/2011 (the "Complaint"). In

accordance with 28 U.S.C. § 1446(a), a copy of "all process, pleadings, and orders" received by

the Defendants are attached hereto as Exhibit A.

2.      Defendant JPMorgan Chase Bank, N.A. was personally served a true copy of the

Summons and Verified Complaint on or around November 3, 2011, and an affidavit of service

was returned on November 10, 2011. Defendant TD Bank, N.A. was personally served a true

copy of the Summons and Verified Complaint on or around November 7, 2011, and an affidavit

of service was returned on November 21, 2011. Defendant JPMorgan Chase & Co. was served a

true copy of the Summons and Verified Complaint at the Office of the Secretary of State of the

State of New York on or around November 14, 2011, and an affidavit of service was returned on

November 17, 2011. Defendant HSBC North America Inc. d/b/a HSBC Bank USA, N.A. was

served a true copy of the Summons and Verified Complaint at the Office of the Secretary of

2

State of the State of New York on or around November 14, 2011, and an affidavit of service was returned on November 17, 2011. Defendant M&T Bank Corporation was served a true copy of the Summons and Verified Complaint at the Office of the Secretary of State of the State of New York on or around November 14, 2011, and an affidavit of service was returned on November 17, 2011.

3.    Removal of this Complaint is timely under 28 U.S.C. § 1446(b) as to the Defendants because this Notice of Removal was filed within thirty days after the date on which service was effected. 28 U.S.C. § 1446(b); *see Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 346 (1999).

4.    Defendants HSBC North America Inc. d/b/a HSBC Bank USA, N.A. and M&T Bank Corporation consent to the removal of this action. Attached hereto as Exhibit B is the written consent of HSBC North America Inc. d/b/a HSBC Bank USA, N.A. Attached hereto as Exhibit C is the written consent of M&T Bank Corporation.

5.    In accordance with 28 U.S.C. § 1446(d), Defendants will provide a copy of this Notice of Removal to the clerk of the Supreme Court of the State of New York, Kings County. Attached hereto as Exhibit D is a copy of the Notice to be filed with the Supreme Court. Also, in accordance with 28 U.S.C. § 1446(d), Defendants will serve written notice of the filing of this Notice of Removal upon Plaintiffs through their attorney of record, Nicholas I. Timko of the law firm Kahn Gordon Timko & Rodriques, P.C., at 20 Vesey Street #300 New York, NY 10007.

6.    No statement or omission in this Notice shall be deemed a waiver of any defense or an admission of any of the allegations made or damages sought in the Complaint.

3

## INTRODUCTION

7.     In their Complaint, Plaintiffs allege that each of the Defendants violated "Federal legislation and regulations" governing the maintenance of customer accounts at depository institutions, including the Bank Secrecy Act of 1970 (the "Bank Secrecy Act"), the USA PATRIOT Act of 2001 (the "Patriot Act"), sundry regulations promulgated by the United States Office of the Comptroller of the Currency, and unspecified federal "know your customer" and "Anti Money Laundering" ("AML") requirements. Compl. ¶¶ 2-11. Plaintiffs allege that by failing to observe these federally mandated duties, the Defendants "facilitated and enabled" a fraudulent securities scheme perpetrated by Philip Barry through his investment advisory firms. Compl. ¶ 1. Plaintiffs set out seven causes of action against the Defendants under New York State common law seeking damages allegedly incurred as a result of Barry's fraudulent scheme.

8.     Plaintiffs' action is removable to this Court pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77, *et seq.* Removal pursuant to SLUSA is appropriate because Plaintiffs' lawsuit is a "covered class action" within the meaning of SLUSA and because their Complaint concerns allegedly fraudulent conduct undertaken in connection with the purchase or sale of "covered securities." 15 U.S.C. §§ 77p(f)(2)(A)(i)(I) and 15 U.S.C. § 77p(f)(3). Consequently, Plaintiffs' state law claims are preempted by SLUSA. 15 U.S.C. § 77bb(f)(2).

9.     In the alternative, Plaintiffs' action is removable to this Court pursuant to 28 U.S.C. §§ 1441, *et seq.* The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiffs' state law claims – predicated on alleged violations of federal law – necessarily present federal questions arising under the laws of the United States. Plaintiffs

4

cannot artfully plead causes of action so as to avoid the jurisdiction of the United States district courts by omitting necessary federal questions.

10.     As more fully set forth below, this case is properly removed to this Court because this Court has jurisdiction pursuant to the Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p(c) and 78bb(f)(2), and federal question jurisdiction, 28 U.S.C. §§ 1441, *et seq.*, and 1331.

## THE SECURITIES FRAUD

11.     Plaintiffs' Complaint stems from damages allegedly sustained at the hands of Philip Barry and his investment advisory firms, Leverage Group, Leverage Option Management Co., Inc., and North American Financial Services (collectively the "Leverage Group"). Over approximately thirty years Barry, through the Leverage Group, is said to have perpetrated a large-scale securities fraud, which operated as a Ponzi scheme, in which he bilked some 800 investors out of approximately $40 million by selling securities in Leverage investment funds.

12.     On or about September 8, 2009, the United States Securities and Exchange Commission ("SEC") filed a Complaint against Barry and the Leverage Group alleging that from January 1978 through February 2009 Barry ran a $40 million Ponzi scheme in which he guaranteed investors high returns from safe, liquid investments. Complaint, *SEC v. Barry*, 1:09-cv-03860-FB-VVP, ¶ 1 (E.D.N.Y. Sept. 8, 2009) ("SEC Compl."). According to the SEC, in connection with the fraudulent scheme "Barry systematically misappropriated and misused millions of dollars of investor funds." *Id.* ¶ 3. The SEC charged Barry with securities fraud under Section 17(a) the Securities Act of 1933 and Section 10(b) the Securities Exchange of 1934 and Rule 10b-5 thereunder.

13. On or about September 23, 2009, Senior Judge Frederic Block entered orders in the SEC enforcement matter granting consent judgments against Barry and the Leverage Group. In connection with the same, Barry consented to the issuance of an SEC order barring him from association with an investment advisor.

14. On or about December 10, 2009, the United States Attorney for the Eastern District of New York charged Barry in a twenty-two count indictment alleging one count of securities fraud and twenty-one counts of mail fraud. Indictment, 1:09-cr-00833-RJD-1, ¶¶ 10-11, 12-13 (E.D.N.Y. Sept. 1, 2009) ("DOJ Indictment"). On or about November 14, 2010, the United States Attorney for the Eastern District of New York filed a Superseding Indictment charging Barry with one count of securities fraud and thirty-three counts of mail fraud. Superseding Indictment, 1:09-cr-00833-RJD-1, ¶¶ 10-11, 12-13 (E.D.N.Y. Nov. 14, 2010) ("Superseding Indictment"). According to the Superseding Indictment, "between January 1978 and February 2009, Barry executed a scheme to defraud investors in the Leverage Group whereby Barry paid returns to the Leverage Group investors from existing investors' deposits or money paid by new investors." *Id.* ¶ 4. Barry allegedly "told most investors that the Leverage Group invested only in stock options." *Id.* ¶ 5.

15. In November 2010, a federal jury convicted Barry after trial on all thirty-four criminal counts charging Barry with operating a long-standing and large-scale securities fraud. On or about June 17, 2011, Senior Judge Raymond J. Dearie ordered Barry to serve twenty years imprisonment, followed by three years supervised release, and to pay restitution in the amount of $24,146,540.

## PLAINTIFFS' VERIFIED COMPLAINT

16.     On or about October 27, 2011, Plaintiffs filed a Verified Complaint in the

Supreme Court of the State of New York, Kings County, against five Defendants. The group of

named Plaintiffs is comprised of seventy-four individuals and trusts who invested with Barry and

the Leverage Group. Each of the named Plaintiffs allegedly suffered monetary damages in

connection with the securities fraud orchestrated by Barry through the Leverage Group.

17.     In their Complaint, Plaintiffs contend that Barry and the Leverage Group "needed

[*sic*] bank account[s]" to carry out the fraudulent scheme. Compl. ¶ 96. Through the provision

of routine banking services, Plaintiffs allege the Defendants "facilitated and enabled" the

securities fraud scheme carried out by Barry and the Leverage Group. *Id.* at ¶ 95. In support of

this contention, Plaintiffs argue that in violation of federal and state banking regulations and

standard industry practice, the Defendants knew or consciously avoided knowledge that Barry

was perpetrating a fraudulent securities scheme and were, therefore, complicit in the fraud.


## REMOVAL IS APPROPRIATE UNDER SLUSA

18.     The United States District Court for the Eastern District of New York has

jurisdiction over this action pursuant to SLUSA, 15 U.S.C. §§ 77p(c) and 78bb(f)(2), because

Plaintiffs' lawsuit is a "covered class action" that involves "covered securities" and alleges

misrepresentations or omissions of material facts and manipulative or deceptive conduct in

connection with the purchase or sale of such "covered securities." Further, Plaintiffs' causes of

action that arise under state law are preempted by SLUSA.

19.     SLUSA's removal provision provides:

> Any covered class action brought in any State court involving a covered
> security, as set forth in subsection (b), shall be removable to the Federal

7

district court for the district in which the action is pending, and shall be subject to subsection (b).

15 U.S.C. § 77p(c); see also 15 U.S.C. § 78bb(f)(2).

20.     SLUSA's preemption provision provides:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b); see also 15 U.S.C. § 78bb(f)(1).

21.     To establish removal and preemption under SLUSA, a defendant must show that the action "(1) is a 'covered' class action; (2) that is based on state statutory or common law; (3) alleging that defendants made a 'misrepresentation or omission of a material fact' or 'used or employed any manipulative device or contrivance' 'in connection with the purchase or sale,' (4) of a 'covered security.'" *Montoya v. New York State United Teachers*, 754 F. Supp. 2d 466, 471 (E.D.N.Y. 2010) (quoting *Romano v. Kazacos*, 609 F.3d 512, 517-18 (2d Cir. 2010)); *see also* 15 U.S.C. § 77p(b)-(c); 15 U.S.C. § 78bb(f)(1)-(2).  Both federal and state law claims are removable under SLUSA; only state law claims are *preempted* by SLUSA.  *See Rubin v. Pixelplus Co.*, No. No. 06-CV-2964, 2007 U.S. Dist. LEXIS 17671, at *10-19 (E.D.N.Y. Mar. 13, 2007).

**A.     Plaintiffs' Lawsuit Is a "Covered Class Action"**

22.     "'A covered class action is a lawsuit in which damages are sought on behalf of more than [fifty] people.'" *Fisher v. Kanas*, 487 F. Supp. 2d 270, 276 (E.D.N.Y. 2007) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 83 (2006)).  Under SLUSA, the definition of "covered class action" includes:

> any single lawsuit in which--(I) damages are sought on behalf of more
> than 50 persons or prospective class members, and questions of law or fact
> common to those persons or members of the prospective class, without
> reference to issues of individualized reliance on an alleged misstatement
> or omission, predominate over any questions affecting only individual
> persons or members.

15 U.S.C. § 77p(f)(2)(A)(i)(I); 15 U.S.C. § 78bb(f)(5)(B)(i)(I).

23.     The instant Complaint identifies seventy-four plaintiffs, and is therefore covered

by SLUSA. Compl. at 1; Compl. ¶¶ 12-74. The Complaint does not distinguish between the

Plaintiffs with regard to questions of law or fact; thus there appear to be issues of law or fact

common to all seventy-four plaintiffs. *See generally* Compl. Because the Complaint includes

more than fifty plaintiffs and its questions of law or fact appear to be common to all plaintiffs,

the present action is a "covered class action" under SLUSA.

**B.     Plaintiffs' Action Involves "Covered Securities"**

24.     Under SLUSA, a "covered security" is:

> a security that satisfies the standards for a covered security specified in
> paragraph (1) or (2) of section 18(b) [15 USCS § 77r(b)] at the time during
> which it is alleged that the misrepresentation, omission, or manipulative or
> deceptive conduct occurred, except that such term shall not include any
> debt security that is exempt from registration under this title pursuant to
> rules issued by the Commission under section 4(2) [15 USCS § 77d(2)].

15 U.S.C. § 77p(f)(3); 15 U.S.C. § 78bb(f)(5)(E).

25.     The Complaint makes numerous allegations related to the purchase or sale of

securities. For example, the first paragraph states:

> [e]ach of the banks had before it the very nuts and bolts of a Ponzi
> scheme: money deposited by each bank's customer into each account to
> purportedly buy and sell *securities* - money that was obtained by that
> customer from hundreds of innocent investors - was not used to buy and
> sell *securities*, but instead was merely transferred by the customer into his
> own coffers or to redeem investments in patterns that could serve no
> legitimate business purpose.

9

Compl. ¶ 1 (emphasis added). In all, the Complaint uses the term "securities" twenty-two times. *See* Compl. ¶¶ 1, 91, 93, 99, 114, 252, 259, 264, 271, 272, 277, 282, 285, 289, 303.

26.     For removal of an action under SLUSA, "'[it] is not necessary that the purchase or sale actually transpired; *claims based on the alleged failure to buy or sell covered securities fall squarely within SLUSA's ambit.'" In re Kingate Mgmt. Litig.*, No. 09 Civ. 5386, 2011 U.S. Dist. LEXIS 41598, at \*33 n.5 (S.D.N.Y. Mar. 30, 2011) (emphasis added) (quoting *Barron v. Igolnikov*, No. 09 Civ. 4471, 2010 U.S. Dist. LEXIS 22267, at \*11 (S.D.N.Y. Mar. 10, 2010)).

27.     As described above, in September 2009 the SEC brought a complaint in this Court against Barry and the Leverage Group alleging securities violations, which resulted in a Court-approved consent judgment that charged violations under Section 17(a) of the Securities Act, and Section 10(b) of the Exchange Act of 1934 and Rule 10b-5 thereunder. *Id.* ¶¶ 40-46.

28.     Also, in December 2009 the United States Attorney for the Eastern District of New York brought criminal charges against Barry for securities violations, which resulted in a criminal conviction and a sentence of 20 years imprisonment. According to the Complaint and Indictment in that case, the securities that Barry told his investors he would invest in were stock options. *See* Complaint, 1:09-cr-00833-RJD-1, ¶¶ 5, 17, 19, 25, 29 n.9, 30 (E.D.N.Y. Sept. 1, 2009); DOJ Indictment at ¶ 5. Generally, "stock options" include the right to purchase or sell exchange-traded stock, commodities, currencies, or stock indexes for an agreed-upon price within a predetermined time period. *See* BARRON'S DICTIONARY OF FINANCIAL AND INVESTMENT TERMS 485, 684 (7th ed. 2006); *see also Kingate*, 2011 U.S. Dist. LEXIS 41598 at \*9-10, 32-33 ("options" constitute covered securities under SLUSA).

29.     Therefore, the securities that Barry promised he would buy and sell are "covered securities" under SLUSA.

C.   **Plaintiffs' Action Alleges a Misrepresentation or Omission of a Material Fact and the Use of a Manipulative or Deceptive Device in Connection with the Purchase or Sale of a Covered Security**

i.   *Misrepresentation or omission of a material fact and manipulative or deceptive conduct*

30.   "To trigger SLUSA, a complaint must allege either '(1) an explicit claim of fraud or misrepresentation (e.g., common law fraud, negligent misrepresentations, or fraudulent inducement), or (2) other garden-variety state law claims that sound in fraud.'" *Kingate*, 2011 U.S. Dist. LEXIS 41598, at *23-24 (citations omitted) (quoting *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F.Supp.2d 258, 261 (S.D.N.Y. 2004)). "'A claim sounds in fraud when, although not an essential element of the claim, the plaintiff alleges fraud as an integral part of the conduct giving rise to the claim.'" *Id.*

31.   Plaintiffs' claims for aiding and abetting fraud (Second Cause of Action), "fraud on the regulator" (Sixth Cause of Action), and common law negligence (Seventh Cause of Action) are explicit claims of fraud and/or misrepresentation. Compl. ¶¶ 255-66, 298-313, 314-18.

32.   Plaintiffs' other claims – knowing participating in a breach of trust (Count I), aiding and abetting breach of fiduciary duty (Count III), aiding and abetting conversion (Count IV), and Unjust Enrichment (Count V) – all sound in fraud because Plaintiffs allegations make clear that Barry's and the Leverage Group's fraud and misrepresentation are integral to the conduct giving rise to their claims. Compl. ¶¶ 244-54, 267-79, 280-91, 292-97. Plaintiffs repeat throughout these claims that Defendants knew or consciously chose to ignore the alleged fraud and misrepresentations of Barry and the Leverage Group. *Id.* Because "the factual allegations underlying conduct covered by SLUSA are one and the same as those alleged in support" of these claims, they too come under SLUSA. *Montoya*, 754 F. Supp. 2d at 473.

11

33.     The Complaint is replete with allegations that Barry and the Leverage Group –

who the Defendants allegedly aided and abetted – committed fraud, made misrepresentations and

omissions, and engaged in manipulative and deceptive conduct when he falsely told Plaintiffs he

would invest their money in securities. *See generally* Compl. The alleged fraud and

misrepresentations of a third party (Barry in this case) are sufficient to satisfy this element of a

SLUSA claim. *See Kingate*, 2011 U.S. Dist. LEXIS 41598, at \*32-33; *Igolnikov*, 2010 U.S.

Dist. LEXIS 22267, at \*11-13.

### ii.     *In connection with the purchase or sale of a covered security*

34.     The Supreme Court has held that to satisfy SLUSA's "in connection with"

requirement, the allegedly wrongful conduct need only "'coincide' with a securities transaction –

whether by the plaintiff or someone else.'" *Dabit*, 547 U.S. at 88. "The requisite showing, in

other words, is 'deception . . . in connection with the purchase or sale of any security, . . . not

deception of an identifiable purchaser or seller.'" *Id.* SLUSA "has been interpreted broadly by

the Supreme Court in *Dabit* to include any misrepresentation touching upon the purchase or sale

of securities." *Fisher*, 487 F. Supp. 2d at 277.

35.     Plaintiffs allege throughout the Complaint that the Defendants knew or

consciously chose to ignore the underlying fraud committed by Barry and the Leverage Group in

furtherance of a fraudulent securities scheme in which Barry manipulated investors to believe he

would invest their money in securities. *See generally* Compl. The wrongful conduct allegedly

carried out by the Defendants necessarily "coincides" with securities transactions (both actual

and promised) entered into by Barry and the Leverage Group. Because the conduct in question

coincides with the purchase or sale of a covered security, SLUSA's "in connection with"

requirement is satisfied in this matter.

36. The alleged fraud committed by Barry and the Leverage Group "is at the heart of this case." *Id.* at *32. Therefore, "Plaintiffs' claims are brought in connection with the covered securities [Barry] pretended to purchase, bringing them within SLUSA's purview." 2011 U.S. Dist. LEXIS 41598, at *32.

**D.    Plaintiffs' State Common Law Causes of Action Are Preempted by SLUSA**

37. "If a state class action satisfies all the SLUSA criteria, the defendant may remove it to federal district court and the district court must dismiss [plaintiffs' state law claims]." *Fisher*, 487 F. Supp. 2d at 276.

38. Plaintiffs plead the following state common law causes of action: knowing participation in a breach of trust; aiding and abetting fraud; aiding and abetting breach of fiduciary duty; aiding and abetting conversion; unjust enrichment; fraud on the regulator; and common law negligence. All of these claims arise under state law and are thus preempted under SLUSA. *See, e.g., Kingate*, 2011 U.S. Dist. LEXIS 41598, at *28-29 (summarizing Second Circuit cases dismissing on SLUSA grounds most of the claims presented in the instant action).

**E.    SLUSA Requires Removal of this Action**

39. As demonstrated above, all the SLUSA requirements are met in this action, and SLUSA removal is required.

**IN THE ALTERNATIVE, REMOVAL IS APPROPRIATE
BECAUSE FEDERAL QUESTIONS EXIST IN THIS CASE**

40. Alternatively, "[r]emoval is authorized by 28 U.S.C. § 1441(a) which provides, in pertinent part, that, '[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the … defendants [to the United States district court embracing

the place where the state court action is pending].'" *Toussie v. Smithtown Bancorp, Inc.*, 2011 U.S. Dist. LEXIS 32185, *16-17 (E.D.N.Y. March 28, 2011). This action is removable pursuant to the Court's jurisdiction under § 1441, *et seq.*, because it presents original federal-question jurisdiction pursuant to 28 U.S.C. § 1331." *Id.*

41.     Section 1331 bestows "federal-question jurisdiction" on United States district courts in "all civil actions arising under the Constitution, laws, or treaties of the United States.'" In *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470 (1998), the United States Supreme Court described the parameters of the "well-pleaded complaint rule," which delimits jurisdiction under § 1331: "[T]he 'well-pleaded complaint rule' ... provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet*, 522 U.S. at 474-476 (internal citations omitted) (emphasis added); *Barash v. Ford Motor Credit Corp.*, 2007 U.S. Dist. LEXIS 44641, *10 (E.D.N.Y. June 20, 2007); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "A well-pleaded complaint may raise a federal question either by (1) asserting a federal cause of action, or (2) presenting state claims that 'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Id.* at *10-11, *quoting Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005); *see also Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005).

42.     Plaintiffs' causes of action assert violations of state common law, specifically, Knowing Participation In a Breach of Trust (First Cause of Action); Aiding and Abetting Fraud (Second Cause of Action); Aiding and Abetting Breach of Fiduciary Duty (Third Cause of Action); Aiding and Abetting Conversion (Fourth Cause of Action); Unjust Enrichment (Fifth

14

Cause of Action); Fraud on the Regulator (Sixth Cause of Action); and Common Law

Negligence (Seventh Cause of Action). The foundation of Plaintiffs' entire complaint, however,

is Defendants' alleged violations of federal laws and regulations, including the Patriot Act, the

Bank Secrecy Act, guidance promulgated by the Office of the Comptroller of the Currency and

various unspecified "Federal ... legislation and rules." Plaintiffs advocate the theory that these

federal laws give rise to a duty of care owed to private parties, pursuant to which banks must

perform due diligence on their customers and implement procedures to detect and report

suspicious activities, and the breach of which gives rise to civil liability in damages. *See, e.g.,*

Compl., ¶¶ 300-12 (alleging that the Defendants failed to maintain "rigorous anti-money

laundering policies and procedures;" failed to comply with the Patriot Act and Bank Secrecy

Act; and failed to file suspicious activity reports ("SARS")); ¶ 315 (alleging that each of the

Defendants had a duty to "know its customer;" "investigate suspicious activity in the

Barry/Leverage accounts;" and "take action.")

    43.    Indeed, in crafting their causes of action, Plaintiffs make no fewer than twenty-

three references to these federal laws and regulations, as compared to seven vague mentions of

unspecified "state regulations." As a practical matter, each of Plaintiffs' state common law

causes of action seeks only to enforce duties or obligations allegedly created by and arising

directly under these federal laws. In cases where federal law predominates, federal question

jurisdiction in appropriate. *See, e.g., New York City Health and Hospitals Corp. v. WellCare of*

*New York, Inc.*, 769 F.Supp.2d 250, 257 (S.D.N.Y. 2011) ("This is not a situation where a federal

issue simply lingers in the background of a state law dominated complaint. Rather, virtually

every paragraph in the complaint makes at least passing reference to some aspect of [federal]

law.").

44.     Plaintiffs' causes of action necessarily raise disputed and substantial federal

issues, including: (i) whether the Patriot Act and Bank Secrecy Act  give rise to duties owed by

financial institutions to private parties; (ii) whether there is a private right of action under the

Patriot Act and Bank Secrecy Act, and if so, whether the conduct alleged constituted a violation

of those federal laws; and (iii) whether the filing or non-filing of a SAR may be the basis of civil

liability to private parties and, if so, whether a SAR may be disclosed by a financial institution to

defend against such liability.  For these reasons, this Court has jurisdiction over all of plaintiffs'

claims.  *See Grable & Sons Metal Products,* 545 U.S. at 314, 125 S.Ct. at 368; *Broder* 418 F.3d

at 194.

45.     Furthermore, Plaintiffs cannot avoid this Court's jurisdiction by artfully pleading

their complaint to omit necessary federal questions, particularly where, as here, federal law

would appear to preempt state law claims.  *See Rivet v. Regions Bank of Louisiana,* 522 U.S. 470

(1998) (analyzing the "well-pleaded complaint rule" and "artful pleading doctrine").

46.     TD Bank and Chase Bank are national banking associations chartered pursuant to

the National Bank Act.  Regulation of national banking associations has been substantially

occupied by federal law in the United States for over 100 years. *See Barnett Bank, N.A. v.

Nelson,* 517 U.S. 25, 32-33 (1996); Wachovia Bank. N.A. v. Burke, 414 F.3d 305, 314 (2d Cir.

2005).  The Office of the Comptroller of the Currency ("OCC") has regulatory and supervisory

power over national banking associations.  Pursuant to its regulatory mandate, the OCC has

issued regulations and guidance defining the powers a national bank may exercise without state

interference. *See e.g. Nations Bank of N.C., N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251,

256-58 (1995).

16

47.     The federal preemption doctrine precludes state law from controlling or

interfering with the operation of instrumentalities created, controlled or regulated by the federal

government, including national banking associations. *See Marquette Nat'l. Bank of Minneapolis*

*v. First of Omaha Serv. Corp.*, 439 U.S. 299, 308 (1978) (characterizing national banks as "an

instrumentalit[y] of the federal government, created for a public purpose, and as such necessarily

subject to the paramount authority of the United States"). Indeed, state regulation of national

banks is preempted wherever it "significantly interfere[s]" with the national bank's efficient

exercise of any power authorized by or incidental to the National Bank Act. *Wachovia Bank,*

*N.A. v. Burke*, 414 F.3d 305, 314 (2d Cir. 2005), *quoting Barnett Bank*, 517 U.S. at 33; *Watters*,

127 S.Ct. at 1567-68 *citing Barnett Bank*, 517 U.S. at 33-34; *see also Franklin Nat'l Bank v.*

*New York*, 347 U.S. 373, 375 (1954). Thus, "the States can exercise no control over [national

banks], nor in any wise affect their operation, except in so far as Congress may see proper to

permit." *Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 11 (2007) (alteration in original).

48.     "The artful pleading doctrine allows removal where federal law completely

preempts a plaintiff's state-law claim. ... [O]nce an area of state law has been completely pre-

empted, any claim purportedly based on that preempted state-law claim is considered, from its

inception, a federal claim, and therefore arises under federal law." *Rivet*, 522 U.S. at 474-476

(internal citation omitted). In the instant case, Plaintiffs rely on federal law in an action against

federally-regulated national banking associations. Plaintiffs' artfully pleaded Complaint

necessarily raises questions in an area where federal law completely preempts state law claims.

Thus, the matter presents federal questions that are removable to United States district court

pursuant to 28 U.S.C. § 1441, *et seq.*]

Wherefore, the Defendants respectfully requests that this action be removed to the United States District Court for the Eastern District of New York.

Dated: December 1, 2011              Respectfully submitted,
       New York, New York

*Andrea Weiss /adc*

Andrea Likwornik Weiss
1185 Avenue of the Americas
Seventeenth Floor
New York, NY 10036
Telephone: 212-308-6100
Facsimile: 212-308-8830
*Counsel for JPMorgan Chase & Co. and
JPMorgan Chase Bank, N.A.*

*Allison Charney*

Allison D. Charney
McGUIREWOODS LLP
1345 Avenue of the Americas
Seventh Floor
New York, New York 10105-0106
Telephone: 212-584-2166
Facsimile: 212-715-6279
*Counsel for TD Bank, N.A.*

Of Counsel:

Robert Plotkin
McGUIREWOODS LLP
1345 Avenue of the Americas
Seventh Floor
New York, New York 10105-0106
Telephone: 212-584-7098
Facsimile: 212-715-2150
*Counsel for TD Bank, N.A.*

Kurt Wolfe
McGUIREWOODS LLP
2001 K Street, N.W., Suite 400
Washington, D.C. 20006
Telephone: 202-857-2415
Facsimile: 202-828-3319
*Counsel for TD Bank, N.A.*

## CERTIFICATE OF SERVICE

I, Allison D. Charney, an attorney duly admitted to practice before the Eastern District of New York, hereby certify that on December 1, 2011, I caused to be served via U.S. Mail true and correct copies of this Notice of Removal upon the following parties:

Nicholas I. Timko
Kahn Gordon Timko & Rodrigues, P.C.
20 Vesey Street, #300
New York, NY 10007
*Counsel for Plaintiffs*

Louis Smith
Greenberg Traurig LLP
200 Park Avenue
P.O. Box 677
Florham Park, NJ 07932
*Counsel for Defendant HSBC Bank USA, N.A.*

Michael C. Driscoll
Vice President and Associate General Counsel
M&T Bank
One M&T Plaza, 12th Floor
Buffalo, New York 14203
*Counsel for Defendant M&T Bank Corporation*

In addition, I caused a courtesy copy to be sent by electronic mail to individuals listed above.

Dated: December 1, 2011
    New York, New York

McGUIREWOODS LLP

By: *Allison Charney*
Allison D. Charney
1345 Avenue of the Americas
Seventh Floor
New York, New York 10105-0106
Telephone: 212-584-2166
Facsimile: 212-715-6279
*Counsel for TD Bank, N.A.*

19

**Report of Full Docket:**
*Alexander Marchak et al. v. JPMorgan Chase & Co. et al.*,
<u>Index No. 500984/2011</u>

| NYSCEF Kings County Supreme Court | Document List Claim/Index#:   500984/2011 | | Created on:11/28/2011 05:56 PM |

Case Caption:   Alexander Marchak et al - v. - JPMorgan Chase & Co. et al

Judge Name:

| Doc# | Document Type/Description | Status | Date Received | Filed By |
|------|---------------------------|--------|---------------|----------|
| 1 | SUMMONS + COMPLAINT | Processed | 10/27/2011 | Timko, N. - filed by Kahn Gordon Timko & Rodrigues, P.C. |
| 2 | STATEMENT OF AUTHORIZATION FOR ELECTRONIC FILING | Processed | 10/27/2011 | Timko, N. - filed by Kahn Gordon Timko & Rodrigues, P.C. |
| 3 | AFFIDAVIT Affidavit for JP Morgan Chase Bank | Processed | 11/10/2011 | Timko, N. - filed by Aetna Judicial Service Inc |
| 3-1 | STATEMENT OF AUTHORIZATION FOR ELECTRONIC FILING | Processed | 11/10/2011 | Timko, N. - filed by Aetna Judicial Service Inc |
| 4 | AFFIDAVIT Affidavit for JP Morgan Chase & Co | Processed | 11/17/2011 | Timko, N. - filed by Aetna Judicial Service Inc |
| 5 | AFFIDAVIT Affidavit for HSBC North America Inc. | Processed | 11/17/2011 | Timko, N. - filed by Aetna Judicial Service Inc |
| 6 | AFFIDAVIT Affidavit M&T Bank Corp. | Processed | 11/17/2011 | Timko, N. - filed by Aetna Judicial Service Inc |
| 7 | AFFIRMATION/AFFIDAVIT OF SERVICE Def. TD Bank | Processed | 11/21/2011 | Timko, N. - filed by Kahn Gordon Timko & Rodrigues, P.C. |

**Summons and Complaint**

FILED: KINGS COUNTY CLERK 10/27/2011

NYSCEF DOC. NO. 1

INDEX NO. 500984/2011

RECEIVED NYSCEF: 10/27/2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------------X

ALEXANDER MARCHAK, HOLLY MARCHAK, ANN
MARIE DELIA, ESTATE OF WILLIAM DELIA, SHIRLEY
ABRAMS, LYNNE BELAIEF, JANICE BINI, CONNIE
BOCCIA, FRANK BOCCIA, MARGOT BOCCIA, THOMAS
BOGAN, JOAN BOGAN, GIULIANA BONA, MARY
CAMERON, ANDREA CHIARAPPA, YOLANDA
CHIARAPPA, OLIVER COLONNA, RITA CORREALE,
DOREEN DALY, FRANCIS DALY, LORRAINE DALY,
ADELIA DEL TRECCO, DOMENIC DeSANTIS, LINDA
DeSANTIS, LORENZO DeSANTIS, MARIA DeSANTIS, ADELE
DISARMATO, ELVIRA FEDERICO, SILVIO FEDERICO,
ONELIA FEDERICO, CARL GAMBELLO, SANDRA
FERRARO, CAROLE GAMBELLO, BARBARA GREBIN,
STEPHANIE GREBIN, LUDVIG HAUGEDAL, DOMINICK
IOCCO, MARIA LoCASCIO, JOSEPH LoVECCHIO, JANET
LoVECCHIO, EDWARD MAHONEY, TARA MAHONEY,

LEONARD MANDATO, JOSEPH MANNANICE, DOREEN
MANNANICE, BRIAN MARCHESE, MICHAEL MARCHESE,
BARBARA McINTOSH, LIDIA OHRYN, MARIKA OHRYN,
PETER OHRYN, OHRYN FAMILY TRUST, INGA POSLITUR,
JOSEPH RUDIS, IRENE RUDIS, LOIS SARLI-KREBS, MYRON
SECH, LISA CAPRARA SECH, ANTHONY SECH BY HIS
MOTHER AND NATURAL GUARDIAN LISA CAPRARA
SECH, MARIA SHAW, ROBERT SWEENEY, VERONICA
SWEENEY, TARA SROKA, DYLAN TARRAZI, CAROLINE
TARAZZI, FREDERICK TARAZZI, GREGORY TARAZZI,
VICTOR TARAZZI, JR., GEORGE TARAZZI, KATHLEEN
TARAZZI, MANUEL TUTUNJIAN, SANDRA WETRICH
TRUST, MAUREEN ZAWISLAK, AND ALICE ZINNA,

Plaintiffs,

-against-

JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A.,
M&T BANK CORPORATION, HSBC NORTH AMERICA INC.,
d/b/a HSBC BANK USA, N.A., and TD BANK, N.A., AS
SUCCESSOR IN INTEREST TO COMMERCE BANK,

Defendants.

------------------------------------------------------------------X

E-Filing Case

Index No.

Plaintiffs designate
KINGS County as the
place of trial

## SUMMONS

The basis of venue is
the residences of
many of the plaintiffs

To the above-named Defendants:

**You are hereby summoned** to answer the Verified Complaint in this action and to serve a copy of your answer or, if the Verified Complaint is not served with this Summons, to serve a Notice of Appearance, on the Plaintiffs' Attorneys within 20 days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Verified Complaint.

Dated: New York, New York
October 27, 2011

Kahn Gordon Timko & Rodriques, P.C.

By: _____
Nicholas I. Timko
Attorneys for Plaintiffs
20 Vesey Street – Suite 300
New York, New York 10007
(212) 233-2040

Defendants' Addresses:

1. JPMorgan Chase & Co. – 270 Park Avenue (38th Floor), New York, New York 10017
2. JPMorgan Chase Bank, N.A. – 270 Park Avenue (38th Floor), New York, N.Y. 10017
2. M&T Bank Corporation – One M&T Plaza, Buffalo, New York
3. HSBC North America, Inc., d/b/a HSBC Bank USA, N.A. – One HSBC Center, Buffalo, N.Y.
4. TD Bank, N.A. – 1701 Route 70 East, Cherry Hill, New Jersey

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------X

ALEXANDER MARCHAK, HOLLY MARCHAK, ANN
MARIE DELIA, ESTATE OF WILLIAM DELIA, SHIRLEY
ABRAMS, LYNNE BELAIEF, JANICE BINI, CONNIE
BOCCIA, FRANK BOCCIA, MARGOT BOCCIA, THOMAS
BOGAN, JOAN BOGAN, GIULIANA BONA, MARY
CAMERON, ANDREA CHIARAPPA, YOLANDA
CHIARAPPA, OLIVER COLONNA, RITA CORREALE,
DOREEN DALY, FRANCIS DALY, LORRAINE DALY,
ADELIA DEL TRECCO, DOMENIC DeSANTIS, LINDA
DeSANTIS, LORENZO DeSANTIS, MARIA DeSANTIS, ADELE
DISARMATO, ELVIRA FEDERICO, SILVIO FEDERICO,
ONELIA FEDERICO, CARL GAMBELLO, SANDRA
FERRARO, CAROLE GAMBELLO, BARBARA GREBIN,
STEPHANIE GREBIN, LUDVIG HAUGEDAL, DOMINICK
IOCCO, MARIA LoCASCIO, JOSEPH LoVECCHIO, JANET
LoVECCHIO, EDWARD MAHONEY, TARA MAHONEY,
LEONARD MANDATO, JOSEPH MANNANICE, DOREEN
MANNANICE, BRIAN MARCHESE, MICHAEL MARCHESE,
BARBARA McINTOSH, LIDIA OHRYN, MARIKA OHRYN,
PETER OHRYN, OHRYN FAMILY TRUST, INGA POSLITUR,
JOSEPH RUDIS, IRENE RUDIS, LOIS SARLI-KREBS, MYRON
SECH, LISA CAPRARA SECH, ANTHONY SECH BY HIS
MOTHER AND NATURAL GUARDIAN LISA CAPRARA
SECH, MARIA SHAW, ROBERT SWEENEY, VERONICA
SWEENEY, TARA SROKA, DYLAN TARRAZI, CAROLINE
TARAZZI, FREDERICK TARAZZI, GREGORY TARAZZI,
VICTOR TARAZZI, JR., GEORGE TARAZZI, KATHLEEN
TARAZZI, MANUEL TUTUNJIAN, SANDRA WETRICH
TRUST, MAUREEN ZAWISLAK, AND ALICE ZINNA,

                           Plaintiffs,

          -against-

JP MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A.,
M&T BANK CORPORATION, HSBC NORTH AMERICA INC.,
d/b/a HSBC BANK USA, N.A., and TD BANK, N.A., AS
SUCCESSOR IN INTEREST TO COMMERCE BANK,

                          Defendants.

-------------------------------------------------------------------X

E-Filing Case

Index No.

**VERIFIED
COMPLAINT**

Plaintiffs, by their attorneys Kahn Gordon Timko & Rodriques, P.C., as and for their Verified Complaint against defendants, allege as follows:

## INTRODUCTION

1.　These actions concern the repeated and egregious conduct of financial institutions that facilitated and enabled a substantial financial fraud that was being conducted with their knowledge, but chose to turn a blind eye to it and were, therefore, throughly complicit in it. But there is more to this story than banks who knew or should have known of the fraud. Each of the banks had before it the very nuts and bolts of a Ponzi scheme: money deposited by each bank's customer into each account to purportedly buy and sell securities – money that was obtained by that customer from hundreds of innocent investors – was not used to buy and sell securities, but instead was merely transferred by the customer into his own coffers or to redeem investments in patterns that could serve no legitimate business purpose.

2.　We have a rule in our society – banks have a duty, pursuant to Federal and State legislation and regulations, to know their customers and to monitor their customers' account activity. The reason for this rule could not be more simple. If the public is to have any faith or confidence in the banks and the banking system, the banks must ensure that their depositors are not misusing the financial system to commit criminal acts.

3.　Federal legislation and regulations have long required banks to have an Anti Money Laundering program ("AML"). One element of these programs is monitoring customer account activity in order to detect possible fraud, money laundering, or other improper activity. These requirements were first imposed by the Bank Secrecy Act of 1970("BSA") and federal banking regulations. 31 U.S.C. §5311; 12 C.F.R. §208.63. All of the federal banking agencies have

-2-

substantially identical requirements. Thus, banks such as those being sued herein, under the supervision of the Office of the Comptroller of the Currency ("OCC") would have the same obligations. The Patriot Act, enacted into law in 2001, reinforced these obligations and underscored the importance of implementing robust detection systems to ensure that money launderers and terrorists would not be able to use the United States financial system to further their crimes.

4. One purpose of these requirements is to ensure that banks, which are often in the best position to identify potential illegal activity, will closely observe the transactions taking place in their clients' accounts. The legislation and regulations also provide guidance to banks and other financial institutions regarding how to best achieve that goal and what actions to take once suspicious activity is identified.

5. Section 352 of the Patriot Act and the banking regulations require financial institutions to institute an AML program that includes four elements: (1) designation of an individual or individuals responsible for managing BSA compliance; (2) a system of policies, procedures and internal controls to ensure ongoing compliance; (3) training for appropriate personnel; and (4) independent testing of compliance. 12 C.F.R. §208.63.

6. Financial institutions must also fully understand the business in which their customers are engaged. This duty, referred to as the responsibility to "know your customer" ("KYC"), is critical to determining what activity is suspicious (12 C.F.R. §208.62). Institutions viewing account activity need a baseline against which to distinguish account activity that may be normal for a particular industry from account activity that might suggest an illegal enterprise. The KYC duty also pre-dated the Patriot Act. Not only was it suggested by such guidelines as the Federal Reserve's BSA Examination Manual of 1995 and Supervisory Letter on Private Banking Activities,

-3-

SR-97-19 (SUP), but it was standard industry practice.

7.     This regulatory guidance directed banks, including the defendants herein, to perform site visits to their clients, obtain and review financial statements to corroborate the sources of the clients' wealth, and to review media reports regarding their clients.

8.     It was also standard industry practice for financial institutions to perform KYC on their clients. Many financial institutions have entire departments devoted to this one task and to making sure that KYC is performed thoroughly and is constantly monitored and recorded.

9.     Upon information and belief, each of the defendant banks herein had KYC departments at all times that their customer who orchestrated and carried out the Ponzi scheme maintained and operated accounts at each of those banks.

10.     While each of the defendants may have created AML and KYC programs that facially met the requirements of the Patriot Act and related regulations, those programs were not effectively executed and either failed to discover the suspicious and fraudulent nature of the ir customer's business, or simply chose to bury their heads in the sand as to same.

11.     Moreover, if their customer's large transactions that did not jibe with any legitimate business purpose triggered any warnings, each of the defendant banks suppressed those warnings as the drive for fees and profits became a substitute for common sense, ethics and legal obligations.

### THE PARTIES

12.     Plaintiffs Alexander Marchak and Holly Marchak are natural persons and husband and wife and reside at 10 Barrister Drive, Holmdel, New Jersey.

13. ·    Plaintiff Ann Marie Delia is a natural person who resides at 622 79th Street, Brooklyn, New York.

-4-

14      Plaintiff Estate of William Delia, by Ann Marie Delia, Executrix, is a New York Estate with an address at 622 70th Street, Brooklyn, New York.

15.      Plaintiff Shirley Abrams is a natural person who resides at 35 Ratchford Street, Quincy, Massachusetts.

16.      Plaintiff Lynne Belaief is a natural person who resides at 600 West 166th Street, New York, New York.

17.      Plaintiff Janice Bini is a natural person who resides at 9 Calalou Court, Toms River, New Jersey.

18.      Plaintiffs Connie Boccia and Frank Boccia are natural persons and husband and wife at reside at 1843 Gerritsen Avenue, Brooklyn, New York.

19.      Plaintiff Margot Boccia is a natural person who resides at 1843 Gerritsen Avenue, Brooklyn, New York.

20.      Plaintiffs Thomas and Joan Bogan are natural persons and husband and wife and reside at 7811 Eleventh Avenue, Brooklyn, New York.

21.      Plaintiff Giuliana Bona is a natural person who resides at 32 Manly Place, New Hyde Park, New York.

22.      Plaintiff Mary Cameron is a natural person who resides at 60 Sutton Place South, New York, New York.

23.      Plaintiffs Andrea Chiarappa and Yolanda Chiarappa are natural persons and husband and wife and reside at 12A Sycamore Avenue, Bethpage, New York.

24.      Plaintiff Oliver Colonna is a natural person who resides at 17 Sheridan Avenue, Staten Island, New York.

25.     Plaintiff Rita Correale is a natural person who resides at 404 Medford Street, Malden, Massachusetts.

26.     Plaintiff Doreen Daly is a natural person who resides at 168 Bay Ridge Avenue, Brooklyn, New York.

27.     Plaintiff Francis Daly is a natural person who resides at 168 Bay Ridge Avenue, Brooklyn, New York.

28.     Plaintiff Lorraine Daly is a natural person who resides at 168 Bay Ridge Avenue, Brooklyn, New York.

29.     Plaintiff Adelia DelTrecco is a natural person who resides at 17 Constitution Road, Stoneham, Massachusetts.

30.     Plaintiff Domenic DeSantis is a natural person who resides at 4704 Ashton Court, Tampa, Florida.

31.     Plaintiff Linda DeSantis is a natural person who resides at 53 Poole Street, Medford, Massachusetts.

32.     Plaintiffs Lorenzo DeSantis and Maria DeSantis are natural persons and husband and wife and reside at 53 Poole Street, Medford, Massachusetts.

33.     Plaintiff Adele Disarmato is a natural person who resides at 1602 Deer hollow Drive, Toms River, New Jersey.

34.     Plaintiff Elvira Federico is a natural person who resides at 19 Sixth Street, Medford, Massachusetts.

35.     Plaintiffs Silvio Federico and Onelia Federico are natural persons and husband and wife and reside at 19 Sixth Street, Medford, Massachusetts.

-6-

36.     Plaintiff Carl Gambello is a natural person who resides at 9101 Shore Road, Brooklyn, New York.

37.     Plaintiff Sandra Ferraro is a natural person who resides at 32 Manly Place, New Hyde Park, New York.

38.     Plaintiff Carole Gambello is a natural person who resides at 9323 Shore Road, Brooklyn, New York.

39.     Plaintiff Barbara Grebin is a natural person who resides at 260 65th Street, Brooklyn, New York.

40.     Plaintiff Stephanie Grebin is a natural person who resides at 260 65th Street, Brooklyn, New York.

41.     Plaintiff Ludvig Haugedal is a natural person who resides at 760 67th Street, Brooklyn, New York.

42.     Plaintiff Dominicl Iocco is a natural person who resides at 21-49 73rd Street, Jackson Heights, New York.

43.     Plaintiff Maria LoCascio is a natural person who resides at 260 65th Street, Brooklyn, New York.

44.     Plaintiffs Joseph LoVecchio and Janet LoVecchio are natural persons and husband and wife and reside at 1051 65th Street, Brooklyn, New York.

45.     Plaintiffs Edward Mahoney and Tara Mahoney are natural persons and husband and wife and reside at 323 Retford Avenue, Staten Island, New York.

46.     Plaintiff Leonard Mandato is a natural person who resides at 383 Hempstead Avenue, Rockville Center, New York.

-7-

47.     Plaintiffs Joseph Mannanice and Doreen Mannanice are natural persons and husband and wife and reside at 25 West First Street, Freeport, New York.

48.     Plaintiff Brian Marchese is a natural person who resides at 1210 Massachusetts Avenue NW, Washington, D.C.

49.     Plaintiff Michael Marchese is a natural person who resides at 2652 Cropsey Avenue, Brooklyn, New York.

50.     Plaintiff Barbara McIntosh is a natural person who resides at 35 Joseph Lane, Staten Island, New York.

51.     Plaintiff Lidia Ohryn is a natural person who resides at 442 53rd Street, Brooklyn, New York.

52.     Plaintiff Marika Ohryn is a natural person who resides at 442 53rd Street, Brooklyn, New York.

53.     Plaintiff Peter Ohryn is a natural person who resides at 442 53rd Street, Brooklyn, New York.

54.     Plaintiff Ohryn Family Trust, by Marika Ohryn Trustee, is a New York trust with an address at 442 53rd Street, Brooklyn, New York.

55.     Plaintiff Inga Poslitur is a natural person who resides at 1861 McAllister Street, San Francisco, California.

56.     Plaintiffs Joseph Rudis and Irene Rudis are natural persons and husband and wife and reside at 642 51st Street, Brooklyn, New York.

57.     Plaintiff Lois Sarli-Krebs is a natural person who resides at 302 96th Street, Brooklyn, New York.

-8-

58.     Plaintiff Myron Sech is a natural person who resides at 18 Northgate Drive, Greenlawn, New York.

59.     Plaintiff Lisa Caprara Sech is a natural person who resides at 18 Northgate Drive, Greenlawn, New York.

60.     Plaintiff Anthony Sech, by his mother and natural guardian Lisa Caprara Sech, is a natural person who resides at 18 Northgate Drive, Greenlawn, New York.

61.     Plaintiff Maria Shaw is a natural person who resides at 14 bay Berry Ridge, Roslyn, New York.

62.     Plaintiffs Robert Sweeney and Veronica Sweeney are natural persons and husband and wife and reside at 760 67th Street, Brooklyn, New York.

63.     Plaintiff Tara Sroka is a natural person who resides at 420 East 23rd Street, New York, New York.

64.     Plaintiff Dylan Tarrazi is a natural person who resides at 4 Janine Place, Hazlet, New Jersey.

65.     Plaintiff Caroline Tarrazi is a natural person who resides at 9 Calalou Court, Toms River, New Jersey.

66.     Plaintiff Frederick Tarrazi is a natural person who resides at 913 Stafford Avenue, Staten Island, New York.

67.     Plaintiff Gregory Tarrazi is a natural person who resides at 4 Janine Place, Hazlet, New Jersey.

68.     Plaintiff Joseph Tarrazi is a natural person who resides at 269 Varick Street, jersey City, New Jersey.

69. Plaintiff Victor Tarrazi, Jr. Is a natural person who resides at 1726 Cedar Crest Road, Bound Brook, New Jersey.

70. Plaintiffs George Tarrazi and Kathleen Tarrazi are natural persons who reside at 225 South Peninsula Drive, Central City, Pennsylvania.

71. Plaintiff Manuel Tutunjian is a natural person who resides at 1725 East 36th Street, Brooklyn, New York.

72. Plaintiff Sandra Wetrich Trust, by Sandra Wetrich Trustee, is a California Trust with an address at 18009 Incline Place, Hayward, California.

73. Plaintiff Maureen Zawislak is a natural person who resides at 35-31 85th Street, Jackson Heights, New York.

74. Plaintiff Alice Zinna is a natural person who resides at 1536 Portsmouth Lake Drive, Brandon, Florida.

75. Upon information and belief, defendant JPMorgan Chase & Co. was and still is a corporation organized and existing under and by virtue of the laws of the Delaware that is authorized to do business in the State of New York with a principal executive office at 270 Park Avenue (38th Floor), New York, New York and is the parent of defendant JPMorgan Chase Bank, N.A. ("Chase").

76. Upon information and belief, Chase is a national banking association in the United States with locations in 23 states, including a location in Brooklyn, New York.

77. Upon information and belief, prior to November 2004, JPMorgan Chase was a New York State chartered bank, regulated by the New York State Banking Department.

78. Upon information and belief, on or about July 9, 2004, JPMorgan Chase requested

-10-

approval to convert to a national banking association and the request was granted by the Comptroller of the Currency on or about October 13, 2004, upon which the bank's name was changed to JPMorgan Chase Bank, N.A.

79. Defendant M&T Bank Corporation ("M&T") was and still is a corporation organized and existing under and by virtue of the law of the State of New York with a principal executive office at One M&T Plaza, Buffalo, New York.

80. Upon information and belief, M&T has locations in 8 states, including a location in Brooklyn, New York.

81. Upon information and belief, M&T is regulated by and subject to the regulations of, among others, the Federal Reserve and the Comptroller of the Currency.

82. Defendant HSBC North America Inc. was and still is a corporation duly organized and existing under and by virtue of the laws of the Sate of Delaware with a principal executive office at One HSBC Center, Buffalo, New York.

83. Defendant HSBC North America Inc. is authorized to conduct and conducts business in the State of New York.

84. Upon information and belief, defendant HSBC North America Inc. does business as HSBC Bank USA, N.A. ("HSBC").

85. Upon information and belief, defendant HSBC was and still is organized and existing under and by virtue of the laws of the United States of America with its principal place of business at One HSBC Center, Buffalo, New York.

86. Upon information and belief, HSBC is a national banking association in the United States with locations in 13 states, including a location in Brooklyn, New York.

-11-

87.     Upon information and belief, defendant TD Bank, N.A. was and still is organized and existing under and by virtue of the laws of the United States of America with its principal place of business at 1701 Route 70 East, Cherry Hill, New Jersey.

88.     Upon information and belief, TD Bank, N.A. ("TD") is a national banking association in the United States with locations in 16 states, including a location in Brooklyn, New York.

89.     Upon information and belief, on or about March 31, 2008 TD acquired the assets and liabilities of Commerce Bank.

## THE FACTS

90.   This action concerns the enabling and facilitation by each of the defendants of a multi-million dollar Ponzi scheme orchestrated by Philip Barry and conducted through several entities the Barry controlled: Leverage Group; Leverage Option Management Co., Inc.; and North American Financial Services (collectively "Leverage"). From January 1978 through at least February 2009, with the willing participation of each of the defendants, Barry conned hundreds of investors into investing over $40 million in the Leverage investment funds by promising high, but false, rates of investment returns with guaranteed safety of principal and making numerous other misrepresentations. Instead of delivering on these promises, each of the defendants facilitated, enabled and abetted Barry's misappropriation of millions of dollars for his personal use, including funding his own speculative real estate ventures. Ultimately, while each of the defendants chose to do nothing about it, Barry and Leverage misappropriated and dissipated millions of dollars of investor funds and concealed these losses from investors.

91.     Barry, operating through Leverage, made a number of misrepresentations to induce

-12-

investors to invest in or to maintain their investments with Leverage. For example, Barry falsely represented that he would use the investors' funds to trade in options or other securities. Barry claimed that he would employ a proven trading strategy to protect investors' principal and generate a guaranteed rate of return, which he arbitrarily determined to be 12.55 percent per year. Barry also claimed to some investors that their investment in leverage would be protected from loss by private insurance and/or by the Securities Investors Protection Corporation ("SIPC"). Barry further told investors that so long as investors provided a few weeks notice, they could liquidate their investment and withdraw their funds at any time.

92.     When investors expressed interest in withdrawing from their accounts, Barry would first discourage such withdrawals. If investors nonetheless insisted on making withdrawals, Barry would not comply with the requests in a timely fashion, and would make excuses for not doing so. Once Barry issued a withdrawal check, he often instructed investors to wait a period of time before depositing or cashing the check. Even when investors followed Barry's instructions, the checks would often be returned due to insufficient funds.

93.     Contrary to Barry's representations that he would trade securities for the benefit of Leverage investors, he did no securities trading at all for several years. Instead, Barry systematically misappropriated and misused millions of dollars of investor funds. Among other things, Barry secretly used investor funds to purchase real property, which he titled in his own name or the names of entities he owned or controlled and frequently used as collateral for loans. He also diverted some of the investor money to support a business he owned that was knows as Barry Publications.

94.     Barry through Leverage routinely fabricated quarterly statements for investors that reported lofty investment performance. Barry disseminated these phony account statements as

-13-

recently as November 2008, in an effort to conceal from Leverage investors that he had misappropriated their funds.

95.     Barry, through Leverage, and facilitated, enabled and abetted by each of the defendants, operated a Ponzi scheme to complete the illusion that he was delivering the investment returns he promised to Leverage investors. He routinely paid, with the knowledge and acquiescence of each of the defendants,  phony investment returns not from investment profits, but from funds obtained from other Leverage investors or by secretly returning to the investors some of their own money.

96.     In order to run his Ponzi scheme, Barry needed a bank account to provide his investors with a sense that he was operating a legitimate investment business.  Having a bank account would allow Barry to receive investors' funds and then transfer those funds out of the account to perpetuate the Ponzi scheme.

97.     Barry/Leverage opened accounts at defendants Chase, M&T, TD (Commerce) and HSBC.

98.     None of the bank accounts opened by Barry/Leverage looked like a normal broker-dealer account. Each of the defendants knew that investors' funds were being deposited, but did not require same to be segregated or transferred to separate sub-accounts.

99.     Activity in the accounts opened by Barry/Leverage at each defendant's bank did not show large outflows of funds to purchase securities or large inflows when the securities were sold.

100.     Instead, each of the accounts showed highly suspicious activity including, but not limited to: large numbers of checks were returned for insufficient funds, large dollar transactions were being conducted by check, and  large cash withdrawals were routinely made.

-14-

101. Between 2004 and 2009, the defendants collectively permitted Barry through Leverage to bounce approximately 1,623 checks written on defendants Chase, TD (Commerce), M&T and HSBC and incur overdraft fees of approximately $46,191.00.

102. Upon information and belief, for the period from December 12, 2003 to December 5, 2007, Barry/Leverage deposited approximately $23,092,253.85 with defendant Chase and withdrew $23,115,287.23.

103. Upon information and belief, for the period from June 20, 2007 through December 19, 2007, Barry/Leverage deposited approximately $894,755.76 with defendant TD (Commerce) and withdrew $894,755.76.

104. Upon information and belief, for the period from December 20, 2007 through September 2, 2008, Barry/Leverage deposited approximately $2,592,178.29 at defendant M&T and withdrew $2,592,178.29.

105. Upon information and belief, for the period from January 10, 2008 through January 16, 2009, Barry/Leverage deposited approximately $131,006.88 with defendant HSBC and withdrew $130,554.87.

106. Upon information and belief, the unusual activities that were conducted in the bank accounts were visible to defendants who had to approve and negotiate the large dollar transactions. Such activities required further investigation under relevant law and prudent business practices.

107. The unusual activities should have triggered investigation not only by the banker in charge of each of the accounts, but should also have triggered each bank's AML monitoring system. Long before the passage of the USA Patriot Act in 2001 ("Patriot Act") and with greater force after Congress passed said Act, banks such as defendants were required to monitor their customers'

transactions to detect and prevent money laundering and other suspicious activities. The Patriot Act reinforced this obligation and underscored the importance of implementing robust detection systems.

108.   What Barry/Leverage needed was a bank or banks that would be willing to look the other way and would ignore the anomalous account activity as well as notifications from their AML monitoring system.

109.   Barry/Leverage found those banks. Each of the defendants ignored years of suspicious and inexplicable activity in the Barry/Leverage accounts. In return, each of the defendants earned revenues from their relationships with Barry/Leverage. Each of the defendants made money and Barry/Leverage made money. The instant Plaintiffs lost money, some of them their life savings or retirement funds.

## DEFENDANTS HAD A DUTY TO KNOW THEIR CUSTOMER AND TO MONITOR THEIR CUSTOMER'S ACCOUNT ACTIVITY

A.   **DEFENDANTS HAD A DUTY TO KNOW WHAT BUSINESS BARRY/LEVERAGE WAS OPERATING**

110.   The first step in identifying suspicious activity is for a bank to determine what its client's normal business activity would look like. Federal financial Institution Examination Manual of June 2005. This step can be accomplished in many ways, including by meeting with the client and learning about the client's business, conducting on-site due diligence visits to review the client's business operations and reviewing the client's financial statements.

111.   Upon information and belief, at the time of the occurrences set forth herein, each of the defendants designated a person to be in charge of ensuring each that bank had sufficient information regarding Barry/Leverage and its business, but either each such person was incompetent and failed to discover the suspicious and fraudulent nature of the Barry/Leverage and the business

-16-

or simply chose to ignore what was discovered.

B. **DEFENDANTS HAD A DUTY TO INVESTIGATE THE BARRY/LEVERAGE ACCOUNT ACTIVITY WHICH WAS FACIALLY INCONSISTENT WITH ANY LEGITIMATE PURPOSE**

112. Not only did defendants fail to "know" Barry/Leverage, but they also failed to investigate activity that was suspicious regardless of whether defendants thought Barry/Leverage were using the bank accounts to operate an investment advisory business or a market making business or any other legitimate purpose.

113. Upon information and belief, defendants knew that the transaction activity in the Barry/Leverage accounts could not have been linked to a legitimate business purpose and this fact should have been flagged by each defendant's personnel and its automated monitoring system.

114. Upon information and belief, defendants knew that Barry/Leverage was purporting to operate an investment advisory business. If Barry/Leverage had been using the accounts for that business, defendants would have seen millions of dollars leaving the accounts and going to purchase securities and corresponding million-dollar inflows into the accounts as Barry/Leverage sold the securities.

115. Instead, what defendants saw was massive outflows of money that were in no way linked to customer accounts or stock and options trading. Money would come into each bank as clients invested additional funds with Barry/Leverage. An overwhelming majority of funds would then go directly back out to clients in the form of redemption. Any balance that remained was used by Barry/Leverage for speculative real estate ventures and to fund personal expenses and other Barry enterprises.

116. Defendants also faced regular account activity that would have been suspicious

-17-

regardless of the type of business Barry/Leverage was running. The 2000 OCC BSA/AML Handbook identified numerous "red flags" that financial institutions need to consider as part of their transaction monitoring procedures. They included (1) unexplained repetitive or unusual patterns of activity; (b) frequent large dollar transactions without corresponding explanations as to how those funds would be utilized; and (3) spikes in customer activity with little or no explanation. Each of the Barry/Leverage accounts exhibited all of these types of transactions, and exhibited them repeatedly. The amount of bounced checks, alone, should have brought more scrutiny on the Barry/Leverage accounts by the defendants. So, too, the fact that most of the activity in each of the accounts were conducted by checks in and out of the accounts.

C.     **DEFENDANTS HAD A DUTY TO INVESTIGATE**
       **SUSPICIOUS ACTIVITY IN THE BARRY/LEVERAGE ACCOUNTS**

117.   Once suspicious activity is identified, a bank must further investigate to determine whether there could be a legitimate explanation for the activity or, rather, if it is indicative of illegal activity.

118.   Upon information and belief, in the face of repeated indications of suspicious transaction activity in the Barry/Leverage accounts, defendants never conducted any diligent investigation in the Barry/Leverage accounts or filed a Suspicious Activity Report ("SAR") with the United States government.

D.     **DEFENDANTS HAD A DUTY TO TAKE ACTION**

119.   Knowing that the activity in the Barry/Leverage accounts was not consistent with the purported business purpose of the accounts, and faced with evidence that illegal activity was occurring, each of the defendants had a duty to take action, not to participate in a breach of fiduciary

-18-

duty, and to prevent the further diversion of fiduciary assets. At the very least, each of the defendants should have questioned Barry/Leverage and when each failed to receive a credible explanation for the bizarre activity, closed the account.

120. Instead, each of the defendants took no action. Upon information and belief, each of the defendants did not convey their concerns to authorities or regulators in 2008 or before.

121. Each of the defendants willingly turned a blind eye to indicia of fraud at Barry/Leverage based upon information available to them. Instead, each of the defendants continued to do business with Barry/Leverage and allowed the accounts to operate without restrictions

## THE PLAINTIFFS' CLAIMS

122. Upon information and belief, Plaintiff Shirley A. Abrams invested $10,000.00 with Barry/Leverage on or about November 1, 2003 and an additional $40,000.00 on or about August 16, 2004. She made no withdrawals. She has been damaged in the amount of $50,000.00, plus interest thereon and the costs and disbursements of this action.

123. Upon information and belief, Plaintiff Lynne Belaief invested the following amounts with Barry/Leverage on or about the following dates:

```
05/08/1995 - $20,000
05/12/2000 - $ 7,000
10/06/2000 - $ 7,000
04/04/2002 - $ 7,000
11/27/2002 - $ 6,000
07/21/2003 - $ 5,000
02/10/2004 - $ 5,000
            $57,000
```

124. Upon information and belief, Plaintiff Lynne Belaief withdrew a total of $19,000.00 and she has been damaged in the amount $38,000.00, plus interest thereon and the costs and

-19-

disbursements of this action.

125. Upon information and belief, Plaintiff Janice Bini invested the following amounts with Barry/Leverage on or about the following dates:

> 08/03/2004 – $10,000
> 10/04/2004 – $ 5,000
> 07/07/2006 – $ 3,240
> 12/29/2006 – $ 9,000
> $27,240

126. Upon information and belief, Plaintiff Janice Bini made no withdrawals and has been damaged in the amount of $27, 240.00, plus interest thereon and the costs and disbursements of this action.

127. Upon information and belief, Plaintiffs Connie Boccia and Frank Boccia made deposits with Barry/Leverage commencing in or about January 2001 into Account No. 1-0410-01. Plaintiffs Connie Boccia and Frank Boccia made deposits with Barry/Leverage commencing in or about July 2006 into Account No. 7-211-06B in amounts to be proven upon the trial of this action, but at least $340,000.00.

128. Upon information and belief, Plaintiffs Connie Boccia and Frank Boccia made additional deposits over the years and they have been damaged in an amount to be determined upon the trial of this action, but at least $340,000.00, plus interest thereon and the costs and disbursements of this action.

129. Upon information and belief, Plaintiff Margot Boccia made deposits with Barry/Leverage commencing in or about September, 2002 into Account No. 9-121-02 and in or about November, 2005 into Account No. 11-231-05 and in or about December, 2006 into Account No. 12-101-06B in amounts to be proven upon the trial of this action. Subsequent deposits were

-20-

made into the accounts and Plaintiff Margot Boccia has been damaged, in an amount to be determined upon the trial of this action, but at least $100,000.00, plus interest thereon and the costs and disbursements of this action.

130.    Upon information and belief, Plaintiffs Thomas Bogan and Joan Bogan invested the following amounts with Barry/Leverage on or about the following dates:

> 07/20/2004 – $ 5,000
> 02/28/2005 – $ 5,000
> 08/09/2006 – $ 5,000
> 10/01/2006 – $ 1,500
>                $16.500

131.    Upon information and belief, Plaintiffs made no withdrawals and have been damaged in the amount of $16,500.00, plus interest thereon and the costs and disbursements of this action.

132.    Upon information and belief, Plaintiff Giuliana Bona deposited $15,650.00 with Barry/Leverage on or about January 20, 2007 and an additional $900.00 on or about January 12, 2008. She made no withdrawals and has been damaged in the amount of $16,550.00, plus interest thereon and the costs and disbursements of this action.

133.    Upon information and belief, Plaintiff Mary Cameron made the following deposits with Barry/Leverage on or about the following dates:

> 06/06/2005 – $10,000
> 07/25/2005 – $40,000
> 08/16/2006 – $10,000
> 12/06/2006 – $10,000
>                $60,000

134.    Upon information and belief, Plaintiff withdrew $27,083.00 and has been damaged in the amount of $42,917.00, plus interest thereon and the costs and disbursements of this action.

135.    Upon information and belief, Plaintiff Andrea Chiarappa made the following

-21-

deposits with Barry/Leverage on or about the following dates:

```
02/25/2003 – $   6,000
04/24/2003 – $  60,000
11/03/2003 – $  45,850.42
11/12/2003 – $  30,000
02/03/2005 – $   5,000
04/01/2005 – $  25,000
              $171,850.42
```

136.    Upon information and belief, between December 31, 2003 and June 30, 2008,

Plaintiff Andrea Chiarappa made withdrawals in the amount of $160,000.00 and he has been

damaged in the amount of $21,850.42, plus interest thereon and the costs and disbursements of this

action.

137.    Upon information and belief, Plaintiff Yolanda Chiarappa deposited $6,000.00 with

Barry/Leverage on or about February 19, 2003 and an additional $12,487.17 on or about April 24,

2003. On or about January 3, 2006, she withdrew $10,000.00 and she has been damaged in the

amount of $8,487.17, plus interest thereon and the costs and disbursements of this action.

138.    Upon information and belief, Plaintiff Oliver Colonna made the following deposits

with Barry/Leverage on or about the following dates:

```
6/9/05 -   $ 13,284.44
7/19/05 -  $  1,679.50
10/22/05 - $76,698.82
           $91,662.76
```

139.    Upon information and belief, Plaintiff Oliver Colonna made no withdrawals and he

has been damaged in the amount of $91,662.76, plus interest thereon and the costs and

disbursements of this action.

140.    Upon information and belief, Plaintiff Rita Correale made the following deposits

-22-

with Barry/Leverage on or about the following dates:

```
2/28/95 - $  5,000
8/21/95 - $ 10,000
9/30/98 - $  4,000.
3/31/99 - $ 20,000
2/20/01 - $  6,010
3/31/01 - $  9,900
6/30/01 - $  4,000
6/30/02 - $  5,000
8/23/02 - $ 20,000
2/24/03 - $  9,900
2/24/03 - $  2,500
6/30/03 - $  9,900
9/13/04 - $  6,000
6/30/05 - $  4,000
8/21/05 - $ 10,000
           $126,210
```

141.    Upon information and belief, Plaintiff Rita Correale made no withdrawals and has
been damaged in the amount of $126,210.00, plus interest thereon and the costs and disbursements
of this action.

142.    Upon information and belief, Plaintiff Doreen Daly deposited $3,000.00 with
Barry/Leverage on or about February 1, 2007. She made no withdrawals and has been damaged in
the amount of $3,000.00, plus interest thereon and the costs and disbursements of this action.

143.    Upon information and belief, Plaintiff Francis Daly made the following deposits with
Barry/Leverage on or about the following dates:

```
2/28/03 –  $42,000
6/13/03 –  $   500
10/11/03 – $10,000
4/29/04 –  $ 7,000
           $59,500
```

144.    Upon information and belief, between December 31, 2006 and December 31, 2008,

-23-

Plaintiff Francis Daly withdrew $9,000.00 and he has been damaged in the amount of $50,500.00,

plus interest thereon and the costs and disbursements of this action.

145.    Upon information and belief, Plaintiff Lorraine Daly made the following deposits

with Barry/Leverage on or about the following dates:

            4/25/03- $10,000
            6/1/07 - $ 3,000
            6/9/08 - $62,000
                    · $75,000

146.    Upon information and belief, on or about January 22, 2004, Plaintiff Lorraine Daly

withdrew $5,000.000 and she has been damaged in the amount of $70,000.00, plus interest thereon

and the costs and disbursements of this action.

147.    Upon information and belief, Plaintiff Anne-Marie Delia made the following deposits

with Barry/Leverage on or about the following dates:

            1/22/01- $    1,200
            4/15/01- $    5,000 ·
            12/13/01-$     500
            1/13/01- $   · 500
            4/20/02- $    5,000
            4/15/03- $    2,500
            4/15/04- $    6,000
            1980's-   $    200·
            4/4/ ?-   ·$.   20
            4/14/?-   $    250
            2/24/93-  $     25
            2/24/93-  $    200
            4/5/93-   $    1,000
            4/15/95-  $     40 ·
            4/15/95-  $    500
            4/15/96-  $     30
            4/15/96-  $    500
            4./15/98- $    4,000
            4/15/99-  $    6,000
            10/18/99-$    1,000

-24-

| | | |
|---|---|---|
| 4/15/00- | $ | 5,000 |
| 1/28/05- | $ | 50,000 |
| 4/29/05- | $ | 5,000 |
| 4/15/06- | $ | 2,500 |
| 1/06/99- | $ | 175 |
| 1/1/00- | $ | 250 |
| 2/1/00- | $ | 250 |
| 1/1/99- | $ | 250 |
| 2/17/00 - | $ | 328.13 |
| 2/14/00 - | $ | 650 |
| 3/1/00 - | $ | 250 |
| 3/13/00 - | $ | 547.50 |
| 3/27/00 - | $ | 232.69 |
| 4/1/00 - | $ | 250 |
| 4/21/00 - | $ | 250 |
| 5/8/00 - | $ | 155.13 |
| 5/1/00 - | $ | 250 |
| 4/27/00 - | $ | 232.69 |
| 5/1/00 - | $ | 250 |
| 5/15/00 - | $ | 310.25 |
| 6/1/00 - | $ | 250 |
| 6/5/00 - | $ | 465.38 |
| 9/8/00 - | $ | 300 |
| 1/17/01 - | $ | 100 |
| 1/17/01 - | $ | 100 |
| 2/3/01 - | $ | 250 |
| 1/2/01 - | $ | 615.22 |
| 1/1/01 - | $ | 250 |
| | | $103,927.00 |

148. Upon information and belief, Plaintiff Ann Marie Delia made withdrawals in the total amount of $8,800.00 for the period from January 2, 2007 through April 12, 2007 and she has been damaged in the amount of $95,127.00, plus interest thereon and the costs and disbursements of this action.

149. Upon information and belief, Plaintiff Estate of William A. Delia made the following deposits with Barry/Leverage on or about the following dates:

-25-

```
6/7/91  - $    3,300
4/15/97 - $    8,000
2/3/95  - $    3,160
4/18/95 - $    8,000
4/15/98 - $    9,000
4/15/96 - $    8,000
8/3/84  - $     500
4/15/93 - $    7,000
8/2/93  - $   12,000
2/3/94  - $    3,160
11/8/91 - $    1,140
1/20/90 - $    1,000
4/15/90 - $      60
5/7/90  - $    5,000
12/17/90 -$    5,000
7/9/90  - $     200
9/20/90- $     2,200
6/21/90 - $    4,000
4/12/90 - $    1,000
4/4/91  - $    8,000
4/15/91 - $      50
4/15/99 - $   10,000
4/15/04 - $   14,000
7/8/04  - $    5,00
11/11/03 $    6,840
4/12/03 - $   14,000
4/16/01 - $   12,000
4/15/02 - $   14,000
8/23/02 - $   20,000
5/14/03 - $   14,000
4/11/84 - $      60
4/15/91 - $    2,000
4/14/89 - $    1,000
4/6/88  - $    1,000
4/15/87 - $     500
12/31/86 -$     500
2/20/86 - $     500
11/19/95 -$     500
4/16/85 - $     500
8/3/84  - $     500
1/9/84  - $    1,000
          $207,730
```

-26-

150. Upon information and belief, Plaintiff Estate of William A Delia made withdrawals in the total amount of $70,160.00 for the period from April 14, 2003 through September 14, 2004 and has been damaged in the amount of $234,290.00, plus interest thereon and the costs and disbursements of this action.

151. Upon information and belief, Plaintiff Adelia Del Trecco made deposits with Barry/Leverage commencing in or about September 23, 2000 into Account No. 9-231-00 and additional deposits commencing in or about August 4, 1994 into Account No. 8-042-94 in amounts to be proven upon the trial of this action.

152. Upon information and belief, Plaintiff Adelia Del Trecco made withdrawals over the course of time and she has been damaged in an amount to be determined upon the trial of this, plus interest and the costs and disbursements of this action.

153. Upon information and belief, Plaintiffs Dominic DeSantis, Linda DeSantis, Lorenzo DeSantis and Maria DeSantis (the "DeSantis Plaintiffs") made deposits with Barry Leverage commencing in or about July 1994 into the following accounts:

| Account No. | Account Owner |
|---|---|
| 5-051-94 | Lorenzo DeSantis |
| 1-171-95 | Linda DeSantis |
| 9-261-98 | Lorenzo & Maria DeSantis i/t/f Domenic DeSantis |
| 1-164-02C | Lorenzo DeSantis |
| 8-162-02C | Lorenzo DeSantis |
| 12-126-02C | Lorenzo DeSantis |
| 6-191-03C | Lorenzo DeSantis |
| 1-161-04C | Lorenzo DeSantis |

154. Upon information and belief, between July 1994 and October 2008, the DeSantis Plaintiffs made deposits with Barry/Leverage in amounts to be proven upon the trial of this action, but at least $500,000.00.

155. Upon information and belief, for the period from 2002 through 2007, the DeSantis Plaintiffs withdrew the total amount of $385,680.00 from their deposits with Barry/Leverage.

156. Upon information and belief, in 2004 and 2007, Barry/Leverage gave the DeSantis Plaintiffs checks drawn on Defendant Chase, which were either returned for insufficient funds or could not be negotiated, totaling $37,475.00.

157. Upon information and belief, in or about 2002 and 2003, the DeSantis Plaintiffs made loans to Barry/Leverage in the total amount of $225,000.00 which were not repaid.

158. Upon information and belief, the DeSantis Plaintiffs have been damaged in an amount to be determined upon the trial of this action, but at least $375,000.00, plus interest thereon and the costs and disbursements of this action.

159. Upon information and belief, Plaintiff Adele Disarmato made the following deposits with Barry/Leverage on or about the following dates:

```
2/22/96 – $ 1,000
1/22/97 – $   200
2/10/97 – $ 5,000
7/31/97 – $ 1,000
11/29/00 -$ 2,500
          $ 9,700
```

160. Upon information and belief, Plaintiff Adele Disarmato made no withdrawals and she has been damaged in the amount of $9,700.00, plus interest thereon and the costs and disbursements of this action.

161. Upon information and belief, Plaintiff Adele Disarmed received the following checks from Barry/Leverage, each of which was written on Defendant M&T and each of which was returned for insufficient funds:

-28-

| Date | Check No. | Amount |
|------|-----------|--------|
| 5/31/08 | 2272 | $417.13 |
| 7/31/08 | 1851 | $427.13 |

162.    Upon information and belief, Plaintiff Elvira Federico made the following deposits

with Barry/Leverage on or about the following dates:

8/ ? /04 - $10,000
2/28/05 - $ 10,000
4/27/95 - $ 10,000
8/21/95 - $ 10,000
6/30/96 - $ 15,000
2/28/98 - $ 10,000
2/7/01 - $  9,900
3/31/01 - $  1,500
1/30/02 - $ 20,000
8/23/02 - $ 20,000
2/24/03 - $ 15,500
6/30/03 - $ 20,000
12/31/04 $ 22,175
1/16/05 - $  7,980
2/16/05 - $  7,980
3/31/05 - $  7,980
4/16/05 - $  7,980
5/15/05 - $  7,980
6/30/05 - $  7,980
7/16/05 - $  7,980
8/15/05 - $  7,980
9/30/05 - $  7,980
10/15/05 -$  7,980
11/15/05 -$  7,980
12/31/05 -$  7,980
1/6/06 -  $  7,980
2/16/06 -  $  7,980
3/31/06 -  $  7,980
4/16/06 -  $  7,980
5/16/06 -  $  7,980
6/30/06 -  $  7,980
7/16/06 -  $  7,980
8/16/06 -  $  7,980
9/30/06 - $  7,980

-29-

| | |
|---|---|
| 10/16/06 -$ | 7,980 |
| 11/16/06 -$ | 7,980 |
| 12/31/06 -$ | 7,980 |
| 1/16/07 - $ | 3,480 |
| 2/16/07 - $ | 3,480 |
| 3/31/07 - $ | 3,480 |
| 4/16/07 - $ | 3,480 |
| 5/16/07 - $ | 3,480 |
| 6/30/07 - $ | 3,480 |
| 7/16/07 - $ | 3,480 |
| 8/16/07 - $ | 3,480 |
| 9/30/07 - $ | 3,480 |
| 10/16/07 -$ | 3,480 |
| 11/16/07 -$ | 3,480 |
| 12/31/07 -$ | 3,480 |
| 1/16/08 - $ | 3,480 |
| 2/16/08 - $ | 3,480 |
| 3/31/08 - $ | 3,480 |
| 4/16/08 - $ | 3,480 |
| 4/16/08 - $ | 3,480 |
| 6/16/08 - $ | 3,480 |
| 7/16/08 - $ | 3,480 |
| 8/16/08 - $ | 3,480 |
| 9/16/08 - $ | 3,480 |
| 10/16/08 -$ | 3,480 |
| 6/19/03 – $ | 10,000 |
| 1/16/04 - $ | 10,000 |
| | $476,055 |

163. Upon information and belief, Plaintiff Elvira Federico made no withdrawals and she has been damaged in the amount of $476,055.00, plus interest thereon and the costs and disbursements of this action.

164. Upon information and belief, Plaintiff Elvira Federico received the following checks, all of which were written on defendant Chase and all of which were returned for insufficient funds:

| Date | Check No. | Amount |
|------|-----------|--------|
| 5/26/04 | 034610 | $ 8,000 |

-30-

| 6/2/04 | 034614 | $ 4,100 |
| 12/31/06 | 039677 | $ 600 |
| 2/28/07 | 040057 | $ 2,600 |
| 4/30/07 | 040564 | $ 2,600 |
| 5/31/07 | 040798 | $ 2,600 |
| 5/31/07 | 040217 | $ 2,600 |
| 6/11/07 | 040737 | $ 2,600 |
| 7/31/07 | 040994 | $ 2,600 |

165.    Upon information and belief, Plaintiffs Silvio Federico and Onelia Federico made the

following deposits with Barry/Leverage on or about the following dates:

| 7/5/04 - $ | 20,000 |
| 7/5/94 - $ | 20,000 |
| 2/28/95-$ | 10,000 |
| 7/27/95-$ | 20,000 |
| 8/21/95-$ | 10,000 |
| 6/30/96-$ | 10,000 |
| 2/28/98-$ | 10,000 |
| 7/28/99-$ | 4,650 |
| 3/31/01-$ | 10,000 |
| 12/31/01 -$ | 28,000 |
| 1/30/02-$ | 38,601.52 |
| 8/23/02-$ | 20,000 |
| 2/24/03-$ | 9,900 |
| 6/30/03-$ | 10,000 |
| 12/31/04-$ | 27,115 |
| 1/16/05-$ | 7,980 |
| 2/16/05-$ | 7,980 |
| 3/31/05-$ | 7.980 |
| 4/16/05-$ | 7.980 |
| 5/16/05-$ | 7,980 |
| 6/30/05-$ | 7.980 |
| 7/16/05-$ | 7,980 |
| 8/15/05-$ | 7,980 |
| 9/30/05-$ | 7,980 |
| 10/15/05-$ | 7,980 |
| 11/15/05-$ | 7,980 |
| 12/31/05-$ | 7,980 |
| 1/16/06-$ | 7,980 |
| 2/16/06-$ | 5,980 |
| 3/31/06-$ | 4,980 |

-31-

```
4/16/06-$   4,980
5/16/06-$   4,980
6/30/06-$   4,980
7/16/06-$   4,980
8/16/06-$   4,980
1/16/08-$   9,310
2/16/08-$   3,855
3/31/08-$   4,655
4/16/08-$   4655
4/16/08-$   4,655
6/30/08-$   4,655
7/16/08-$   4,655
8/16/08-$   4,655
9/30/08-$   4,655
10/31/08-$  4,655
8/16/02-  $  5,000
2/16/02-  $ 50,000
2/16/02-  $ 20,000
7/16/02-  .$  5,000
11/16/04-$ 10,000
6/19/03-  $ 10,000
          $518,271.52
```

166. Upon information and belief, Plaintiffs Silvio Federico and Onelia Federico made no withdrawals and they have been damaged in the amount of $518,271.52, plus interest thereon and the costs and disbursements of this action.

167. Upon information and belief, Plaintiffs Silvio Federico and Onelia Federico received the following checks, all of which were written on defendant Chase and all of which were returned for insufficient funds:

| Date | Check No. | Amount |
|------|-----------|--------|
| 8/5/04 | 035083 | $ 20,000 |
| 5/24/04 | 034608 | $ 9,000 |
| 5/25/04 | 034609 | $ 8,500 |
| 5/27/04 | 034611 | $ 7,500 |
| 6/4/04 | 034616 | $ 7,300 |
| 12/31/06 | 039675 | $ 2,300 |
| 12/31/06 | 039676 | $ 4,980 |

-32-

| | | | |
|---|---|---|---|
| 3/31/07 | 040215 | $ | 2,300 |
| 3/31/07 | 040216 | $ | 4,980 |
| 5/31/07 | 040796 | $ | 2,300 |
| 5/31/07 | 040797 | $ | 4,980 |
| 6/11/07 | 040735 | $ | 2,300 |
| 6/11/07 | 040736 | $ | 4,980 |
| 7/3/07 | 040823 | $ | 2,300 |
| 7/3/07 | 040824 | $ | 4,980 |
| 7/31/07 | 040992 | $ | 2,320 |
| 7/31/07 | 040992 | $ | 4,980 |
| 8/16/07 | 041342 | $ | 2,300 |
| 8/16/07 | 041343 | $ | 2,355 |
| 9/1/07 | 041243 | $ | 2,320 |
| 9/1/07 | 041243 | $ | 2,340 |
| 9/16/07 | 041339 | $ | 2,320 |
| 9/16/07 | 041340 | $ | 2,355 |
| 9/16/07 | 041341 | $ | 2,300 |
| 10/31/07 | 041439 | $ | 2,355 |
| 10/31/07 | 041440 | $ | 2,300 |
| 11/30/07 | 041441 | $ | 2,355 |
| 11/30/07 | 041442 | $ | 2,300 |

168.    Upon information and belief, Plaintiff Sandra Ferraro made the following deposits

with Barry/Leverage on or about the following dates:

       1/27/06-$5,806
       5/2/07-  $  780
       7/16/07-$1,070
       1/12/08-$  780
              $8,436

169.    Upon information and belief, Plaintiff Sandra Ferraro made no withdrawals and she

has been damaged in the amount of $8,436.00, plus interest thereon and the costs and disbursements

of this action.

170.    Upon information and belief, Plaintiff Sandra Ferraro received a check, on or about

July 25, 2008, in the amount of $3,000.00 from Barry/Leverage. The check was drawn on Defendant

M&T, the check number was 002298 and it was returned for insufficient funds. The check was re-

deposited on or about September 5, 2008 and it was returned unpaid because the M&T account had been closed.

171.    Upon information and belief, Plaintiff Carl Gambello made the following deposits with Barry/Leverage on or about the following dates:

```
 7/8/02  – $  50,000
 9/30/02 – $  50,000
 9/30/02 – $100,000
 1/6/03  – $   2,500
 5/19/02 – $   5,000
 1/8/04  – $  10,000
 7/2/04  – $   8,500
 7/30/04 – $  82,149.27
12/17/04 – $   6,392
11/29/05 – $  26,554
 1/30/06 – $  38,665
           $379,763.27
```

172.    Upon information and belief, Plaintiff Carl Gambello received a withdrawal in the amount of $2,000 and he has been damaged in the amount of $377,763.27, plus interest thereon and the costs and disbursements of this action.

173.    Upon information and belief, Plaintiff Carl Gambello received the following checks from Barry/Leverage, all of which were written on defendant TD (Commerce) and all of which were returned for insufficient funds or because the account had ben closed:

| Date | Check No. | Amount |
|------|-----------|--------|
| 12/8/07 | 1343 | $ 3,200 |
| 12/9/07 | 1344 | $ 2,800 |
| 12/10/07 | 1345 | $ 2,600 |
| 12/11/07 | 1346 | $ 2,400 |
| 12/12/07 | 1347 | $ 1,800 |
| 12/13/07 | 1348 | $ 2,200 |

174.    Upon information and belief, Plaintiff Carole Gambello made the following deposits

-34-

with Barry/Leverage on or about the following dates:

| | |
|---|---|
| 3/16/04 – | $ 10,000 |
| 8/13/04 – | $ 10,000 |
| 4/13/06 – | $  5,000 |
| 8/25/06 – | $ 40,000 |
| 4/21/07 – | $ 10,000 |
| | $ 75,000 |

175.    Upon information and belief, Plaintiff Carole Gambello made no withdrawals and she has been damaged in the amount of $75,000.00, plus interest thereon and the costs and disbursements of this action.

176.    Upon information and belief, Plaintiffs Barbara Grebin and Stephanie Grebin made deposits with Barry/Leverage commencing in or about March 1982 into Account No.03-151-83IRA and commencing in or about January 1986 into Account No. 1-241-86 and commencing in or about January 2008 into Account No. 1-011-08EX in amounts to be proven at the trial of this action, but at least $100,000.00 and continued to make deposits into those accounts through 2008.

177.    Upon information and belief, Plaintiffs Barbara Grebin and Stephanie Grebin withdrew approximately $27,000.00 from the various accounts between September 1999 and March 2008 and they have been damaged in an amount to be proven at the trial of this action, but at least $73,000.00, plus interest thereon and the costs and disbursements of this action.

178.    Upon information and belief, Plaintiffs Barbara Grebin and Stephanie Grebin received at lest one check from Barry/Leverage that was returned for insufficient funds that was written on Defendant Chase on July 27, 2007 in the amount of $2,000.00 (Check No. 041038).

179.    Upon information and belief, Plaintiff Ludvig Haugedal deposited $10,000.00 with Barry/Leverage on or about September 8, 1997. He made no withdrawals and he has been damaged

in the amount of $10,000.00, plus interest thereon and the costs and disbursements of this action.

180.    Upon information and belief, Plaintiff Dominick Iocco deposited the following

amounts with Barry/Leverage on or about the following dates:

> 5/14/04 – $100,000
> 12/15/04 -$  8,000
> 12/20/04 -$  6,000
> $114,000

181.    Upon information and belief, Plaintiff Dominick Iocco made no withdrawals and he

has been damaged in the amount of $114,000.00, plus interest thereon and the costs and

disbursements of this action.

182.    Upon information and belief, Plaintiff Maria LoCascio made the following deposits

with Barry/Leverage on or about the following dates:

> 11/29/91-$ 5,000
> 4/26/94- $ 2,000
> 10/3/95- $   100
> 4/10/96- $   100
> 7/6/96-  $   100
> 10/7/96- $   100
> 8/1/96-  $   300
> 10/18/99-$ 5,000
> 10/26/99-$ 2,000
> 4/10/00- $    25
> 2/13/01- $    50
> 3/06/01- $    50
> 4/18/01- $    50
> 6/19/01- $  533.68
> 8/21/01- $ 1,000
> 3/25/02- $ 1,200
> 4/26/03- $ 1,300
> 3/11/04- $ 1,000
> 4/7/04-  $   100
> 4/17/04- $    50
> 9/14/04- $    50
> 3/30/05- $ 2,715

-36-

11/8/05 – $ 8,000
       $30,823.68

183.    Upon information and belief, between August 12, 1993 and February 12, 2008,

Plaintiff Maria LoCascio made withdrawals in the total amount of $14,000.00 and she has been

damaged in the amount of $16,823.68, plus interest thereon and the costs and disbursements of this

action.

184.    Upon information and belief, Plaintiffs Joseph LoVecchio and Janet loVecchio

deposited the following amounts with Barry/Leverage on or about the following dates:

        7/18/02-$ 1,000
        10/9/02-$ 1,500
        9/5/03-  $ 1,000
        2/9/04-  $ 1,000
        2/17/05-$ 2,000
        1/27/06-$ 2,500
        1/1/07-  $ 2,000
        4/27/07-$ 2,000
                 $13,000

185.    Upon information and belief, Plaintiffs Joseph LoVecchio and Janet LoVecchio

withdrew the total amount of $2,500.00 and have been damaged in the amount of $10,500.00, plus

interest thereon and the costs and disbursements of this action.

186.    Upon information and belief, Plaintiffs Edward Mahoney and Tara Mahoney

deposited $50,000.00 with Barry/Leverage on or about August 13, 2005. Between November 7,

2006 and January 23, 2008, they withdrew the total amount of $38,062.18 and have been damaged

in the amount of $11,937.82, plus interest thereon and the costs and disbursements of this action.

187.    Upon information and belief, Plaintiff Leonard Mandato deposited the following

amounts with Barry/Leverage on or about the following dates:

                        6/28/05 – $50,000
                        2/20/06 – $15,000
                     12/20/06 – $ 2,000
                                 $67,000

188.    Upon information and belief, between January 2008 and March, 2008, Plaintiff

Leonard Mandato withdrew the total amount of $26,000 and he has been damaged in the amount of

$39,000.00, plus interest thereon and the costs and disbursements of this action.

189.    Upon information and belief, Plaintiff Leonard Mandato received Check No. 2285,

dated July 7, 2005 and drawn on defendant M&T, in the amount of $5,000.00. The check was

returned uncollected because the account had been closed.

190.    Upon information and belief, Plaintiffs Joseph Mannanice and Doreen Mannanice

deposited approximately at least $24,000.00 with Barry/Leverage between 1990 and October 2008.

They withdrew approximately at least $24,100.00 during that same time period. They have been

damaged in an amount to be determined upon the trial of this action, but at least $900.00, plus

interest thereon and the costs and disbursements of this action.

191.    Upon information and belief, Plaintiffs Alexander Marchak and Holly Marchak

deposited the following amounts with Barry/Leverage on or about the following dates:

                     1990's –  $   170,000
                     3/9/06 –  $ 2,153,146.50
                     2007 –    $    36,200.97
                                $ 2,359,347.47

192.    Upon information and belief, Plaintiffs Alexander Marchak and Holly Marchak

incurred additional expenses in the amount of $125,304.86.

193.    Upon information and belief, Plaintiffs Alexander Marchak and Holly Marchak made

withdrawals in the total amount of approximately $286,200.00 from 1990 through 2007.

-38-

194.   Upon information and belief, Plaintiffs Alexander Marchak and Holly Marchak have been damaged in the amount of $2,198,452.33, plus interest thereon and the costs and disbursements of this action.

195.   Upon information and belief, Plaintiff Brian Marchese deposited the following amounts with Barry/Leverage on or about the following dates:

```
12/28/07 - $  50,000
 1/22/08 -  $ 632,748
 4/09/08 -  $    5,000
 4/29/08 -  $    5,000
            $ 692,748
```

196.   Upon information and belief, Plaintiff Brian Marchese made no withdrawals and he has been damaged in the amount of $692,748.00, plus interest thereon and the costs and disbursements of this action.

197.   Upon information and belief, Plaintiff Michael Marchese made the following deposits with Barry/Leverage on or about the following dates:

```
9/1/05 - $ 9,240
9/6/05 - $   500
9/6/05 - $30,260
         $40,000
```

198.   Upon information and belief, Plaintiff Michael Marchese made no withdrawals and he has been damaged in the amount of $40,000.00, plus interest thereon and the costs and disbursements of this action.

199.   Upon information and belief, Plaintiff Barbara McIntosh deposited $10,022.77 with Barry/Leverage on or about August 5, 2004. For the period from September 2004 through September, 2005, she made withdrawals in the total amount of $7,738.61, plus interest thereon and

the costs and disbursements of this action.

200. Upon information and belief, Plaintiffs Marika Ohryn, Peter Ohryn, Lidia Ohryn and the Ohryn Family Trust ( the "Ohryn Plaintiffs") made deposits with Barry/Leverage commencing in or about May 1993 into the following Accounts:

| Account No. | Account Owner |
|---|---|
| 5-131-93 | Peter Ohryn |
| 10-061-95 | Lidia Ohryn, Peter Ohryn, Marika Ohryn |
| 11-091-96 | Marika Ohryn and Lidia Ohryn |
| 8-052-04 | Peter Ohryn |
| 8-151-06EX | Ohryn Family Trust |
| 7-021-07B | Peter Ohryn |
| 1-013-09B | Marika Ohryn |
| 2-061-09B | Lidia Ohryn, Peter Ohryn, Marika Ohryn |

201. Upon information and belief, The Ohryn Plaintiffs deposited the aggregate amount of $1,730,259.45 with Barry/Leverage between May 1993 and February 2009.

202. Upon information and belief, for the period from 2002 through 2008, the Ohryn Plaintiffs withdrew the total amount of $81,096.27 from their deposits with Barry/Leverage.

203. Upon information and belief, The Ohryn Plaintiffs have been damaged in the amount of $1,649,163.18, plus interest thereon and the costs and disbursements of this action.

204. Upon information and belief, Plaintiff Inga Poslitur made the following deposits with Barry/Leverage on or about the following dates:

```
11/1/05 -$1,000
3/9/06 - $   70
5/4/06 - $   50
6/1/06 - $   50
6/19/06 -$  100
7/25/06 -$  100
8/16/06- $   50
9/6/06 - $   50
```

-40-

```
9/24/06 -$  200
10/30/06 $  200
11/29/06-$  150
12/7/06 - $  200
1/2/07 -  $  100
2/12/07 - $  100
3/5/07 -  $  100
4/7/07 -  $  100
5/1/07 -  $  100
6/6/07 -  $  100
7/12/07 - $  200
8/18/07 - $  100
9/17/07 - $  200
10/10/07 $  150
11/20/07 $  350
1/4/08 -  $  150
1/18/08 - $  150
2/16/08 - $  200
3/17/08 - $  150
4/30/08 - $  200
6/9/08 -  $ 250
          $4,925
```

205.  Upon information and belief, Plaintiff Inga Poslitur made no withdrawals and she has

been damaged in the amount of $4,925.00, plus interest thereon and the costs and disbursements of

this action.

206.  Upon information and belief, Plaintiffs Irene Rudis and Joseph rudis made the

following deposits with Barry/Leverage on or about the following dates:

```
6/2/95 - $   5,000
8/14/97-$   2,100
9/19/97-$   3,000
3/23/98-$ 54,600
9/29/98-$   2,000
3/3/05 - $ 50,000
3/4/05 - $ 50,000
9/3/05 - $ 59,000
9/9/05 - $ 59,000
1/12/06-$100,000
```

-41-

4/10/07-$ 77,800
$462,500

207.    Upon information and belief, Plaintiffs Irene Rudis and Joseph Rudis withdrew the

total amount of $12,904 and they have been damaged in the amount of $449,596, plus interest

thereon and the costs and disbursements of this action.

208.    Upon information and belief, Plaintiff Lois Sarli-Krebs made the following deposits

with Barry/Leverage on or about the following dates:

```
4/22/04 – $ 25,000
6/3/04 –  $  5,000
10/12/04 -$ 46,117.10
11/1/04 – $  5,000
12/22/04- $150,000
12/12/05- $  5,900
1/6/06 –  $  5,000
1/9/06 –  $ 25,000
1/17/06 – $ 20,000
1/23/06 – $100,000
2/3/06 –  $ 50,000
4/25/06 – $  5,000
5/8/06 –  $  5,000
5/14/06 - $  8,000
5/22/06 – $. 8,000
5/27/06 – $  8,000
7/1/06 –  $  2,000
7/20/06 – $  9,000
12/27/06 -$  5,000
2/2/07 –  $  3,000
3/3/08 –  $ 10,000
3/3/08 –  $  5,000
5/10/08 – $ 10,000
9/10/08 – $ 10,000
12/30/08 -$  4,000
           $529,017.10
```

209.    Upon information and belief, Plaintiff Lois Sarli-Krebs made no withdrawals and she

has been damaged in the amount of $529,017.10, plus interest thereon and the costs and

-42-

disbursements of this action.

210. Upon information and belief, Plaintiff Lisa Caprara Sech made the following deposits with Barry/Leverage on or about the following dates:

> 7/18,03 – $ 50,000
> 2/16/04 – $ 47,000
> 4/21/05 – $  2,000
> 7/19/06 – $ 10,000
> 4/11/07 – $393,887.18
> $502,887.18

211. Upon information and belief, between September 20, 2003 and June 9, 2008, Plaintiff Lisa Caprara-Sech made withdrawals in the total amount of $31,851.71 and she has been damaged in the amount of $471,035.47, plus interest thereon and the costs and disbursements of this action.

212. Upon information and belief, Plaintiff Lisa Caprara-Sech received a check from Barry/Leverage, drawn on defendant TD, on or about June 30, 2008, in the amount of $5,370.00, that was returned for insufficient funds.

213. Upon information and belief, Plaintiffs Lisa Caprara-Sech and Myron Sech made the following deposits with Barry/Leverage on or about the following dates:

> 5/5/06 – $ 1,500
> 10/2/06- $   300
> 4/6/07 – $ 1,300
> 9/30/07-$   500
> $3,600

214. Upon information and belief, Plaintiffs Lisa Caprara-Sech and Myron Sech made no withdrawals and they have been damaged on the amount of $3,600.00, plus interest thereon and the costs and disbursements of this action.

-43-

215. Upon information and belief, Plaintiff Myron Sech deposited $7,000.00 Barry/Leverage on or about August 20, 2003 and made a total of $2,000.00 in withdrawals between that time and September 30, 3007. He has been damaged in the amount of $5,000.00, plus interest thereon and the costs and disbursements of this action.

216. Upon information and belief, Plaintiff Anthony Sech, by his mother and natural guardian Lisa Caprara-Sech, made the following deposits with Barry/Leverage on or about the following dates:

```
7/18/03 –  $1,250
8/5/03  –  $  775
1/29/04 –  $  565
2/11/04 –  $  150
2/10/06.–  $1,000
10/2/06 –  $  146
2/2/07  –  $  611
4/6/07  –  $  500
4/23/08 –  $  540
           $5,537
```

217. Upon information and belief, Plaintiff Anthony Sech made no withdrawals and he has been damaged in the amount of $5,537.00, plus interest thereon and the costs and disbursements of this action.

218. Upon information and belief, Plaintiff Maria Shaw deposited $500,000.00 with Barry/Leverage on or about November 1, 2006. She made no withdrawals and she has been damaged in the amount of $500,000.00, plus interest thereon and the costs and disbursements of this action.

219. Upon information and belief, Plaintiff Maria Shaw received the following checks from Barry/Leverage all of which were returned for insufficient funds:

-44-

| Date | Check No. | Amount | Drawn On |
|------|-----------|--------|----------|
| 2/2/07 | 039959 | $2,000 | Chase |
| 5/16/07 | 040570 | $3,000 | Chase |
| 11/8/07 | 1206 | $2,500 | Commerce (TD) |

220.   Upon information and belief, Plaintiff Tara Sroka deposited $10,000.00 with

Barry/Leverage on or about September 8, 1997. She made no withdrawals and has been damaged

in the amount of $10,000.00, plus interest thereon and the costs and disbursements of this action.

221.   Upon information and belief, Plaintiffs Robert Sweeney and Veronica Sweeney made

the following deposits with Barry/Leverage on or about the following dates:

```
10/6/94 − $ 16,000
9/8/97  − $ 50,000
6/17/03 − $ 10,000
        $ 76,000
```

222.   Upon information and belief, Plaintiffs Robert Sweeney and Veronica Sweeney made

withdrawals in the total amount of $25,000.00 between June 30, 2006 and August 22, 2008 and

have been damaged in the amount of $51,000.00, plus interest thereon and the costs and

disbursements of this action.

223.   Upon information and belief, Plaintiff Dylan Tarrazi made the following deposits

with Barry/Leverage on or about the following dates:

```
1/22/01 - $15,000
2/17/01 - $ 1,500
3/2/01 -  $ 1,000
4/2/01 -  $   500
4/24/01 - $ 1,500
6/4/03 -  $ 9,500
         $29,000
```

224.   Upon information and belief, Plaintiff Dylan Tarrazi withdrew $24,388.40 in or

about April, 2003 and has been damaged in the amount of $4,611.60, plus interest thereon and the

-45-

costs and disbursements of this action.

225.    Upon information and belief, Plaintiff Caroline Tarrazi made the following deposits with Barry/Leverage at or about the following times

```
1997 – $ 250,000
2000 – $   89,000
2005 – $     5,000
2007 – $     3,275
2005 – $   47,500
          $ 394,775
```

226.    Upon information and belief, Plaintiff Caroline Tarrazi made withdrawals in the total amount of $287,070.00 between 1997 and 2007 and she has been damaged in the amount of $107,705.00, plus interest thereon and the costs and disbursements of this action.

227.    Upon information and belief, Plaintiff Frederick Tarrazi made the following deposits with Barry/Leverage on or about the following dates:

```
7/31/03-$  6,000
9/10/03-$  4,000
10/5/04-$10,000
8/14/05-$  5,000
5/2/05-  $15,000
12/18/07-$50,000
         $90,000
```

228.    Upon information and belief, Plaintiff Frederick Tarrazi made no withdrawals and he has been damaged in the amount of $90,000.00, plus interest thereon and the costs and disbursements of this action.

229.    Upon information and belief, Plaintiff Gregory Tarrazi made the following deposits with Barry/Leverage on or about the following dates:

```
2/5/98 – $   4,000
4/24/01- $ 25,400
```

-46-

```
9/31/01 -$  29,200
1/29/03 -$   5,000
3/31/03 -$   5,000
6/4/03 – $   5,000
3/22/04- $   1,600
6/13/05 -$   5,000
9/30/07 -$100,000
         $181,000
```

230.  Upon information and belief, Plaintiff Gregory Tarrazi made withdraws in the total

amount of $27,000.00 between September 10, 2003 and December 18, 2007 and he has been

damaged in the amount of $154,000.00, plus interest thereon and the costs and disbursements of this

action.

231.  Upon information and belief, Plaintiff Joseph Tarrazi made the following deposits

with Barry/Leverage on or about the following dates:

```
4/4/97 - $    41,000
4/25/97 -$     4,000
6/23/97 –$     1,000
10/14/97 $       516
12/15/97 $     1,500
3/25/98 - $    3,300
4/16/98 - $    2,065.60
1/25/99 - $      200
5/17/99- $     8,000
7/29/00 - $    5,000
8/10/99 - $    1,000
8/11/99 - $    9,800
8/23/99 - $    4,200
12/17/99-$     9,000
12/28/99-$     2,500
3/2/00 – $     4,000
12/26/03 -$    4,000
12/31/03- $    3,200
2/6/04 – $     5,000
3/8/04 – $     1,000
4/27/04 – $   10,000
6/30/04 – $   48,381.88
```

-47-

```
9/2/04  –  $        50
1/13/05 - $    3,500
1/20/05 – $   13,500
3/10/05 – $    1,500
5/27/05 – $      200
6/30/06 – $    5,400
2008    – $   20,000
          $212,813.48
```

232.    Upon information and belief, Plaintiff Joseph Tarrazi made withdraws in the total

amount of $112,339.51 for the period from September 30, 1998 through 2008 and he has been

damaged in the amount of $100,474.07, plus interest thereon and the costs and disbursements of this

action.

233.    Upon information and belief, Plaintiffs Victor Tarrazi, Jr. deposited $10,000.00 with

Barry/Leverage on or about August 3, 2004.  He made no withdrawals and he has been damaged in

the amount of $10,000.00, plus interest thereon and the costs and disbursements of this action.

234.    Upon information and belief, Plaintiffs George G. Tarrazi and Kathleen Tarrazi made

the following deposits with Barry/Leverage on or about the following dates:

```
8/10/95 –  $  5,000
2/1/96  –  $ 10,000
3/11/97 –  $  5,000
4/11/97 –  $  3,000
5/8/97  –  $  2,000
8/6/97  –  $ 10,000
8/11/97 –  $  7,500
2/5/98  –  $    500
3/2/98  –  $  2,000
3/4/98  –  $    500
4/6/98  –  $    500
5/7/98  –  $    500
6/5/98  –  $    500
7/5/98  –  $    500
8/5/98  –  $    500
```

-48-

| | | |
|---|---|---|
| 9/8/98 – | $ | 500 |
| 10/8/98 – | $ | 500 |
| 11/6/98 – | $ | 500 |
| 12/4/98 – | $ | 500 |
| 1/6/99 – | $ | 500 |
| 2/4/99 – | $ | 500 |
| 3/4/99 – | $ | 500 |
| 4/6/99 – | $ | 500 |
| 1/10/00 – | $ | 1,000 |
| 2/4/00 – | $ | 1,000 |
| 3/3/00 – | $ | 1,000 |
| 11/13/00 – | $ | 100 |
| 11/8/01 – | $ | 7,000 |
| 11/19/01 – | $ | 7,000 |
| 12/5/01 – | $ | 7,000 |
| 1/18/02 – | $ | 5,000 |
| 6/10/02 – | $ | 7,000 |
| 6/19/02 – | $ | 7,000 |
| 6/26/02 – | $ | 7,000 |
| 7/3/02 – | $ | 7,000 |
| 7/17/02 – | $ | 7,000 |
| 7/31/02 – | $ | 7,000 |
| 2/18/03 – | $ | 7,500 |
| 5/12/03 – | $ | 7,500 |
| 5/21/04 – | $ | 5,000 |
| 8/25/04 – | $ | 5,000 |
| 11/12/04 – | $ | 5,000 |
| 1/10/05 – | $ | 5,000 |
| 1/12/07 – | $ | 1,000 |
| 7/23/07 – | $ | 50,000 |
| 8/16/07 – | $ | 50,000 |
| 12/10/07 – | $ | 15,000 |
| | | $241,600 |

235.  Upon information and belief, Plaintiffs George Tarrazi and Kathleen Tarrazi made

withdrawals in the total amount of $32,500.00 for the period from September 14, 1996 through

November 24, 2003 and have been damaged in the amount of $209,100.00, plus interest thereon and

he costs and disbursements of this action.

236.  Upon information and belief, Plaintiff Manuel Tutunjian deposited $25,000.00 in or

about November 1983 and $5,000.00 on or about April 15, 2008 with Barry/Leverage. He made no withdrawals and he has been damaged in the amount of $30,000.00, plus interest thereon and the costs and disbursements of this action.

237.    Upon information and belief, Plaintiff Sandra Wetrich Trust made the following deposits with Barry/Leverage on or about the following dates:

|            |   |          |
|------------|---|----------|
| 8/10/07    | – | $ 15,000 |
| 9/6/07     | – | $ 10,000 |
| 6/17/08    | – | $ 75,000 |
|            |   | $100,000 |

238.    Upon information and belief, Plaintiff Sandra Wetrich Trust made no withdrawals and has been damaged in the amount of $100,000.00, plus interest thereon and the costs and disbursements of this action.

239.    Upon information and belief, Plaintiff Maureen Zawislak made the following deposits with Barry/Leverage on or about the following dates:

|            |   |          |
|------------|---|----------|
| 10/20/97   | – | $ 10,000 |
| 7/1/99     | – | $ 50,000 |
| 1/18/00    | – | $ 50,000 |
| 3/23/03    | – | $ 30,000 |
|            |   | $140,000 |

240.    Upon information and belief, Plaintiff Maureen Zawislak made withdrawals in the total amount of $90,630.00 for the period from September 12, 2001 through June 11, 2008 and she has been damaged in the amount of $49,370.00, plus interest thereon and the costs and disbursements of this action.

241.    Upon information and belief, Plaintiff Maureen Zawislak received the following checks from Barry/Leverage, all of which were returned for insufficient funds:

| Date | Check No. | Amount | Drawn On |
|------|-----------|--------|----------|
| 8/8/07 | 041106 | $ 350 | Chase |
| 9/8/07 | 041276 | $1,000 | Chase |
| 1/16/08 | 4/16/08 | $1,000 | M&T |

242.    Upon information and belief, Plaintiff Alice Zinna made the following deposits with

Barry/Leverage on or about the following dates:

| 6/99- | $ 20,000 |
| 7/03- | $ 80,000 |
| 11/05- | $ 23,000 |
| 4/07- | $ 40,076.21 |
| | $ 163,076.21 |

243.    Upon information and belief, Plaintiff Alice Zinna made withdrawals in the total

amount of $10,000.00 between February 7, 2005 and May 4, 2007 and she has been damaged in the

amount of $153,076.21, plus interest thereon and the costs and disbursements of this action.

### AS AND FOR A FIRST CAUSE OF ACTION
Knowing Participation In a Breach of Trust

244.    Plaintiffs repeat and reallege the allegations contained in Paragraphs "1" through

"243" as though fully set forth.

245.    In purporting to act as an investment advisor, Barry/Leverage had a fiduciary duty to

Barry/Leverage customers. Barry/Leverage was in a position of superior knowledge and expertise

to Barry/Leverage customers, who reposed their trust and confidence in Barry/Leverage. This

created a relationship of high trust and confidence whereby Barry/Leverage was entrusted with the

funds of Barry/Leverage customers deposited in to the Barry/Leverage accounts in each of the

defendant's bank.

246.    Defendants knew that Barry/Leverage was purporting to operate an investment

advisory business or, at a minimum, were purporting to operate as an investment advisor with

-51-

authority over discretionary accounts and in that capacity was using each of the Barry/Leverage accounts as fiduciary bank accounts.

247.    In addition, defendants knew, among other things, that Barry/Leverage was exercising discretion over the customer accounts.

248.    Barry/Leverage breached this trust by misappropriating and diverting Barry/Leverage customer funds in each of the bank accounts maintained with defendants.

249.    Each of the defendants knew that Barry/Leverage was breaching their fiduciary duties by misappropriating and diverting the customer funds in each of the bank accounts. At a minimum, each defendant knew of suspicious transactions in the Barry/Leverage account that would have led a reasonably prudent person to suspect that army/Leverage were misappropriating and diverting funds of Barry/Leverage business customers and each of the defendants failed to inquire whether Barry/Leverage were misappropriating and diverting those funds. Reasonable inquiry would have revealed that the only plausible explanation for the suspicious transactions was that Barry/Leverage were misappropriating and diverting the customer funds in breach of their fiduciary duties.

250.    Each of the defendants knew that the transactions taking place in each of Barry/Leverage accounts did not coincide with any legitimate enterprise, and thus could only plausibly be explained by fraud.

251.    Upon information and belief, after performing minimal due diligence on Barry/Leverage and the Barry/Leverage accounts, each of the defendants knew that Barry/Leverage was engaging in fraud, or consciously avoided such knowledge. Defendants knew, among other things, that Barry/Leverage's returns were "too good to be true" and could not be reconciled with

market conditions.

252.  Despite this knowledge, each of the defendants moved funds in and out of the Barry/Leverage accounts at Barry/Leverage's behest and allowed Barry/Leverage customer funds to be used to make payments to Barry, to allow Barry to purchase speculative real estate, and to fund redemptions from other investors rather than to purchase securities from the Barry/Leverage accounts, in breach of Barry/Leverage's duties as fiduciaries.

253.  Each of the defendants is therefore liable for all funds Barry/Leverage misappropriated from each of the Barry/Leverage accounts afer the point at which each defendant knew or should have known that Barry/Leverage was misappropriating those funds.

254.  As a result of each defendant's knowing participation in this breach of trust, Plaintiffs, the customers of Barry/Leverage lost millions of dollars in the aggregate as set forth above.

## AS AND FOR A SECOND CAUSE OF ACTION
### Aiding and Abetting Fraud

255.  Plaintiffs repeat and reallege the allegations contained in Paragraphs "1" through "254" as though fully set forth.

256.  Barry committed a massive fraud through Leverage. Each of the defendants had actual knowledge of the fraud and lent substantial assistance to Barry/Leverage in committing the fraud. At a minimum, each of the defendants consciously avoided knowledge of the fraud.

257.  Upon information and belief, each of the defendants suspected a fraud and realized there was a high probability of fraud, but refrained from confirming it, in order to later deny knowledge of the fraud. The actions of each of the defendants proximately caused that fraud that

resulted in millions of dollars of damages to customer of Barry/Leverage.

258.    Upon information and belief, each defendant, individually, aided and abetted the fraud.  In addition, all of the defendants operated as a single, indivisible entity.  Therefore, each of the defendants is liable for the actions of the other defendants.

259.    Barry committed a substantial and large fraud through Leverage.  Barry told customers that their money would be invested in securities, that their principal would be safe and that they would always average a very high rate of return ,but instead, Barry stole the money and did not purchase securities as he claimed.  The Ponzi scheme has resulted in millions of dollars in losses to customers of Barry/Leverage and, in the aggregate, the Plaintiffs in particular.

260.    Upon information and belief, each of the defendants knew, or at least consciously avoided knowledge of the fraud.  Each of them knew that transactions in the Barry/Leverage accounts did not coincide with any legitimate enterprise thus could only be plausibly explained by fraud.

261.    Upon information and belief, each of the defendants was aware of highly suspicious activity in the Barry/Leverage accounts, including, large repetitive transactions, up and down spikes in the value and volume of transactions, the regular use of hand-written checks for large amounts of dollars and a huge amount of bounced checks over a short period of time.

262.    Upon information and belief, after performing minimal due diligence on Barry/Leverage and the Barry/Leverage accounts, each of the defendants knew that Barry/Leverage was engaging in fraud, or consciously avoided such knowledge.  Defendants knew, among other things, that Barry/Leverage's returns were "too good to be true" and could not be reconciled with market conditions.

263.    Each of the defendants knew Barry was a fraud. At a minimum, each of the defendants was repeatedly faced with evidence that there was a high probability of fraud and made a conscious decision not to confirm that fact.

264.    Each of the defendants substantially assisted Barry through Leverage in committing fraud by, among other things, moving funds in and out of the Barry/Leverage accounts at Barry/Leverage's behest, allowing Barry/Leverage customer funds to be used to make payments to Barry, allowing Barry to purchase speculative real estate, and to fund redemptions from other investors rather than to purchase securities from the Barry/Leverage accounts.

265.    Each of the defendant's assistance was a substantial factor in bring about and a proximate cause of the fraud. But for each of the defendant's assistance, Barry/Leverage would not have been able to continue to operate the Ponzi scheme for over three decades.

266.    As a result of each defendant's aiding and abetting Barry/Leverage's fraud, Plaintiffs, the customers of Barry/Leverage lost millions of dollars in the aggregate as set forth above.

### AS AND FOR A THIRD CAUSE OF ACTION
#### Aiding and Abetting Breach of Fiduciary Duty

267.    Plaintiffs repeat and reallege the allegations contained in Paragraphs "1" through "266" as though fully set forth.

268.    Barry/Leverage owed a fiduciary duty to Barry/Leverage customers. Barry/Leverage breached that fiduciary duty by perpetrating a massive Ponzi scheme and stealing millions of dollars from Barry/Leverage customers. Each of the defendants knowingly participated in the breach, causing harm to customers of Barry/Leverage. At a minimum, each of the defendants consciously avoided knowledge of the breach.

269. Upon information and belief, each of the defendants suspected Barry/Leverage were breaching a fiduciary duty and realized there was a high probability that Barry/Leverage were breaching a fiduciary duty, but refrained from confirming it, in order to later deny knowledge of the breach.

270. Upon information and belief, each defendant, individually, aided and abetted the breach of fiduciary duty by Barry/Leverage. In addition, all of the defendants operated as a single, indivisible entity. Therefore, each of the defendants is liable for the actions of the other defendants.

271. Barry/Leverage were in a fiduciary relationship with Barry/Leverage customers and they were in a superior position over those customers, which required those customers to repose trust and confidence in Barry/Leverage. In addition, pursuant to various agreements with customers, Barry/Leverage agreed to take customers' money and invest it in securities. Instead, Barry/Leverage took their money and used it to benefit themselves and redeem investments so that the ponzi scheme could continue.

272. Upon information and belief, each of the defendants knew that Barry/Leverage had a fiduciary duty to their customers and that Barry/Leverage breached that duty. Each of the defendants was aware that Barry/Leverage purported to be an investment advisor who would invest customers' funds in various securities.

273. Each of the defendants also knew, or at least consciously avoided knowledge that Barry/Leverage breached that fiduciary duty by engaging in fraud. Each of the defendants knew that the transactions taking place in each of the Barry/Leverage accounts did not coincide with any legitimate enterprise and could only be plausibly explained by fraud.

274. Upon information and belief, each of the defendants was aware of highly suspicious

-56-

activity in the Barry/Leverage accounts, including, large repetitive transactions, up and down spikes in the value and volume of transactions, the regular use of hand-written checks for large amounts of dollars and a huge amount of bounced checks over a short period of time.

275.    Upon information and belief, after performing minimal due diligence on Barry/Leverage and the Barry/Leverage accounts, each of the defendants knew that Barry/Leverage was engaging in fraud, or consciously avoided such knowledge.  Defendants knew, among other things, that Barry/Leverage's returns were "too good to be true" and could not be reconciled with market conditions.

276.    Each of the defendants knew Barry through Leverage was breaching a fiduciary duty. At a minimum, each of the defendants was repeatedly faced with evidence that there was a high probability of breach of fiduciary duty and made a conscious decision not to confirm that fact.

277.    Each of the defendants substantially assisted Barry through Leverage in committing fraud by, among other things, moving funds in and out of the Barry/Leverage accounts at Barry/Leverage's behest, allowing Barry/Leverage customer funds to be used to make payments to Barry, allowing Barry to purchase speculative real estate, and to fund redemptions from other investors rather than to purchase securities from the Barry/Leverage accounts.

278.    Each of the defendants participated in and provided substantial assistance to Barry/Leverage's breach of fiduciary duty. Each defendant's assistance was a probable cause of the breach.  Without each of the defendant's assistance, Barry/Leverage would not have been able to continue to operate the Ponzi scheme for over three decades.

279.    As a result of each defendant's aiding and abetting Barry/Leverage's breach of fiduciary duty, Plaintiffs, the customers of Barry/Leverage lost millions of dollars in the aggregate

as set forth above.

### AS AND FOR A FOURTH CAUSE OF ACTION
#### Aiding and Abetting Conversion

280.    Plaintiffs repeat and reallege the allegations contained in Paragraphs "1" through "279" as though fully set forth.

281.    Through the purported investment advisor business, Barry/Leverage converted millions of dollars of customers' property.

282.    Barry/Leverage customers have a legal right and interest in the millions of dollars personally invested with Barry/Leverage.  Barry/Leverage exercised unauthorized dominion and control over those dollars in derogations of their customers' rights by failing to invest the funds in securities.  Instead, Barry/Leverage used the customers' funds to make payments to themselves, purchase speculative real property and to fund redemption s of other investors.  Barry/Leverage's unauthorized use of customers' finds resulted in the wrongful conversion of the customers' specifically identifiable funds.

283.    Upon information and belief, each of the defendants had actual knowledge of the conversion and lent substantial assistance to Barry/Leverage in converting those monies.  At a minimum, each of the defendants consciously avoided knowledge of the conversion.

284.    Upon information and belief, each of the defendants suspected, and even realized there was a high probability that Barry/Leverage were converting customers' money, but refrained from confirming their suspicions in order to later deny knowledge of the conversion.  Each of the defendant's actions proximately caused the conversion that resulted in million s of dollars of damages to customers of Barry/Leverage.

-58-

285.   Upon information and belief, each of the defendants knew, or at least consciously avoided knowing that Barry/Leverage did not purchase securities bu instead stole customers' money. Each of the defendants knew that the inexplicable transactions taking place in the Barry/Leverage accounts did not coincide with any legitimate securities investment and thus could only be explained by fraud.

286.   Upon information and belief, each of the defendants was aware of highly suspicious activity in the Barry/Leverage accounts, including, large repetitive transactions, up and down spikes in the value and volume of transactions, the regular use of hand-written checks for large amounts of dollars and a huge amount of bounced checks over a short period of time.

287.   Upon information and belief, after performing minimal due diligence on Barry/Leverage and the Barry/Leverage accounts, each of the defendants knew that Barry/Leverage was engaging in conversion, or consciously avoided such knowledge.  Defendants knew, among other things, that Barry/Leverage's returns were "too good to be true" and could not be reconciled with market conditions.

288.   Each of the defendants knew Barry through Leverage was converting customers' funds.  At a minimum, each of the defendants was repeatedly faced with evidence that there was a high probability of conversion of customers' funds and made a conscious decision not to confirm that fact.

289.   Each of the defendants substantially assisted Barry through Leverage in converting customers' funds by among other things, moving funds in and out of the Barry/Leverage accounts at Barry/Leverage's behest, allowing Barry/Leverage customer funds to be used to make payments to Barry, allowing Barry to purchase speculative real estate, and to fund redemptions from other

investors rather than to purchase securities from the Barry/Leverage accounts.

290. Each of the defendants participated in and provided substantial assistance to Barry/Leverage's conversion of customers' funds. Each defendant's assistance was a probable cause of the conversion. Without each of the defendant's assistance, Barry/Leverage would not have been able to continue to operate the Ponzi scheme for over three decades.

291. As a result of each defendant's aiding and abetting Barry/Leverage's conversion of customers' funds, Plaintiffs, the customers of Barry/Leverage, lost millions of dollars in the aggregate as set forth above.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Unjust Enrichment

292. Plaintiffs repeat and reallege the allegations contained in Paragraphs "1" through "291" as though fully set forth.

293. Upon information and belief, each of the defendants benefitted through its receipt of funds that were the property of Barry/Leverage customers, benefits that each defendant acquired only as a result of perpetuating and participating in the Barry/Leverage Ponzi scheme.

294. Each of the defendants benefitted by receiving customers' funds by receiving deposits of those funds into the Barry/Leverage accounts and using the balances in each account for their own benefits so long as each account was open. Each of the defendants also received customers' funds when Barry/Leverage checks were dishonored in the form of fees charged for returned checks.

295. Each of the defendants earned these benefits at the expense of Plaintiffs and cannot justly retain them. Upon information and belief, faced with the prospect of losing fees and profits,

-60-

each of the defendants chose to ignore compelling evidence of Barry/Leverage's breach of fiduciary duty, fraud and conversion as aforesaid.

296.    Each of the defendants helped perpetuate Barry/Leverage's misconduct as aforesaid by ignoring evidence of such misconduct and continuing to use the Plaintiffs' funds in each Barry/Leverage account for its own enrichment.

297.    Equity and good conscience require full restitution of the monies received by each defendant, directly and indirectly from Barry/Leverage. This includes not only Plaintiff's funds each defendant received directly from Barry/Leverage, but also any profits made from each defendant's use of this money.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Fraud on the Regulator**

298.    Plaintiffs repeat and reallege the allegations contained in Paragraphs "1" through "297" as though fully set forth.

299.    Upon information and belief, at all times relevant herein, the individual defendants have been regulated by federal and New York state agencies.

300.    Pursuant to the regulations of the various agencies, each of the defendants was required to report to regulators any suspicious activity in the accounts of each bank's customers. Each defendant was also required to implement policies and procedures for identifying potentially illegal activity.

301.    Upon information and belief, as detailed above, each of the defendants omitted and misrepresented facts to both federal and state regulators. Each of the defendants defrauded these regulators to the detriment of Plaintiffs.

-61-

302.    Throughout their relationships with Barry/Leverage, each of the defendants had access to a wealth of information as aforesaid about Barry/Leverage's illegal activities. Among other things, such information revealed inconsistencies between Barry/Leverage's purported business, activity in each of the Barry/Leverage accounts and indicated that Barry/Leverage were engaged in illegal activities.

303.    Each of the defendants is required under the bank Secrecy Act, the Patriot Act, and was required under New York laws and regulations, to file reports with appropriate regulators when each discovers suspicious activity by any of its customers. Such activity includes, inter alia, transactions where the bank has a substantial basis for believing a criminal violation is occurring, transactions involving potential money laundering and transactions that have no business or apparent lawful purpose or are not the sort in which the particular customer would normally be engaging. As alleged in detail above, there were numerous suspicious transactions in each of the Barry/Leverage accounts which should have triggered investigations and reports to regulators. Nor did the Barry/Leverage accounts serve a legitimate business purpose as money in those accounts did not go to buy and sell securities. The only plausible explanation was that Barry/Leverage were engaging in fraud or other illicit activity.

304.    Upon information and belief, none of the defendants made reports concerning suspicious activities in the Barry/Leverage accounts. Although there was no legitimate business purpose for activity in the accounts, the accounts were never closed, which would have been consistent with reports to regulators for such egregious conduct.

305.    Each of the defendants is required under the Bank Secrecy Act, the patriot Act, and was required under New York laws and regulations, to maintain rigorous anti-money-laundering

-62-

policies and procedures. If each of the defendants had such policies and procedures and executed them thoroughly and diligently, the regulators would have had information that would have led to the uncovering of the Ponzi scheme, because the only plausible explanation was that Barry/Leverage were engaging in illegal activities.

306. Based on the information uniquely available to each of the defendants, each defendant knew that the only plausible explanation regarding the business engaged in through Barry/Leverage was illegal activities. Each of the defendants therefore knowingly failed to communicate these facts to regulators, despite each one's obligation to do so.

307. In light of the above information, each defendant's failure to fully and accurately report to regulators was reckless and evidence of conscious misbehavior on the part of each defendant. Each defendant ignored its duty to monitor each Barry/Leverage account and each one's internal policies and procedures aimed at detecting the numerous red flags surrounding Barry/Leverage's operations.

308. Each defendant's failure to fully and accurately report allowed each one to maintain a profitable relationship with Barry/Leverage and continue to earn more revenues at Plaintiffs' expense.

309. Each of the defendant's reputation in the banking and financial communities lent Barry/Leverage's operations legitimacy and cover that was reasonably relied upon by Barry/Leverage customers, and Plaintiffs in particular, who transferred money to Barry/Leverage.

310. Each of the defendants intended for Barry/Leverage customers to rely upon each defendant's commitment to compliance when they were transacting business with each defendant through deposits into the Barry/Leverage accounts.

311.    Plaintiffs reasonably relied on each defendant to adequately monitor and fully and accurately report on Barry/Leverage. Plaintiffs reasonably relied on each defendant's representations and reputations when they chose to continue giving money to Barry/Leverage. If each defendant had not defrauded federal and state regulators, the holes in each defendant's compliance programs and the fraudulent activity in the Barry/Leverage bank accounts would have been exposed to Plaintiffs.

312.    Likewise, each defendant proximately caused the loss to Plaintiffs and other customers of Barry/Leverage.

313.    As a result of each of the defendant's fraud upon federal and state regulators, Plaintiffs, in the aggregate, lost millions of dollars. At a minimum, the actions of each defendant resulted in an aggregate loss Plaintiffs of at least $11.1 million.

### AS AND FOR A SEVENTH CAUSE OF ACTION
#### Common Law Negligence

314.    Plaintiffs repeat and reallege the allegations contained in Paragraphs "1" through "313" as though fully set forth.

315.    Each of the defendants had a duty to:

    a.    know its customer;
    b.    monitor its customer's account activity;
    c.    know what business its customer Barry/Leverage was operating;
    d.    investigate the Barry/Leverage account activity which was inconsistent with any legitimate business purpose;
    e.    investigate suspicious activity in the Barry/Leverage accounts; and
    f.    take action.

316.    Each of the defendants breached those duties and such breaches were a substantial cause in bringing about injury to the Plaintiffs.

317.    The injuries to each of the Plaintiffs was brought about as the result of the gros

-64-

negligence, negligence, carelessness and recklessness of each of the defendants as more particularly detailed above and by example, in allowing Barry/Leverage to breach their fiduciary obligations to Plaintiffs, convert Plaintiffs' funds, and commit a fraud on the Plaintiffs.

318.   As the result of the gross negligence, negligence, carelessness and recklessness of each of the defendants, Plaintiffs have been damaged in amounts to be determined on the trial of this action, but in the aggregate amount of at least $ 11.1 Million and punitive damages in the amount of $250,000,00.00.

WHEREFORE, Plaintiffs respectfully demand judgment as follows:

a.      on their First Cause of Action, compensatory damages in amounts to be proven upon the trial of this action, but in the aggregate amount of at least $11.1 million and exemplary and/or punitive damages in an amount to be determined upon the trial of this action;

b.      on their Second Cause of Action, compensatory damages in amounts to be proven upon the trial of this action, but in the aggregate amount of at least $11.1 million and exemplary and/or punitive damages in an amount to be determined upon the trial of this action;

c.      on their Third Cause of Action, compensatory damages in amounts to be proven upon the trial of this action, but in the aggregate amount of at least $11.1 million and exemplary and/or punitive damages in an amount to be determined upon the trial of this action;

d.      on their Fourth Cause of Action, compensatory damages in amounts to be proven upon the trial of this action, but in the aggregate amount of at least $11.1 million and exemplary and/or punitive damages in an amount to be determined upon the trial of this action;

e.      on their Fifth Cause of Action, compensatory damages in amounts to be proven upon the trial of this action, but in the aggregate amount of at least $11.1 million and exemplary and/or

-65-

punitive damages in an amount to be determined upon the trial of this action, and disgorgement of al profits made by each defendant on Plaintiff's funds;

     f.     on their Sixth Cause of Action, compensatory damages in amounts to be proven upon the trial of this action, but in the aggregate amount of at least $11.1 million and exemplary and/or punitive damages in an amount to be determined upon the trial of this action;

     g.     on their Seventh Cause of Action, compensatory damages in amounts to be proven upon the trial of this action, but in the aggregate amount of at least $11.1 million and exemplary and/or punitive damages in the amount of $250,000,00.00;

     h.     prejudgment interest pursuant to CPLR §5001 and interest pursuant to CPLR §5002 and §5003;

     I.     the attorney's fees, costs and disbursements of this action; and

     j.     such other and further relief as may be just and proper.

Dated: New York, New York
       October 27, 2011

                                  Kahn Gordon Timko & Rodriques, P.C.

                                  By:_____
                                      Nicholas I. Timko (NIT 2484)
                                    Attorneys for Plaintiffs
                                    20 Vesey Street – Suite 300
                                    New York, News York 10007
                                    (212) 233-2040
                                    (212) 732-4666  (Fax)
                                    nitimko@kgtrpc.com
                                    kgtrpc@aol.com

## VERIFICATION

**NICHOLAS I. TIMKO,** an attorney duly admitted to practice before the Courts of the State of New York, hereby affirms the following to be true under the penalties of perjury:

1.      I am a member of the firm of Kahn Gordon Timko & Rodriques, P.C., the attorneys for the Plaintiffs in this action. As such, I am familiar with the facts that underlie this action.

2.      I have read the foregoing Complaint and know its contents to be true based upon a review of the files maintained by my firm and conversations with one or more of the Plaintiffs, except as to those matters alleged upon information and belief, which I believe to be true.

3.      I make this Verification because Plaintiffs are not in a New York County where my firm maintain s an office.

Dated: New York, New York
      October 27, 2011

 

                                                Nicholas I. Timko

-67-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

----------------------------------------------------------x

ALEXANDER MARCHAK, HOLLY MARCHAK, ANN
MARIE DELIA, ESTATE OF WILLIAM DELIA, SHIRLEY
ABRAMS, LYNNE BELAIEF, JANICE BINI, CONNIE
BOCCIA, FRANK BOCCIA, MARGOT BOCCIA, THOMAS
BOGAN, JOAN BOGAN, GIULIANA BONA, MARY
CAMERON, ANDREA CHIARAPPA, YOLANDA
CHIARAPPA, OLIVER COLONNA, RITA CORREALE,
DOREEN DALY, FRANCIS DALY, LORRAINE DALY,
ADELIA DEL TRECCO, DOMENIC DeSANTIS, LINDA
DeSANTIS, LORENZO DeSANTIS, MARIA DeSANTIS, ADELE
DISARMATO, ELVIRA FEDERICO, SILVIO FEDERICO,
ONELIA FEDERICO, CARL GAMBELLO, SANDRA
FERRARO, CAROLE GAMBELLO, BARBARA GREBIN,
STEPHANIE GREBIN, LUDVIG HAUGEDAL, DOMINICK
IOCCO, MARIA LoCASCIO, JOSEPH LoVECCHIO, JANET
LoVECCHIO, EDWARD MAHONEY, TARA MAHONEY,
LEONARD MANDATO, JOSEPH MANNANICE, DOREEN
MANNANICE, BRIAN MARCHESE, MICHAEL MARCHESE,
BARBARA McINTOSH, LIDIA OHRYN, MARIKA OHRYN,
PETER OHRYN, OHRYN FAMILY TRUST, INGA POSLITUR,
JOSEPH RUDIS, IRENE RUDIS, LOIS SARLI-KREBS, MYRON
SECH, LISA CAPRARA SECH, ANTHONY SECH BY HIS
MOTHER AND NATURAL GUARDIAN LISA CAPRARA
SECH, MARIA SHAW, ROBERT SWEENEY, VERONICA
SWEENEY, TARA SROKA, DYLAN TARRAZI, CAROLINE
TARAZZI, FREDERICK TARAZZI, GREGORY TARAZZI,
VICTOR TARAZZI, JR., GEORGE TARAZZI, KATHLEEN
TARAZZI, MANUEL TUTUNJIAN, SANDRA WETRICH
TRUST, MAUREEN ZAWISLAK, AND ALICE ZINNA,

E-Filing Case

Index No.

SUMMONS and
VERIFIED COMPLAINT

Plaintiffs,

-against-

JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A.,
M&T BANK CORPORATION, HSBC NORTH AMERICA INC.,
d/b/a HSBC BANK USA, N.A., and TD BANK, N.A., AS
SUCCESSOR IN INTEREST TO COMMERCE BANK,

Defendants.

----------------------------------------------------------x

Kahn Gordon Timko & Rodriques, P.C.
Attorneys for Plaintiffs
20 Vesey Street – Suite 300
New York, New York 10007
(212) 233-2040

**Affidavit of Service for JPMorgan Chase Bank, N.A.**

**FILED: KINGS COUNTY CLERK 11/10/2011**

NYSCEF DOC. NO. 3
Form 27 - GENERAL PURPOSE

INDEX NO. 500984/2011

RECEIVED NYSCEF: 11/10/2011

KAHN GORDON TIMKO &RODRIQUES PC  KAHN GORDON TIMKO &RODRIQUES PC
SUPREME COURT KINGS COUNTY STATE OF NEW YORK

-------------------------------------------------------------

ALEXANDER MARCHAK, ETAL

PLAINTIFF

JPMORGAN CHASE & CO., ETAL

-vs-

DEFENDANT

index No. 500984/11
Date Filed

Office No.
Court Date.

-------------------------------------------------------------

STATE OF NEW YORK, COUNTY OF NEW YORK :SS:

RUDOLPH WRIGHT being duly sworn, deposes and says; I am over 18 years of age, not a party to
this action, and reside in the State of New York. That on the 03RD day of NOVEMBER, 2011
03:55 PM at
          ONE CHASE MANHATTAN PLAZA (SERVED IN LOBBY)
          NEW YORK NY
I served a true copy of the SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING
AVAILABILITY,
upon JPMORGAN CHASE BANK, N.A.
the DEFENDANT therein named by delivering to, and leaving personally with
RICHARD P. STILLMAN, LEGAL CLERK AUTHORIZED TO ACCEPT
a true copy of each thereof.
          Deponent describes the person served as aforesaid to the best of
deponent's ability at the time and circumstances of the service as follows.

          SEX: MALE   COLOR: WHITE HAIR: BROWN
          APP.AGE: 28 APP. HT: 5/7 APP. WT: 148
          OTHER IDENTIFYING FEATURES


COMMENTS:


Sworn to before me this
07TH day of NOVEMBER, 2011



KENNETH WISSNER
Notary Public NEW YORK
  01WI4714130
Qualified in NEW YORK
Commission Expires 03/30/2014

RUDOLPH WRIGHT L022795
AETNA JUDICIAL SERVICE INC
225 BROADWAY, SUITE 1802
NEW YORK, NY, 10007
Reference No: 3-KG1-168641

==================================================================

Index No. 500984/11

SUPREME COURT KINGS COUNTY STATE OF NEW YORK

==================================================================

ALEXANDER MARCHAK, ETAL

                    PLAINTIFF

        - against -
JPMORGAN CHASE &CO., ETAL

                    DEFENDANT
==================================================================

SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING AVAILABILITY,

==================================================================

KAHN GORDON TIMKO &RODRIQUES PC

20 VESEY ST 3RD FLOOR

NEW YORK, NY 10007

212-233-2040

## Affidavit of Service for JPMorgan Chase & Co.

INDEX NO. 500984/2011

RECEIVED NYSCEF: 11/17/2011

**FILED: KINGS COUNTY CLERK 11/17/2011**

NYSCEF DOC. NO. 4
FORM 19 - SECRETARY OF STATE

KAHN GORDON TIMKO &RODRIQUES PC   KAHN GORDON TIMKO &RODRIQUES PC

SUPREME COURT KINGS COUNTY STATE OF NEW YORK
-------------------------------------------------
ALEXANDER MARCHAK, ETAL

index No. 500984/11
Date Filed

PLAINTIFF

- against -

JPMORGAN CHASE & CO., ETAL

DEFENDANT

Office No.
Court Date.
-------------------------------------------------

STATE OF NEW YORK, COUNTY OF NEW YORK :SS:

STEVE AVERY being duly sworn, deposes and says that he is over the age of 18 years, resides
in the State of New York and is not a party to this action. That on the 14TH day of
NOVEMBER, 2011 at 11:10 AM at the Office of the Secretary of State of the State of New York
in the City of Albany, New York, he served the
SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING AVAILABILITY,
UPON: JPMORGAN CHASE &CO
the DEFENDANT in this action, by delivering to and leaving with
DONNA CHRISTIE, AGENT

in the office of the Secretary of State of New York, two true copies thereof and at the
same time of making such service, deponent paid said Secretary of State, a fee of $40.00 .
That said service was made pursuant to Section 306 BCL.

Deponent further describes the person actually served as follows:

SEX: FEMALE COLOR: WHITE HAIR: BLONDE
APP.AGE: 40 APP. HT: 5/5 WEIGHT: 145
OTHER IDENTIFYING FEATURES:

COMMENTS:*ON NOVEMBER 16, 2011 DEPONENT MAILED TO THE DEFENDANT BY REGULAR MAIL THE SUMMONS
AND VERIFIED COMPLAINT AND NOTICE OF ELECTRONIC FILING AVAILABILITY AT 270 PARK AVE., 38TH
FLOOR, NEW YORK, NY 10017

SWORN TO BEFORE ME THIS
16TH day of NOVEMBER, 2011

BRETT GOLUB
Notary Public, NASSAU COUNTY
01G06129491
Qualified in NASSAU COUNTY
Commission Expires 06/27/2013

STEVE AVERY
AETNA JUDICIAL SERVICE INC
225 BROADWAY, SUITE 1802
NEW YORK, NY, 10007
Reference No: 3-KG1-168642

Form 54                                                                                          SR

                        KAHN GORDON TIMKO &RODRIQUES PC   KAHN GORDON TIMKO &RODRIQUES PC
SUPREME COURT KINGS COUNTY STATE OF NEW YORK
-----------------------------------------------------------------
ALEXANDER MARCHAK, ETAL                                          index No. 500984/11
                                                    PLAINTIFF     Date Filed
                                     - vs -
JPMORGAN CHASE & CO., ETAL
                                                    DEFENDANT     Office No.
-----------------------------------------------------------------   Court Date.

Gentlemen:

Please take notice that the

SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING AVAILABILITY,

in the above entitled action was served upon you personally on
NOVEMBER 14TH 2011 by delivering a true copy thereof to the Secretary of State of the State
of New York , together with the Statutory fee of $ 40.00 pursuant to the provisions of
section 307 of the Business Corporation Laws of the State of New York.

                                                                Regular
And please take further notice that we are sending you herewith, by ~~registered~~ mail another
true copy of said

SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING AVAILABILITY,

Date: NOVEMBER 14TH 2011 Yours, ETC.

TO: JPMORGAN CHASE &CO
    270 PARK AVE, (38TH FL.)
    NEW YORK, NY 10017


    KAHN GORDON TIMKO &RODRIQUES PC
    ATTORNEYS FOR PLAINTIFF
    20 VESEY ST 3RD FLOOR
    NEW YORK, NY 10007
    3-KG1-168642

============================================================

Index No. 500984/11

SUPREME COURT KINGS COUNTY STATE OF NEW YORK

============================================================

ALEXANDER MARCHAK, ETAL

                    PLAINTIFF

        - against -
JPMORGAN CHASE &CO., ETAL

                    DEFENDANT
============================================================

SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING AVAILABILITY,

============================================================

KAHN GORDON TIMKO &RODRIQUES PC

20 VESEY ST 3RD FLOOR

NEW YORK, NY 10007

212-233-2040

**Affidavit of Service for HSBC North America, Inc. d/b/a
HSBC Bank USA, N.A.**

KAHN GORDON TIMKO &RODRIQUES PC   KAHN GORDON TIMKO &RODRIQUES PC
SUPREME COURT KINGS COUNTY STATE OF NEW YORK

-----------------------------------------------------

| | |
|---|---|
| ALEXANDER MARCHAK, ETAL | index No. 500984/11 |
| PLAINTIFF | Date Filed |
| - against - | |
| JPMORGAN CHASE & CO., ETAL | Office No. |
| DEFENDANT | Court Date. |

-----------------------------------------------------

STATE OF NEW YORK, COUNTY OF NEW YORK :SS:

STEVE AVERY being duly sworn, deposes and says that he is over the age of 18 years, resides
in the State of New York and is not a party to this action. That on the 14TH day of
NOVEMBER, 2011 at 11:10 AM at the Office of the Secretary of State of the State of New York
in the City of Albany, New York, he served the
SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING AVAILABILITY;
UPON: HSBC NORTH AMERICA INC. D/B/A HSBC BANK USA, N.A.
the DEFENDANT in this action, by delivering to and leaving with
DONNA CHRISTIE, AGENT

in the office of the Secretary of State of New York, two true copies thereof and at the
same time of making such service, deponent paid said Secretary of State, a fee of $40.00 .
That said service was made pursuant to Section 306 BCL.

Deponent further describes the person actually served as follows:

SEX: FEMALE COLOR: WHITE HAIR: BLONDE
APP.AGE: 40 APP. HT: 5/5 WEIGHT: 145
OTHER IDENTIFYING FEATURES:

COMMENTS:*ON NOVEMBER 16, 2011 DEPONENT MAILED TO THE DEFENDANT BY REGULAR MAIL THE SUMMONS
AND VERIFIED COMPLAINT AND NOTICE OF ELECTRONIC FILING AVAILABILITY AT ONE HSBC CENTER,
BUFFALO, NY

SWORN TO BEFORE ME THIS
16TH day of NOVEMBER, 2011

BRETT GOLUB
Notary Public, NASSAU COUNTY
01G06129491
Qualified in NASSAU COUNTY
Commission Expires 06/27/2013

STEVE AVERY
AETNA JUDICIAL SERVICE INC
225 BROADWAY, SUITE 1802
NEW YORK, NY, 10007
Reference No: 3-KG1-168644

Form 54                                                                           SR

                    KAHN GORDON TIMKO &RODRIQUES PC  KAHN GORDON TIMKO &RODRIQUES PC
SUPREME COURT KINGS COUNTY STATE OF NEW YORK
--------------------------------------------------------------
ALEXANDER MARCHAK, ETAL                                    index No. 500984/11
                                                          Date Filed
                                              PLAINTIFF
                              - vs -
JPMORGAN CHASE & CO., ETAL
                                              DEFENDANT    Office No.
                                                          Court Date.
--------------------------------------------------------------
Gentlemen:

Please take notice that the

SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING AVAILABILITY,

in the above entitled action was served upon you personally on
NOVEMBER 14TH 2011 by delivering a true copy thereof to the Secretary of State of the State
of New York , together with the Statutory fee of $ 40.00 pursuant to the provisions of
section 307 of the Business Corporation Laws of the State of New York.
                                                        *Regular*
And please take further notice that we are sending you herewith, by ~~registered~~ mail another
true copy of said

SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING AVAILABILITY,

Date: NOVEMBER 14TH 2011 Yours, ETC.

TO: HSBC NORTH AMERICA INC. D/B/A HSBC BANK USA, N.A.
    ONE HSBC CENTER
    BUFFALO, NY


    KAHN GORDON TIMKO &RODRIQUES PC
    ATTORNEYS FOR PLAINTIFF
    20 VESEY ST 3RD FLOOR
    NEW YORK, NY 10007
    3-KG1-168644

===================================================================================

Index No. 500984/11

SUPREME COURT KINGS COUNTY STATE OF NEW YORK

===================================================================================

ALEXANDER MARCHAK, ETAL

             PLAINTIFF

      - against -
JPMORGAN CHASE &CO., ETAL

           DEFENDANT
===================================================================================

SUMMONS AND VERIFIED COMPLAINT, NOTICE OF ELECTRONIC FILING AVAILABILITY,

===================================================================================

KAHN GORDON TIMKO &RODRIQUES PC

20 VESEY ST 3RD FLOOR

NEW YORK, NY 10007

212-233-2040

## Affidavit of Service for M&T Bank Corp.

INDEX NO. 500984/2011

FILED: KINGS COUNTY CLERK 11/17/2011

RECEIVED NYSCEF: 11/17/2011

NYSCEF DOC. NO. 6
FORM 19 SECRETARY OF STATE

KAHN GORDON TIMKO &RODRIQUES PC   KAHN GORDON TIMKO &RODRIQUES PC

SUPREME COURT KINGS COUNTY STATE OF NEW YORK
----------------------------------------------------

| | |
|---|---|
| ALEXANDER MARCHAK, ETAL | index No. 500984/11 |
| PLAINTIFF | Date Filed |
| - against - | |
| JPMORGAN CHASE & CO., ETAL | Office No. |
| DEFENDANT | Court Date. |

----------------------------------------------------

STATE OF NEW YORK, COUNTY OF NEW YORK :SS:

STEVE AVERY being duly sworn, deposes and says that he is over the age of 18 years, resides in the State of New York and is not a party to this action. That on the 14TH day of NOVEMBER, 2011 at 11:10 AM at the Office of the Secretary of State of the State of New York in the City of Albany, New York, he served the
SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING AVAILABILITY,
UPON: M&T BANK CORPORATION
the DEFENDANT in this action, by delivering to and leaving with
DONNA CHRISTIE, AGENT

in the office of the Secretary of State of New York, two true copies thereof and at the same time of making such service, deponent paid said Secretary of State, a fee of $40.00 . That said service was made pursuant to Section 306 BCL.

Deponent further describes the person actually served as follows:

SEX: FEMALE COLOR: WHITE HAIR: BLONDE
APP.AGE: 40 APP. HT: 5/5 WEIGHT: 145
OTHER IDENTIFYING FEATURES:

COMMENTS:*ON NOVEMBER 16, 2011 DEPONENT MAILED TO THE DEFENDANT BY REGULAR MAIL THE SUMMONS AND VERIFIED COMPLAINT AND NOTICE OF ELECTRONIC FILING AVAILABILITY AT ONE MTPLAZA, BUFFALO, NY

SWORN TO BEFORE ME THIS
16TH day of NOVEMBER, 2011

KENNETH WISSNER
Notary Public, NEW YORK
01WI4714130
Qualified in NEW YORK
Commission Expires 03/30/2014

STEVE AVERY
AETNA JUDICIAL SERVICE INC
225 BROADWAY, SUITE 1802
NEW YORK, NY, 10007
Reference No: 3-KG1-168643

Form 54                                                                                                    SR

                    KAHN GORDON TIMKO &RODRIQUES PC   KAHN GORDON TIMKO &RODRIQUES PC
SUPREME COURT KINGS COUNTY STATE OF NEW YORK

------------------------------------------------------------
ALEXANDER MARCHAK, ETAL                                          index No. 500984/11
                                                                Date Filed.
                                                     PLAINTIFF
                                          - vs -
JPMORGAN CHASE & CO., ETAL
                                                                Office No.
                                                     DEFENDANT   Court Date.
------------------------------------------------------------

Gentlemen:

Please take notice that the

SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING AVAILABILITY,

in the above entitled action was served upon you personally on

NOVEMBER 14TH 2011 by delivering a true copy thereof to the Secretary of State of the State
of New York , together with the Statutory fee of $ 40.00 pursuant to the provisions of
section 307 of the Business Corporation Laws of the State of New York.

                                                                    Regular
And please take further notice that we are sending you herewith, by registered mail another
true copy of said

SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING AVAILABILITY,

Date: NOVEMBER 14TH 2011 Yours, ETC.

TO: MTBANK CORPORATION
    ONE MTPLAZA
    BUFFALO, NY


    KAHN GORDON TIMKO &RODRIQUES PC
    ATTORNEYS FOR PLAINTIFF
    20 VESEY ST 3RD FLOOR
    NEW YORK, NY 10007
    3-KG1-168643

Index No. 500984/11

SUPREME COURT KINGS COUNTY STATE OF NEW YORK

ALEXANDER MARCHAK, ETAL

                    PLAINTIFF

            - against -
JPMORGAN CHASE &CO., ETAL

                    DEFENDANT

SUMMONS AND VERIFIED COMPLAINT,NOTICE OF ELECTRONIC FILING AVAILABILITY,

KAHN GORDON TIMKO &RODRIQUES PC

20 VESEY ST 3RD FLOOR

NEW YORK, NY 10007

212-233-2040

## Affidavit of Service for TD Bank, N.A.

FILED: KINGS COUNTY CLERK 11/21/2011

NYSCEF DOC. NO. 7

INDEX NO. 500984/2011

RECEIVED NYSCEF: 11/21/2011

# AFFIDAVIT OF SERVICE

**State of NEW YORK**                    **County of KINGS**                    **Supreme Court**

Index Number: 500984-2011
Date Filed: _____

Plaintiff:
**ALEXANDER MARCHAK, etal**

vs.

Defendant:
**JP MORGAN CHASE & CO., etal**

For:
KAHN, GORDON, TIMKO & RODRIGUES, P.C.
20 Vesey Street
Suite 300
New York, NY 10007

Received by CAMDEN CO SHERIFF'S DEPT to be served on **TD BANK, N.A., 1701 ROUTE 70 EAST, CHERRY HILL, NJ 08034.**

I, Thomas Ogilvie, being duly sworn, depose and say that on the **7th day of November, 2011 at 9:55 am, I:**

**AUTHORIZED:** served by delivering a true copy of the **SUMMONS AND VERIFIED COMPLAINT** , to: **KESHA LEAVY** as **CUSTOMER SALES ASST.**, who stated they are authorized to accept service for: **TD BANK, N.A.** at the address of: **1701 ROUTE 70 EAST, CHERRY HILL, NJ 08034,** and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 27, Sex: F, Race/Skin Color: White, Height: 5'7, Weight: 135, Hair: Black, Glasses: Y

I am over the age of 18 and have no interest in the above action.

_____  11/4/11
**Thomas Ogilvie**
Process Server

Subscribed and Sworn to before me on the 7th day of
November, 2011 by the affiant who is personally
known to me.

_____
NOTARY PUBLIC

**CAMDEN CO SHERIFF'S DEPT**
By: **Court House Legal Services, Inc.**
856-428-4700
Cherry Hill, NJ 08034

Our Job Serial Number: 2011007878
Ref: 11006354

Stacey Ann Collins
Notary Public
New Jersey
My Commission Expires 9-3-2013

Copyright © 1992-2009 Database Services, Inc. - Process Server's Toolbox V6.3u

**From:** Kozlowski, Andrea [mailto:AKOZLOWSKI@mtb.com]
**Sent:** Tuesday, November 29, 2011 9:51 AM
**To:** Driscoll, Michael; Plotkin, Robert
**Subject:** RE: Marchak v. JPMORGAN et al Sup Ct Kings County/Consent of M&T Bank to Removal

I confirm my authorization as stated below.

Andrea R. Kozlowski
VP and Asst. Secretary, M&T Bank Corporation

**From:** Driscoll, Michael
**Sent:** Tuesday, November 29, 2011 9:48 AM
**To:** 'Plotkin, Robert'
**Cc:** Kozlowski, Andrea
**Subject:** RE: Marchak v. JPMORGAN et al Sup Ct Kings County/Consent of M&T Bank to Removal

Robert,

It was nice to speak with you yesterday. The named defendant in this action, "M&T Bank
Corporation", is the incorrect party to this action. M&T Bank Corporation is a New York
Corporation and a financial holding company. The proper party to this action should be M&T
Bank, a New York State chartered bank. Despite this pleading error, both M&T Bank
Corporation and M&T Bank consent to the filing of an application for removal to U.S. District
Court. I am a Vice President and Associate General Counsel with authority to authorize removal
on behalf of M&T Bank. Andrea Kozlowski, copied above, is a Vice President and Assistant
Secretary of M&T Bank Corporation with the authority to authorize removal on behalf of M&T
Bank Corporation. We both approve removal of this action. Should you require a separate e-
mail confirmation from Ms. Kozlowski or any additional information in this regard, please
advise.

Best regards,

Mike

Michael C. Driscoll
Vice President and Associate General Counsel
M&T Bank
One M&T Plaza, 12th Floor
Buffalo, New York 14203
Mail Code: NY2-P120
Direct: (716) 842-4611
Fax:    (716) 842-5376
mdriscoll@mtb.com

M&T Bank - "Understanding What's Important"

**From:** Plotkin, Robert [mailto:rplotkin@mcguirewoods.com]
**Sent:** Monday, November 28, 2011 3:09 PM
**To:** Driscoll, Michael
**Subject:** Marchak v. JPMORGAN et al Sup Ct Kings County/Consent of M&T Bank to Removal

Dear Mr. Driscoll:

Pursuant to our earlier conversation, TD Bank and JP Morgan Chase & Co. plan to seek removal of the above action from the state to federal court in Brooklyn. The effective law requires us to have the written consent of all defendants in order to properly seek removal. If you could please confirm your oral consent to me by return email, it would be most appreciated. Please include your title and authority to give consent on behalf of M&T. Thank you in advance for your prompt attention to this request.

Robert Plotkin


Robert Plotkin
2001 K Street N.W.,
Suite 400
Washington, DC 20006-1040
202.857.1750 (Direct Line) .
202.828.2970 (Direct FAX)
rplotkin@mcguirewoods.com
http://www.mcguirewoods.com

1345 Avenue of the Americas
Seventh Floor
New York, NY 10105-0106
212. 548. 7098 (Direct Line)
212. 548.2150 (Direct Fax)

---

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

**From:** SmithLo@gtlaw.com [mailto:SmithLo@gtlaw.com]
**Sent:** Tuesday, November 29, 2011 9:25 AM
**To:** Andrea L. Weiss
**Subject:** Marchak, et al. v. JP Morgan Chase & Co, et al., Index No. 500984/11

Andrea:

We represent defendant HSBC North America in connection with the above. This will confirm that HSBC consents to the removal of the above-captioned action to federal court. Thank you.

**Louis Smith**
Shareholder
Greenberg Traurig, LLP | 200 Park Avenue | Florham Park, NJ 07932-0677
Tel 973.360.7915 | Fax 973.295.1256
SmithLo@gtlaw.com | www.gtlaw.com

**GT GreenbergTraurig**

ALBANY · AMSTERDAM · ATLANTA · AUSTIN · BOSTON · CHICAGO · DALLAS · DELAWARE · DENVER · FORT LAUDERDALE · HOUSTON · LAS VEGAS · LONDON* · LOS ANGELES · MEXICO CITY+ · MIAMI · NEW JERSEY · NEW YORK · ORANGE COUNTY · ORLANDO · PALM BEACH COUNTY · PHILADELPHIA · PHOENIX · SACRAMENTO · SAN FRANCISCO · SHANGHAI · SILICON VALLEY · TALLAHASSEE · TAMPA · TYSONS CORNER · WASHINGTON, D.C. · WHITE PLAINS
*OPERATES AS GREENBERG TRAURIG MAHER LLP +OPERATES AS GREENBERG TRAURIG, S.C.
STRATEGIC ALLIANCES WITH INDEPENDENT LAW FIRMS
MILAN · ROME

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate such information. Pursuant to IRS Circular 230, any tax advice in this email may not be used to avoid tax penalties or to promote, market or recommend any matter herein.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

ALEXANDER MARCHAK, HOLLY MARCHAK, ANN MARIE
DELIA, ESTATE OF WILLIAM DELIA, SHIRLEY ABRAMS,
LYNNE BELAIEF, JANICE BINI, CONNIE BOCCIA, FRANK
BOCCIA, MARGOT BOCCIA, THOMAS BOGAN, JOAN
BOGAN, GIULIANA BONA, MARY CAMERON, ANDREA
CHIARAPPA, YOLANDA CHIARAPPA, OLIVER COLONNA,
RITA CORREALE, DOREEN DALY, FRANCIS DALY,
LORRAINE DALY, ADELIA DEL TRECCO, DOMENIC
DeSANTIS, LINDA DeSANTIS, LORENZO DeSANTIS, MARIA
DeSANTIS, ADELE DISARMATO, ELVIRA FEDERICO,
SILVIO FEDERICO, ONELIA FEDERICO, CARL GAMBELLO,
SANDRA FERRARO, CAROLE GAMBELLO, BARBARA
GREBIN, STEPHANIE GREBIN, LUDVIG HAUGEDAL,
DOMINICK IOCCO, MARIA LoCASCIO, JOSEPH
LoVECCHIO, JANET LoVECCHIO, EDWARD MAHONEY,
TARA MAHONEY, LEONARD MANDATO, JOSEPH
MANNANICE, DOREEN MANNANICE, BRIAN MARCHESE,
MICHAEL MARCHESE, BARBARA McINTOSH, LIDIA
OHRYN, MARIKA OHRYN, PETER OHRYN, OHRYN
FAMILY TRUST, INGA POSLITUR, JOSEPH RUDIS, IRENE
RUDIS, LOIS SARLI-KREBS, MYRON SECH, LISA CAPRARA
SECH, ANTHONY SECH BY HIS MOTHER AND NATURAL
GUARDIAN LISA CAPRARA SECH, MARIA SHAW, ROBERT
SWEENEY, VERONICA SWEENEY, TARA SROKA, DYLAN
TARRAZI, CAROLINE TARAZZI, FREDERICK TARAZZI,
GREGORY TARAZZI, VICTOR TARAZZI JR., GEORGE
TARAZZI, KATHLEEN TARAZZI, MANUEL TUTUNJIAN,
SANDRA WETRICH TRUST, MAUREEN ZAWISLAK, AND
ALICE ZINNA,

Plaintiffs,

v.

JP MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A.,
M&T BANK CORPORATION, HSBC NORTH AMERICA INC.,
d/b/a HSBC BANK USA, N.A., and TD BANK, N.A., AS
SUCCESSOR IN INTEREST TO COMMERCE BANK,

Defendants.

Index No. 500984/2011

**NOTICE TO STATE
COURT OF REMOVAL
TO FEDERAL COURT**

## NOTICE TO STATE COURT OF REMOVAL TO FEDERAL COURT

TO THE CLERK OF THE COURT:

NOTICE IS HEREBY GIVEN that Defendants TD Bank, N.A., JPMorgan Chase Bank, N.A., and JPMorgan Chase & Co., with the consent of M&T Bank Corporation and HSBC North America Inc., d/b/a HSBC Bank USA, N.A. (collectively the "Defendants") have removed the above-captioned case pursuant to the Notice of Removal filed in the United States District Court for the Eastern District of New York, on December 2, 2011. Pursuant to 28 U.S.C. § 1446(d), "the State court shall proceed no further unless and until the case is remanded." A copy of that Notice of Removal is attached hereto as Exhibit A.

Dated: December 1, 2011                          Respectfully submitted,
      New York, New York


_Andrea Weiss /adc_

Andrea Likwornik Weiss
1185 Avenue of the Americas
Seventeenth Floor
New York, NY 10036
Telephone: 212-308-6100
Facsimile: 212-308-8830
*Counsel for JPMorgan Chase & Co. and*
*JPMorgan Chase Bank, N.A.*


_Allison Charney_

Allison D. Charney
McGUIREWOODS LLP
1345 Avenue of the Americas
Seventh Floor
New York, New York 10105-0106
Telephone: 212-584-2166
Facsimile: 212-715-6279
*Counsel for TD Bank, N.A.*


_Robert Plotkin /adc_

Robert Plotkin
McGUIREWOODS LLP
1345 Avenue of the Americas
Seventh Floor
New York, New York 10105-0106
Telephone: 212-584-7098
Facsimile: 212-715-2150
*Counsel for TD Bank, N.A.*

## CERTIFICATE OF SERVICE

I, Robert Plotkin, an attorney duly admitted to practice before the Supreme Court of the State of New York, County of Kings, certify that on December 1, 2011, I caused to be served via U.S. Mail true and correct copies of this Notice to State Court of Removal to Federal Court upon the following parties:

Nicholas I. Timko
Kahn Gordon Timko & Rodrigues, P.C.
20 Vesey Street, #300
New York, NY 10007
*Counsel for Plaintiffs*

Louis Smith
Greenberg Traurig LLP
200 Park Avenue
P.O. Box 677
Florham Park, NJ 07932
*Counsel for Defendant HSBC Bank USA, N.A.*

Michael C. Driscoll
Vice President and Associate General Counsel
M&T Bank
One M&T Plaza, 12th Floor
Buffalo, New York 14203
*Counsel for Defendant M&T Bank Corporation*

In addition, I caused a courtesy copy to be sent by electronic mail to the individuals listed above.

Dated: December 1, 2011
New York, New York

McGUIREWOODS LLP

By: *Allison Charney*
Allison D. Charney
1345 Avenue of the Americas
Seventh Floor
New York, New York 10105-0106
Telephone: 212-584-2166
Facsimile: 212-715-6279
*Counsel for TD Bank, N.A.*

3