UNITED STATES DISTRICT COURT.
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

ALEXANDER MARCHAK, et al.

                Plaintiffs,

        v.

JPMORGAN CHASE & CO., JPMORGAN CHASE
BANK N.A., M&T BANK CORPORATION, HSBC
NORTH AMERICA INC. d/b/a HSBC BANK USA,
N.A., and TD BANK, N.A., as successor in interest
to COMMERCE BANK,

                Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
11-CV-5839 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiffs, seventy-four individual investors, commenced this action on October 27, 2011,

in the Supreme Court of New York, Kings County, against JPMorgan Chase & Co., JPMorgan

Chase Bank, N.A., M&T Bank Corporation, HSBC North America, Inc., d/b/a HSBC Bank

USA, N.A., and TD Bank, N.A., alleging state law claims of knowing participation in a breach of

trust, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, aiding and abetting

conversion, unjust enrichment, fraud on the regulator, and common law negligence.  On

December 1, 2011, Defendants TD Bank and JPMorgan Chase Bank, with the consent of the

other Defendants, removed the action to this Court arguing that the claims are precluded by the

Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p(b), (c) and

78bb(f)(1), (2), or, in the alternative, are removable pursuant to 28 U.S.C. §§ 1331, 1441,  and

1446, as Plaintiffs' state law claims necessarily present federal questions arising under the laws

of the United States.  (Notice of Removal, Docket Entry No. 1.)  Plaintiffs moved to remand the

action to state court and, on March 14, 2013, the Court stayed this action at the request of the

parties, pending the Supreme Court's decision in *Chadbourne & Parke LLP v. Troice*, 571 U.S.

---, 134 S. Ct. 1058 (2014). Following the publication of *Troice*, the parties submitted additional

briefing based on *Troice*.

For the reasons set forth below, the Court denies Plaintiffs' motion to remand, and

dismisses Plaintiffs' claims pursuant to SLUSA.

### I. Background

#### a. Factual background

This action arises from a $40 million Ponzi scheme carried out by Philip Barry ("Barry")

and allegedly enabled by Defendants. (Compl. ¶ 1.) From January 1978 through February 2009,

Barry operated Leverage Group, Leverage Option Management Inc. and Northern America

Financial Services (collectively, "Leverage"), and induced Plaintiffs to "invest in or maintain

their investments with Leverage," promising them a guaranteed annual rate of return of 12.55%.

(*Id.* ¶ 91.) Barry placed Plaintiffs' funds in accounts opened with JPMorgan Chase Bank, N.A.

("Chase"), M&T Bank Corporation ("M&T"), HSBC North America, N.A. ("HSBC"), and

Commerce Bank, which was later acquired by TD Bank, N.A. ("TD Bank"). (*Id.* ¶ 97.) Barry

used these accounts to conduct large dollar transactions by check, routinely made large cash

withdrawals, and wrote at least 1,623 checks that were returned for insufficient funds between

2004 and 2009. (*Id.* ¶¶ 100–01.)

To induce Plaintiffs to invest in or to maintain their investments in Leverage, Barry

"falsely represented that he would use the investors' funds to trade in options or other securities."

(*Id.* ¶ 91.) Barry "claimed that he would employ a proven trading strategy to protect investors'

principal and generate a guaranteed rate of return[,] . . . . claimed to some investors that their

investment in [L]everage would be protected from loss by private insurance and/or by the

Securities Investors Protection Corporation," and "routinely fabricated quarterly statements for investors that reported lofty investment performance." (*Id.* ¶¶ 91, 94.) However, "[c]ontrary to Barry's representations that he would trade securities for the benefit of Leverage investors, he did no securities trading at all for several years." (*Id.* ¶ 93.) Instead, Barry used the funds to meet withdrawal demands from the investors and diverted significant funds for his own use. (*Id.* ¶¶ 93, 115.)

Plaintiffs allege that Defendants breached various duties imposed by federal banking regulations, including federal anti-money laundering ("AML") rules found in Section 352 of the United States Patriot Act and rules imposed by the Bank Secrecy Act ("BSA"). (*Id.* ¶¶ 2–5). Plaintiffs further allege that Defendants failed to fully comply with regulatory duties to institute programs to "know your customer" ("KYC"), to monitor Barry's account activity, to investigate suspicious activity in Barry's accounts, and to take action in light of the evidence of illegal activity being conducted in and through Barry's accounts with Defendants. (*Id.* ¶¶ 6–11.) Plaintiffs allege that in failing to abide by these duties, Defendants "facilitated and enabled substantial financial fraud that was being conducted with their knowledge . . . ." (*Id.* ¶ 1.)

Plaintiffs raise seven causes of action pursuant to state law. Common to many of these claims are the allegations that Defendants "knew that the transactions taking place in each of [the] accounts did not coincide with any legitimate enterprise and thus could only be plausibly explained by fraud," but nonetheless Defendants "moved funds in and out of [the] accounts at Barry['s] behest and allowed Barry['s] customer funds to be used to make payments to Barry, to allow Barry to purchase speculative real estate, and to fund redemptions from other investors rather than to purchase securities from the Barry[] accounts." (*Id.* ¶¶ 249–50, 260, 264, 277, 285, 289.) Plaintiffs also allege that "each of the [D]efendants knew, or at least consciously

avoided knowing that Barry[] did not purchase securities bu[t] instead stole customers'
money . . . . [and] knew that the inexplicable transactions taking place in the Barry[] accounts did
not coincide with any legitimate securities investment," (*id.* ¶ 285), and that "[e]ach of the
[D]efendants was aware that Barry[] purported to be an investment advisor who would invest
customers' funds in various securities," (*id.* ¶ 272).

### b. Procedural background

Defendants removed this action on December 1, 2011, claiming that Plaintiffs' claims are
precluded by SLUSA or, in the alternative, are removable pursuant to 28 U.S.C. §§ 1441 and
1331, as Plaintiffs' state law claims necessarily present federal questions arising under the laws
of the United States.  (Notice of Removal ¶¶ 8–9.)

Defendants claim that removal was appropriate pursuant to SLUSA because the action is
a "covered class action," based on state common law alleging misrepresentation in connection
with the purchase or sale of a "covered security."  (*Id.* ¶ 39.)  Defendants argue that the claim is a
"covered class action" because there are at least 50 plaintiffs with common issues of law or fact,
and the Complaint does not distinguish between them with regard to questions of law or fact.
(*Id.* ¶ 23.)  Defendants further contend that the action pertains to "covered securities" because the
Complaint alleges that Defendants knew or consciously disregarded Barry's fraud in
"manipulating investors to believe he would invest their money in securities," when Barry never
invested the money in securities.  (*Id.* ¶ 35.)  In the notice of removal, Defendants state that on or
about September 23, 2009, Barry had entered into a consent judgment with the Securities and
Exchange Commission ("SEC") consenting, *inter alia*, to an order barring him from association
with an investment advisory business, and that in November 2010, Barry was convicted by a
federal jury of one count of securities fraud and 33 counts of mail fraud.  (*Id.* ¶¶ 12–14.)

4

In the alternative, Defendants argue that removal was appropriate pursuant to 42 U.S.C. § 1441(a) because, although Plaintiffs plead only state common law claims, "[t]he foundation of Plaintiffs' entire complaint . . . is Defendants' alleged violations of federal laws and regulations, including the Patriot Act, the Bank Secrecy Act, guidance promulgated by the Office of the Comptroller of the Currency and various unspecified 'Federal . . . legislation and rules.'" (*Id.* at ¶ 42.) Defendants state that "[a]s a practical matter, each of Plaintiffs' state common law causes of action seeks only to enforce duties or obligations allegedly created by and arising directly under these federal laws." (*Id.* at ¶ 43.)

Plaintiffs moved to remand the action to state court, arguing that Defendants failed to meet their burden to show the action was properly removable under SLUSA. First, Plaintiffs contend that Defendants have not shown the action is a "covered class action" because Defendants did not identify which questions of law or fact predominate in the action, and because common questions of law or fact do not predominate the action. Plaintiffs argue that issues as to whether and how each Plaintiff relied on Barry's misrepresentations regarding Leverage's purpose, investment strategy and performance are central to their claims. (Plaintiffs' Memorandum in Support of Motion to Remand ("Pl. Mem."), Docket Entry No. 17, at 11.) Plaintiffs further argue that the securities in question in this action are not "covered securities," because Plaintiffs invested directly in the Leverage funds rather than in covered securities. (*Id.* at 13.) They contend that Barry never bought securities with the funds invested in Leverage accounts, nor did he ever receive the proceeds of securities sales into his accounts with the Defendant banks, and consequently the conduct that gives rise to the claims in this action "is too far removed from any securities transaction (and there were none) to be said to have" the requisite statutory connection with covered securities. (*Id.* at 23.) Defendants opposed the

motion for remand.

On November 15, 2012, Defendants submitted a letter notifying the Court that a petition for writ of certiorari had been filed with the United States Supreme Court in one of the cases cited by the parties in briefing the motion to remand, *Roland v. Green*, 675 F.3d 503 (5th Cir. 2012). (Docket Entry No. 22.) On January 18, 2013, the Supreme Court granted the petition for a writ of certiorari in *Green* and related cases. *See Chadbourne & Parke LLP v. Troice*, 571 U.S. ---, 133 S. Ct. 977 (2013). At a pre-motion conference before this Court on March 14, 2013, the parties agreed that the Supreme Court's decision in *Troice* would impact the outcome of Plaintiffs' motion for remand and requested that the Court stay the litigation pending a decision. (*See* Minute Entry dated March 14, 2013.) The Court stayed the instant litigation pending the Supreme Court decision in *Troice*. On February 26, 2014, the Supreme Court issued its decision in *Troice*. 571 U.S. ---, 134 S.Ct. 1058 (2014). The parties submitted supplemental briefing regarding the impact of *Troice* on this action.

## II. Discussion

### a. Standard of review

A civil action brought in state court may be removed by a defendant to a federal court of original jurisdiction. 28 U.S.C. § 1441(a). Federal courts are to construe the statute narrowly, resolving any doubts against removability, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994); *Balram v. Cohen & Slamowitz, LLP*, No. 13-CV-07213, 2014 WL 527899, at *1 (E.D.N.Y. Feb. 7, 2014). The party asserting jurisdiction bears the burden of proving that jurisdiction and procedural requirements are met. *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir.

2000); *Balram*, 2014 WL 527899, at *1. "An effective petition for the removal of a state action to federal court must allege a proper basis for the removal under sections 1441 through 1445 of Title 28." *Bankhead v. New York*, No. 13-CV-3377, 2013 WL 6145776, at *1 (E.D.N.Y. Nov. 21, 2013) (quoting *Negron v. New York*, No. 02-CV-1688, 2002 WL 1268001, at *1 (E.D.N.Y. Apr. 1, 2002)); *see also In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("In determining whether jurisdiction is proper, we look only to the jurisdictional facts alleged in the Notices of Removal."). A district court must remand an action to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see also Kenmore Assocs., L.P. v. Burke*, 367 F. App'x 168, 169 (2d Cir. 2010).

Under SLUSA, jurisdiction is "restricted to precluded actions . . . . [Therefore,] a motion to remand claiming the action is not precluded must be seen as posing a jurisdictional issue." *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) (citing *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 643–44 (2006)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides the applicable standard of review for motions to remand and motions to dismiss brought pursuant to SLUSA, "because each concerns the subject matter jurisdiction of the Court." *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 380 (E.D.N.Y. 2002). "[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Shabaj v. Holder*, 704 F.3d 234, 237 (2d Cir. 2013) (alteration in original) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). In considering a motion to remand or to dismiss pursuant to SLUSA, a "'court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made

by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010). A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano*, 609 F.3d at 520; *Morrison*, 547 F.3d at 170.

### b. Removal pursuant to SLUSA

Congress enacted SLUSA to prevent plaintiffs from seeking to evade the stringent pleading standards codified in the Private Securities Litigation Reform Act by filing lawsuits in state court based on state law rather than on federal securities law. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81–82 (2006). Under SLUSA, certain securities-related class action lawsuits filed in state court are removable to federal court, where covered state-law claims must be dismissed. 15 U.S.C. § 78bb(f)(1). Specifically, SLUSA provides that:

> No covered class action based upon the statutory or common law of any State . . . may be maintained in any State or Federal court by any private party alleging (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). *See Ring v. AXA Fin., Inc.*, 483 F.3d 95, 96 (2d Cir. 2007) ("SLUSA precludes the maintenance — in state or in federal court — of class actions alleging state law violations but premised on deception 'in connection with the purchase or sale of a covered security.'" (quoting 15 U.S.C. § 77p(b))).

In order to successfully remove a securities fraud class action and compel its dismissal pursuant to SLUSA, a defendant must show that the state action (1) is a "covered" class action (2) bringing claims under state statutory or common law that (3) rely on allegations involving a

"misrepresentation or omission of a material fact in connection with the purchase or sale" (4) of a covered security. *See* 15 U.S.C. § 78bb(f); *Romano*, 609 F.3d at 518; *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 33 (2d Cir. 2005) ("Thus, four conditions must be satisfied to trigger SLUSA's removal and [preclusion] provisions: (1) the underlying suit must be a 'covered class action'; (2) the action must be based on state or local law; (3) the action must concern a 'covered security'; and (4) the defendant must have misrepresented or omitted a material fact or employed a manipulative or deceptive device or contrivance 'in connection with the purchase or sale of' that security."), *rev'd on other grounds by* 547 U.S. 71 (2006); *Montoya v. N.Y. State United Teachers*, 754 F. Supp. 2d 466, 470–71 (E.D.N.Y. 2010) (outlining same four factors). "[A] lawsuit that does not satisfy all the SLUSA criteria must be remanded to state court." *Ring v. AXA Fin., Inc.*, 483 F.3d 95, 98 (2d Cir. 2007) (citing 15 U.S.C. § 78bb(f)(3)(D)). If an action satisfies all four criteria, removal is proper and the federal district court must dismiss the claims. 15 U.S.C. § 78bb(f)(2) ("Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject [to dismissal pursuant] to subsection (b)"); *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 (2006) ("If the action is precluded, neither the district court nor the state court may entertain it, and the proper course is to dismiss. If the action is not precluded, the federal court likewise has no jurisdiction to touch the case on the merits, and the proper course is to remand to the state court that can deal with it."); *Ring*, 483 F.3d at 98 (citing 15 U.S.C. § 78bb(f)(2)).

    i.    **"Covered class action"**

Plaintiffs argue that Defendants have failed to meet their burden to show this action is a "covered class action," because Defendants have not shown that common questions of law or

fact relevant to the action predominate over questions affecting only individual Plaintiffs,

including damages and questions of reliance on statements or omissions by Barry. (Pl. Mem.

11.) Plaintiffs argue that this action is not a "covered class action" because each Plaintiff entered

into separate transactions with Barry and separately relied on his misrepresentations, which

Plaintiffs argue predominate over questions of law or fact common to Plaintiffs' claims. (*Id.* at

11.) Defendants argue that because all Plaintiffs join in the same seven claims against

Defendants, based on the same generalized factual allegations, in determining Defendants'

liability, common questions of law and fact will predominate over any questions affecting only

individual members. (Defendants' Memorandum in Opposition to Plaintiffs' Motion to Remand

("Def. Opp'n Mem."), Docket Entry No. 18, at 9.)

Under SLUSA, the term "covered class action" is defined as:

> [a] single lawsuit in which damages are sought on behalf of more
> than 50 persons or prospective class members, and questions of
> law or fact common to those persons or members of the
> prospective class, without reference to issues of individualized
> reliance on an alleged misstatement or omission, predominate over
> any questions affecting only individual persons or members.

15 U.S.C. § 78bb(f)(5)(B); *see also Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101,

109 (2d Cir. 2001). The term "covered class action" therefore has two prongs: "(1) the claim

must be brought on behalf of 50 or more persons ['numerosity'], and (2) questions of law or fact

common to those persons must predominate ['predominance']." *Sec. Investor Prot. Corp. v.*

*Bernard L. Madoff Inv. Secs. LLC*, 987 F. Supp. 2d 311, 319 (S.D.N.Y. 2013) (quoting *LaSala v.*

*Bordier et Cie*, 519 F.3d 121, 133 (3d Cir. 2008)).

### 1. Numerosity

Here, there is no dispute that the numerosity requirement is satisfied. The Complaint

identifies, and the parties concede that damages are sought on behalf of, seventy-four Plaintiffs.

*See* 15 U.S.C. § 78bb(f)(5)(B); *Dabit*, 547 U.S. at 83 ("A covered class action is a lawsuit in which damages are sought on behalf of more than [fifty] people.")

## 2. Predominance

Plaintiffs argue that the Complaint "clearly distinguishes between Plaintiffs with regard to questions of fact," and there can be "no doubt" that common questions of law and fact do not predominate over individualized issues of reliance and damages in this action. (Pl. Mem. 11.) Plaintiffs point to the existence of sixty-two separate damages claims and aver that the "multitude of transactions" underlying those sixty-two claims are unique to each Plaintiff and arise from "individualized issues of reliance on statements or omissions by Barry." (*Id.*)

Defendants argue that Congress intended that the definition of a covered class action be "interpreted broadly" and construed "to avoid devices that might be used to circumvent the class action definition." (Def. Opp'n. Mem. 6 (quoting S. Rep. No. 105-82, at *8 (1998) (Senate Banking Committee).) Defendants contend that the predominance requirement should not, and rarely does, turn on individual damages claims specific to the individual class members. Rather, "[t]he focus of the predominance inquiry is on defendant's liability, not on damages." (*Id.* at 8–9 (internal quotations and citation omitted).) To support their position, Defendants rely on case law interpreting Rule 23(b)(3) of the Federal Rules of Civil Procedure and propose that it should inform interpretation of section 78bb(f)(5)(B), as that section was modeled on Rule 23. (*Id.* at 7.) Defendants argue that the common issue is "Defendants' alleged knowledge of, and participation in, the Barry scheme" and that common issue "clearly predominate[s]" over separate damages claims. (*Id.* at 9.)

Plaintiffs' argument that individualized issues of reliance control this action contradicts the plain language of the statute, which requires that the predominance requirement be

determined "*without reference* to issues of individualized reliance . . . ." *See* 15 U.S.C.

§ 78bb(f)(5)(B)(i)(I) (emphasis added); *Spehar v. Fuchs*, No. 02-CV-9352, 2003 WL 23353308,

at *5 (S.D.N.Y. June 17, 2003) ("[A]ny issue of individual reliance [is immaterial], since

SLUSA itself makes such issues irrelevant to the predominance question."). *Spehar*, in which

the court considered whether common questions of law or fact predominated over individualized

issues of reliance in determining whether the underlying suit was a "covered class action,"

provides a useful comparison. The *Spehar* plaintiffs claimed that the underlying suit was not a

covered class action because individualized issues regarding how the various plaintiffs learned of

fraudulent statements made at a shareholder meeting should predominate over the common,

central allegations of the fraudster's conduct. In finding that the suit was a "covered class

action" as defined in SLUSA, the court concluded that common questions of law or fact

predominated the action when the gravamen of the complaint involved a central allegation of

fraud, common to the individual claims of each plaintiff. *Spehar*, 2003 WL 23353308, at *5.

The Court finds the reasoning in *Spehar* persuasive. Here, as in *Spehar*, the central

component of every claim relies on the same core factual issues — in this case, what Defendants

are alleged to have done vis-à-vis Barry and Leverage. Although each Plaintiff may have

sustained different damages as a result of Defendants' alleged actions, Plaintiffs are all claiming

that Defendants had knowledge of, and participated in, Barry's fraudulent scheme, which injured

the Plaintiffs in such a way that every Plaintiff raises the exact same causes of action against

every Defendant. *See Spehar*, 2003 WL 23353308, at *5 ("That central allegation is common to

every plaintiffs' claim, and is sufficient to cause common questions of law or fact to predominate

for SLUSA purposes.") Because both the numerosity and predominance requirements are met,

the underlying suit is a "covered class action" as defined by SLUSA.

### ii.  State law claims

It is undisputed that Plaintiffs only bring claims pursuant to state or local law.  (*See* Pl. Mem. 2 ("There are no questions of federal law involved in this action."); Plaintiffs' Reply Memorandum in Support of Motion to Remand ("Pl. Reply Mem."), Docket Entry No. 19, at 20 (referring to "Plaintiffs' state law claims").)  Thus, SLUSA's second condition is also met.

### iii.  "Covered securities"

Plaintiffs contend that the securities at issue in this litigation are not "covered securities" because Plaintiffs directly invested in Leverage, "not [] any identifiable or listed security," and not in any security listed on a national exchange.  (Pl. Mem. 13.)  Plaintiffs further contend that the securities at issue must have actually been listed, or authorized for listing, on a national exchange, at the time of the alleged misrepresentations.  (*Id.*)  Plaintiffs argue that it is "apparent" that the securities referred to in the Complaint were "investments in the Leverage funds," that "Barry's investors put their money into the so-called Leverage funds," and that shares in Leverage were not listed on a national exchange.  (*Id.*)  Relying on *Troice*, Plaintiffs argue that their investments were similar to buying certificates of deposit in a bank, and were not investments in covered securities.  (Plaintiffs' letter dated June 4, 2014, Docket Entry No. 30, at 4.)  Plaintiffs stress that no securities were, in fact, purchased, arguing that "[w]here there are no securities, there cannot be covered securities."  (Plaintiffs' Letter Brief dated Mar. 28, 2014, ("Pl. Let. Brief"), Docket Entry No. 28, at 5.)  Plaintiffs further argue that the "mere invocation of 'covered securities' through . . . fraudulent sales pitches [is] not enough to implicate SLUSA's preemption[1] of state law claims relating to legitimate, covered securities."  (Pl. Let. Brief 4.)

---

[1]  The Court notes that SLUSA does not "preempt" state law claims, but rather "precludes" them.  *Romano v. Kazacos*, 609 F.3d 512, 520 n.2 (2d Cir. 2010) ("[T]he Supreme

Plaintiffs argue that because Barry's fraud induced Plaintiffs to invest in Leverage, and did little more than promise Plaintiffs returns based on imaginary securities, there are no "covered securities" at issue, and "[w]here there are no covered securities, SLUSA does not apply." (Pl. Let. Brief 5.)

Defendants argue that Plaintiffs' view, that the only investments at issue are those in Leverage, is "overly restrictive" and contrary to "the purpose, precedents, and text of SLUSA, as well as [] Plaintiffs' own pleadings." (Def. Mem. 5.) Focusing on the pleadings, Defendants contend that the Complaint is replete with allegations concerning securities investments, including Plaintiffs' repeated allegations that Plaintiffs were tricked into investing in the Leverage funds on Barry's promise to invest Plaintiffs' money in exchange-traded stock options of exchange-registered companies. (Defendants' Letter Brief Dated Mar. 28, 2014, ("Def. Let. Brief"), Docket Entry No. 27, at 18–20.) Accordingly, Defendants contend that the securities in question were not merely "deposits to a bank account," as Plaintiffs now allege, but were attempts to take an interest in "falsely promised options." (Def. Opp'n Mem. 21.) Furthermore, Defendants contend that purchase, sale or holding of actual "covered securities" is not required for an action to come within SLUSA's purview. (*Id.* at 11.)

A "covered security" under SLUSA is narrowly defined. *Troice*, 571 U.S. at ---, 134 S. Ct. at 1064. Pursuant to SLUSA, a "covered security" is a security that "satisfies the standards for a covered security specified in paragraph (1) or (2) of section 18(b) of the Securities Act of 1933." 15 U.S.C. § 78bb(f)(5)(E); *In re Herald, Primeo, and Thema Sec. Litig.*, 730 F.3d 112, 118 (2d Cir. 2013) ("*Herald I*"). Section 18(b)(1) of the Securities Act of 1933 defines a

---

Court ruled that SLUSA is a preclusion, and not a preemption, statute." (citing *Kircher v. Putnam Funds Trust,* 547 U.S. 633, 637 n.1 (2006)).

covered security, in part, as "a security . . . listed, or authorized for listing, on a national

securities exchange." *See also Dabit*, 547 U.S. at 83 (For the purposes of SLUSA, a "covered

security is one traded nationally and listed on a regulated national exchange." (internal quotation

marks omitted)); *In re Harbinger Capital Partners Funds Investor Litig.*, No. 12-CV-1244, 2014

WL 3694991, at *1 (S.D.N.Y. July 7, 2014) ("A security is a 'covered security' if it is 'listed, or

authorized for listing, on a national securities exchange.'" (quoting 15 U.S.C. § 78bb(f)(5)(E))).

SLUSA further specifies that, to be covered, the securities at issue must be listed, or authorized

for listing, on a national exchange "at the time during which it is alleged that the

misrepresentation, omission, or manipulative or deceptive conduct occurred." 15 U.S.C.

§ 78bb(f)(5)(E). The fact that covered securities were not actually purchased or sold does not

compel the conclusion that no covered securities were at issue. *In re Herald, Primeo & Thema

Sec. Litig.*, 753 F.3d 110, 113 (2d Cir. 2014) ("*Herald II*") (*per curiam*) ("It is not essential that

[the fraudster] actually performed any trades or acquired any securities."); *see also Instituto De

Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008) (finding that, where the

defendant accepted investors' monies for investment in securities, no actual purchase or sale

need occur to qualify as a "covered security" under SLUSA).

The determinative question here is not whether any "covered securities" were in fact

purchased and sold, as Plaintiff suggests. As discussed below, the statute requires the Court to

inquire whether an untrue statement was made "in connection with" covered securities. Both the

face of the Complaint and the underlying arguments demonstrate that covered securities are at

issue in this action. *See Romano*, 609 F.3d at 523 ("SLUSA requires our attention to both the

pleadings and the realities underlying the claims.") The Complaint plainly contemplates that

Barry suggested to investors that their money would be invested in "options and securities."[2] Plaintiffs' Complaint makes repeated allegations regarding Barry's promised transactions in securities. (*See* Compl. ¶ 8 ("Barry made numerous representations to his depositors, including that he would use the funds to trade in options or other securities."); *id.* ¶ 91 ("Barry falsely represented that he would use the investors' funds to trade in options or other securities."); *id.* ¶ 93 ("[C]ontrary to Barry's representations that he would trade securities for the benefit of Leverage investors, he did no securities trading at all for several years."); *id.* ¶ 259 ("Barry told customers that their money would be invested in securities."); *id.* ¶ 271 ("[P]ursuant to various agreements with customers, Barry/Leverage agreed to take customers' money and invest it in securities.")). The fact that Barry failed to purchase any securities does not, in and of itself, take this case outside of SLUSA's purview as defined in *Troice*. *Herald II*, 753 F.3d at 113. Plaintiffs' attempts to avoid this result are not persuasive.

Plaintiffs argue, citing *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) and *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC*, 750 F. Supp. 2d 450 (S.D.N.Y. 2010), that covered securities are not involved in this matter. In so arguing, Plaintiffs conflate the requirements that covered securities *be involved with* the action, with the requirement that misrepresentations and omissions alleged

---

[2] Defendants assert in their notice of removal that "'stock options' include the right to purchase or sell exchange-traded stock, commodities, currencies, or stick indexes for an agreed-upon price within a predetermined time period." (Notice of Removal ¶ 28 (citing BARRON'S DICTIONARY OF FIN. & INV. TERMS 485, 684 and *In re Kingate Mgmt. Ltd. Litig.*, No. 09-CV-5386, 2011 WL 1362106, at *6 (S.D.N.Y. Mar. 30, 2011))). Defendants also cite to a criminal indictment brought against Barry, which alleged that Barry "told his investors he would invest in [] stock options." (Notice of Removal ¶ 28.) Furthermore, the marketing materials for Leverage discuss "exchange-options." (Leverage Group Marketing Materials, annexed to Def. Opp'n Mem. as Ex. E, at ECF No. 2–6.) Plaintiffs do not dispute that the securities Barry promised to purchase were covered, they argue instead that Barry's mere *promises* to purchase securities do not bring this action within the ambit of SLUSA preclusion. (*See* Pl. Mem. 12–13.)

by Plaintiffs have a sufficient *connection with* the covered securities — the "in connection with" requirement. *See e.g.*, *Anwar*, 728 F. Supp. 2d at 398 (stating that plaintiffs' investments in "feeder funds" to [the Madoff Securities] Ponzi scheme were not purchases of covered securities, noting defendants' argument that the relevant securities were those Madoff lied about purchasing "puts all the pressure of [d]efendants' argument on the 'in connection with' requirement of SLUSA"); *Pension Comm. of the Univ. of Montreal Pension Plan*, 750 F. Supp. 2d at 453–54 (finding that alleged misrepresentations of defendants were not made in connection with the purchase and sale of covered securities, but were rather in connection with the purchase of shares in hedge funds). The Court addresses the "in connection with" requirement below.

### iv. Misrepresentations or omissions of a material fact in connection with the purchase, sale or holding of a covered security

SLUSA preclusion is evaluated claim-by-claim. *See Dabit*, 395 F.3d at 47; *see also In re Refco Inc. Sec. Litig.*, 859 F. Supp. 2d 644, 650 (S.D.N.Y. 2012); *In re Kingate Mgmt. Ltd. Litig.*, No. 09-CV-5386, 2011 WL 1362106, at *6 (S.D.N.Y. Mar. 30, 2011) ("The law of the Second Circuit requires a claim-by-claim analysis as to SLUSA [preclusion]."). This becomes particularly relevant in evaluating whether the state law claims raised by a plaintiff involve "misrepresentations or omissions of a material fact," [3] and whether such misrepresentations are

---

[3] SLUSA precludes covered class actions brought by "any private party alleging (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). Both Plaintiffs and Defendants in this action rely on the first prong of the test, involving allegations of a "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," and do not argue as to the latter. (*See* Pl. Mem. 16; Def. Opp'n Mem. 9–10.)

"in connection with the purchase, sale or holding[4] of a covered security." When determining whether SLUSA applies to bar a claim, courts may apply the "artful pleading rule," and are "free to look beyond the face of the . . . complaints to determine whether they allege securities fraud in connection with the purchase or sale of covered securities." *Romano*, 609 F.3d at 519–20.

### 1. Misrepresentation or omission of material fact

First, a cause of action must allege a misrepresentation or omission of a material fact. 15 U.S.C. § 78bb(f)(1). Plaintiffs rely on the "necessary component" ("*Xpedior*") test[5] to evaluate whether the claim being advanced alleges a misrepresentation or omission. (Pl. Mem. 18–19.) In applying the test, Plaintiffs contend that a court must ask whether the misstatements or omissions are a necessary component of each state law claim. (Pl. Mem. 18.) Relying on *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258 (S.D.N.Y. 2004), Plaintiffs argue that a claim will only be precluded under SLUSA when it asserts a specific claim of fraud or raises a cause of action sounding in fraud, and that "mere allegations of misrepresentations somewhere in the complaint" are insufficient. (Pl. Mem. 17.) Plaintiffs argue that the allegations in the Complaint do not satisfy the *Xpedior* test because Plaintiffs do not allege that Defendants' actions "contributed to, or in any way effected, any decision by any of the Plaintiffs to buy, or sell or hold any covered security." (*Id.*)

---

[4]  In addition to claims relating to the purchase and sale of covered securities, SLUSA also precludes so-called "holding" claims, premised on a victim's retention or delay in selling covered securities due to a fraudster's misrepresentation or omission, provided the other elements required for SLUSA preclusion are present. *See In re Harbinger Capital Partners Funds Investor Litig.*, No. 12-CV-1244, 2014 WL 3694991, at *2 (S.D.N.Y. July 7, 2014) (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006)).

[5]  The test examines whether state law claims "require misrepresentations or omissions as a necessary element," thus alleging a "misrepresentation or omission" as required by SLUSA. *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 269 (S.D.N.Y. 2004).

Defendants contend that both Barry's fraud, and Defendants' alleged failure to act when they "knew or consciously chose to ignore" Barry's fraud, are central to the conduct in question and "are integral to the conduct that gives rise to all of Plaintiffs' claims." (Def. Opp'n Mem. 17.) According to Defendants, because each cause of action is predicated on the same factual allegations surrounding Barry's fraud, all the claims allege misrepresentations or omissions of material fact as required by SLUSA.[6] Defendants further argue that the centrality of the fraudulent conduct to Defendants' alleged actions prohibits any of Plaintiffs' claims from being able to "stand alone" without reference to Barry's fraud or Defendants supposed knowledge of that fraud. (*Id.* at 18.) This, Defendants argue, satisfies the material misrepresentation or omission requirement.

A claim satisfies the "misrepresentation or omission of a material fact" requirement under SLUSA when it alleges "'(1) an explicit claim of fraud or misrepresentation (e.g., common law fraud, negligent misrepresentations, or fraudulent inducement), or (2) other garden-variety state law claims that sound in fraud.'" *In re Stillwater Capital Partners Inc. Litig.*, 853 F. Supp. 2d 441, 455 (S.D.N.Y. 2012) (quoting *In re Merkin*, 817 F. Supp. 2d 346, 359 (S.D.N.Y.2011)); *see also Romano*, 609 F.3d at 521 (examining claims of negligence, breach of fiduciary duty, negligent misrepresentation, breach of contract, and unfair and deceptive trade practices to determine whether alleged misrepresentations were also alleged to be "material"). A claim "sounds in fraud" when a plaintiff alleges fraud as "an integral part of the conduct giving rise to the claim," even if the cause of action itself is not for fraud. *Herald*, 2011 WL 5928952, at *7; *Kingate*, 2011 WL 1362106, at *6; *see also LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir.

---

[6] The analysis relating to fraud encompasses materiality. Plaintiffs do not dispute that Barry's misrepresentations regarding the use of Plaintiffs' funds were material, and have repeatedly alleged in the Complaint that Barry's actions amounted to fraud.

2008) (noting SLUSA's "in connection with" requirement met "when an allegation of misrepresentation in connection with a securities trade, implicit or explicit, operates as a factual predicate to a legal claim" and is not "merely an extraneous detail"); *Stillwater*, 851 F. Supp. 2d at 572 ("Unless plaintiffs were misled by misrepresentations or by omissions, it is impossible to understand why they would [act as they did.]  Because of this, a material misrepresentation or omission . . . is a '*necessary component*' of plaintiffs' claim." (citing *Xpedior Creditor Trust*, 341 F. Supp. 2d at 268)).  This is true even if the fraud, though essential to sustain the cause of action, is not pled as fraud on the part of the defendant.  *Herald I*, 730 F.3d at 119 n.7 ("[T]he fact that plaintiffs allege claims sounding in negligence, breach of fiduciary duty, and the like does not preclude preclusion under SLUSA where, as here, it is obvious that the [defendant] banks' liability, under any claim, is premised on their participation in, knowledge of, or, at a minimum, cognizable disregard of Madoff Securities' securities fraud.")  This is, in part, because "Congress intended for SLSUA to [preclude] claims against defendants who intentionally aid and abet a third party's misrepresentations or omissions."  *See Levinson v. PSCC Servs., Inc.*, No. 09-CV-0269, 2010 WL 5477250, at *8 (D. Conn. Dec. 29, 2010) (citing *LaSala v. Bordier et Cie*, 452 F. Supp. 2d 575, 586 (D.N.J. 2006), *rev'd on other grounds*, 519 F.3d 121 (3d Cir.2008)).  Therefore, any of Plaintiffs' claims that rely on misstatements or omissions by Barry as a factual predicate satisfy the test.[7]

Plaintiffs' Complaint alleges seven causes of action against Defendants: (i) knowing participation in a breach of trust, (ii) aiding and abetting fraud, (iii) aiding and abetting breach of fiduciary duty, (iv) aiding and abetting conversion, (v) unjust enrichment, (vi) fraud on the

---

[7] Plaintiffs concede that some of their "causes of action 'sound in fraud,' as fraud is an integral part of the conduct on the part of Barry that gives rise to the claim."  (Pl. Mem. 22.)

regulator, and (vii) negligence. (Compl. ¶¶ 244–318.) As to each cause of action, Plaintiffs'

Complaint, fairly read, charges that the Defendants "knew of the fraud, failed to disclose the

fraud, and helped the fraud succeed" — in other words, they allege that Defendants were

complicit in Barry's fraud. *See Herald I*, 730 F.3d at 119. The claims of aiding and abetting

fraud and fraud on the regulator raise explicit claims of fraud or misrepresentation, and thus

clearly allege fraud as a "necessary component."[8] *See Stillwater*, 853 F. Supp. 2d at 455.

Furthermore, each of the other five state-law claims — knowing participation in a breach of

trust, aiding and abetting breach of fiduciary duty, aiding and abetting conversion, unjust

enrichment, and common law negligence — soundly rely on Barry's fraud, as perpetrated

through his Ponzi scheme, as a factual predicate. As to these five claims, Defendants' liability

"is premised on their participation in, knowledge of, or, at minimum, cognizable disregard of"

Barry's fraud. *See Herald I*, 730 F.3d at 119 n.7.

First, Plaintiffs assert a cause of action for knowing participation in a breach of trust

premised in part on the fact that "after performing minimal due diligence . . . each of the

defendants knew that Barry[] was engaging in fraud, or consciously avoided such knowledge,"

and that Barry was purporting to be an investment advisor but in reality was merely

"misappropriating . . . customer funds." (*Id.* ¶¶ 246–251.) Second, the cause of action for aiding

and abetting breach of fiduciary duty is based on the allegation that "Barry[] breached [his]

fiduciary duty [to Leverage customers] by perpetrating a massive Ponzi scheme," and "engaging

in fraud" in which he "agreed to take customers' money and invest it in securities," and

"purported to be an investment advisor." (*Id.* at ¶¶ 268–273.) Third, the cause of action for

---

[8] The Complaint also plainly alleges that Defendants were "thoroughly complicit" in
Barry's scheme to defraud Plaintiffs. (Compl. ¶ 1.)

aiding and abetting conversion is predicated on Defendants' aiding and abetting Barry's "unauthorized dominion and control over" Plaintiffs' money, arguing that although he was running a "purported investment advisor business," Barry "fail[ed] to invest the funds in securities" as promised. (*Id.* ¶¶ 281–282.) Fourth, the cause of action for unjust enrichment alleges that Defendants received "benefits that each [D]efendant acquired *only as a result of* perpetuating and participating in the Barry[] Ponzi scheme." (*Id.* ¶¶ 293 (emphasis added).) Fifth, in support of their cause of action for common law negligence, Plaintiffs allege that Defendants were negligent "in allowing Barry[] to breach [his] fiduciary obligations to Plaintiffs, convert Plaintiffs' funds, and commit a fraud on the Plaintiffs." (*Id.* ¶¶ 317.)

Furthermore, all causes of action in this case turn on the allegation that Defendants' conduct facilitated and enabled that fraud. The Complaint alleges that Defendants knew of Barry's fraud, failed to disclose the fraud and otherwise helped Barry's fraudulent scheme to succeed. Plaintiffs allege that "[D]efendants knew that the transaction activity in [] Barry['s] accounts could not have been linked to a legitimate business purpose and this fact should have been flagged by each [D]efendant's personnel and its automated monitoring system," (*id.* ¶ 113), "[D]efendants knew that Barry[] was purporting to operate an investment advisory business . . . [and] saw massive outflows of money that were in no way linked to customer accounts or stock and options trading," (*id.* ¶¶ 114–15), "each of the [D]efendants knew, or at least consciously avoided knowing that Barry[] did not purchase securities but instead stole customers' money, . . . [and] knew that the inexplicable transactions taking place in the Barry[] accounts did not coincide with any legitimate securities investment," (*id.* ¶ 285), and that "[e]ach of the [D]efendants was aware that Barry[] purported to be an investment advisor who would invest customers' funds in various securities," (*id.* ¶ 272). Since Barry's alleged

misrepresentations form the basis of the fraud Defendants allegedly "facilitated and enabled," the misrepresentations are a necessary component of each of Plaintiffs' state law claims. *See Herald I*, 730 F.3d at 117–19 (finding claims of aiding and abetting fraud, civil conspiracy, aiding and abetting conversion, breach of fiduciary duty, unjust enrichment, and aiding and abetting negligence were "integrally tied to the underlying fraud" (internal quotations and citation omitted)). Each of Plaintiffs' claims against Defendants is integrally tied to Barry's underlying fraud. This is sufficient to find that each of Plaintiffs' claims rests on a material misrepresentation or omission, within the terms of SLUSA.

### 2. In connection with the purchase, sale or holding of a covered security

Plaintiffs' central argument is that where an alleged fraud relates to the fraudster's ownership of covered securities, there is no statutory "connection" between the fraud and the purchase, sale or holding of the security because the Plaintiffs did not purchase, sell, or hold covered securities. (Pl. Let. Brief 4.) Plaintiffs, quoting *Troice*, contend that a "misrepresentation or omission is not made in connection with . . . a purchase or sale of a covered security unless it is material to a decision by one or more individuals . . . to buy or sell a covered security." (Pl. Let. Brief 3 (internal quotation marks omitted)). Plaintiffs further contend that "Barry's fraud, representing to Plaintiffs that he would purchase investments, potentially including covered securities, was aimed only at obtaining money from Plaintiffs to expand and prolong his Ponzi scheme," and that Barry's misrepresentations never induced Plaintiffs to purchase, sell or hold any covered securities. (Pl. Let. Brief 4.) Plaintiffs argue that an inducement to purchase, sell or hold an "ambiguous stake in a fund that purports to traffic in 'secure' or 'safe' securities" is not sufficiently connected to covered securities. (Pl. Letter dated June 4, 2014, at 2.)

Defendants argue for a broader reading of SLUSA's "in connection with" requirement, stating that a court must look beyond the precise instruments bought and sold by the alleged defrauder. A "narrow reading of . . . [SLUSA] would . . . run contrary to SLUSA's stated purpose." (Def. Opp'n Mem. 12.) Defendants contend that the conduct of the alleged fraudster determines whether there is fraud "in connection with" covered securities and argue that there is no need for an actual purchase or sale of a security for a cause of action to come within SLUSA's reach. (*Id.* at 11–12.) According to Defendants, a causal relationship between the misrepresentation alleged and a phony purchase of securities is enough to satisfy the requirements of SLUSA — in other words, Plaintiff's allegation that Barry's promise to buy covered securities for their benefit and on their behalf induced them to give their money to Barry makes their claims appropriate for SLUSA preclusion.

The "in connection with" requirement is satisfied when an alleged fraud was "material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security . . . .'" *Herald II*, 753 F.3d at 113 (citing *Troice*, 571 U.S. at ---, 134 S. Ct. at 1066). To satisfy this requirement, it is not necessary that the securities transaction actually transpire or that the attempted purchase or sale be successful. *In re Herald, Primeo, and Thema Sec. Litig.*, No. 09-CV-0289, 2011 WL 5928952, at *8 (S.D.N.Y. Nov. 29, 2011) (citing *Dabit*, 547 U.S. at 85 and *Romano*, 609 F.3d at 521–22; *see also Herald I*, 730 F.3d at 118 ("[W]e agree with the district court that the fact that Madoff Securities may not have actually executed their pretended securities trades does not take this case outside the ambit of SLUSA") (citing *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008)); *Herald II*, 753 F.3d at 113 (denying reconsideration in light of *Troice*); *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 312 (S.D.N.Y. 2010) ("That the trades never took place does not preclude finding a

connection."). Rather, to meet the standard, the plaintiff must have "[taken], tried to take, or maintained an ownership position in the statutorily relevant securities through 'purchases' or 'sales' induced by the fraud." *Herald II*, 753 F.3d at 113 (citing *Troice*, 571 U.S. at ---, 134 S. Ct. at 1067); *Harbinger*, 2014 WL 3694991, at *2 (interpreting *Troice* to hold that the "dispositive fact" is whether a plaintiff takes, or tries to take, either a direct or indirect ownership interest in a covered security).[9]

The fact that the attempt to take an interest was done through an intermediary is not dispositive. *Herald II*, 753 F.3d at 113 (denying reconsideration of dismissal under SLUSA, noting that victims of Madoff Securities fraud had tried to take an ownership interest in covered securities through feeder funds); *Goodman v. Assetmark, Inc.*, --- F. Supp. 3d ---, ---, 2014 WL 5302962, at *5 (E.D.N.Y. Oct. 17, 2014) (denying motion for reconsideration of dismissal under SLUSA, noting "*Troice* does not stand for the broad proposition that SLUSA cannot apply whenever the defendant accused of fraud, instead of the plaintiff, was the one who purchased the covered securities.");[10] *Harbinger*, 2014 WL 3694991, at *2–3 (denying reconsideration of

---

[9] Plaintiffs concede that the "in connection with" requirement, as explained in *Troice* turns on whether a victim was "taking, trying to take, or maintaining an ownership position in covered securities through 'purchases' or 'sales' induced by the fraud." (Pl. Let. Brief 3.)

[10] Plaintiffs also argue that *Goodman* does not, and cannot, support dismissal of this action. (See Pl. Let. dated Nov. 20, 2014, Docket Entry No. 32, at 1.) Plaintiffs argue that *Goodman*, which was tiled *Goodman v. Genworth Financial Wealth Management* for the purposes of an earlier opinion in the action, was decided under a different standard, and that the facts at issue were different than those in the instance case. As an initial matter, *Goodman* involved plaintiff-investors who brought claims against registered investment advisors for violations of the Securities Exchange Act of 1934 and for breach of fiduciary duty, alleging that plaintiffs relied on defendants' misrepresentations of the role that an individual, renowned for his expertise in the investment field, played in the management of plaintiffs' investment portfolios. *Goodman v. Assetmark, Inc.*, --- F. Supp. 3d ---, ---, 2014 WL 5302962, at *1 (E.D.N.Y. Oct. 17, 2014); *see also Goodman v. Genworth Fin. Wealth Mgmt., Inc.*, 300 F.R.D. 90, 93 (E.D.N.Y. Apr. 15, 2014) (detailing factual background in memorandum and order denying class

dismissal pursuant to SLUSA, noting that that misrepresentations and omissions which induced plaintiffs to hold hedge fund investments that "conveyed an indirect ownership interest in covered securities" fall within the scope of SLUSA as determined in *Troice*); *see also Hidalgo-Velez v. San Juan Asset Mgmt., Inc.*, 758 F.3d 98, 108 (1st Cir. 2014) ("When the primary purpose of a plaintiff's purchase of an uncovered security is to reap the benefit of trading in covered securities, the SLUSA does apply."). The key is whether the plaintiff tried to take some interest, even if indirect, in a covered security as a result of the misrepresentation. *Goodman*, --- F. Supp. 3d ---, 2014 WL 5302962 at *5 n.3 ("*Herald II* confirms that even an indirect ownership interest in covered securities also triggers SLUSA.").

A brief review of recent case law sheds light on the application of the standard.

*Troice* involved several claims of plaintiff investors who purchased certificates of deposit ("CDs"), a type of debt asset not registered on any national exchange, in Stanford International Bank, part of Allen Stanford's multibillion dollar Ponzi scheme. *Troice*, 571 U.S. at ---, 134 S. Ct. at 1064. Plaintiffs were promised high fixed rates of return, premised on the expectation that Stanford International Bank would use its capital to buy "highly lucrative assets," including covered securities, for the Bank. *Id.* Essentially, the plaintiffs in *Troice* had purchased debt assets of the bank on the belief that Stanford Investment Bank would be profitable in part because it "had significant holdings in various covered securities." *Herald II*, 753 F.3d at 113 (discussing *Troice*, 571 U.S.at ---, 134 S. Ct. 1058). Instead, Stanford used money from new

---

certification). Plaintiffs in *Goodman* claimed that this misrepresentation regarding investment strategy induced them to invest with defendants. *Goodman v. Assetmark*, --- F. Supp. 3d at ---, 2014 WL 5302962, at *1. In the instant action, Plaintiffs' allegations similarly outline that Barry was holding himself out to be an investment advisor and purchasing securities for Plaintiffs' accounts. The degree of factual similarity between the cases notwithstanding, the Court finds the conclusion in *Goodman v. Assetmark* regarding the scope of *Troice* persuasive.

investors to pay old investors, and to "finance an elaborate lifestyle, and . . . speculative real estate ventures." *Troice*, 571 U.S. at ---, 134 S. Ct. at 1064. The Supreme Court concluded that the defendants failed to establish the "'connection' between the materiality of the misstatements and the statutorily required 'purchase or sale of a covered security'" because plaintiffs had "[a]t most . . . allege[d] misrepresentations about the *Bank's* ownership of covered securities — fraudulent assurances that the Bank owned, would own, or would use the victims' money to buy *for itself* shares of covered securities." *Id.* at 1071.

In the *Herald* cases, plaintiffs were victims of the Madoff Securities Ponzi scheme, wherein Madoff Securities "fraudulently induced attempted investments in covered securities" through feeder funds. *Herald II*, 753 F.3d at 113. Madoff Securities never actually executed the promised securities trades. *Id.* Plaintiffs brought a class-action suit against, *inter alia*, the banks at which Madoff Securities' accounts were held. *Herald I*, 730 F.3d at 116. The defendant banks were alleged, in sum, to have furthered Madoff's Ponzi scheme by ignoring "red flags" of fraud, funneling money to Madoff, and failing to disclose the fraud. *Id.* Prior to the Supreme Court's decision in *Troice*, the Second Circuit held that allegations of the defendant banks' aiding and abetting fraud, civil conspiracy, unjust enrichment, and other causes of action met the "in connection with" requirement because the liability of the defendant banks was predicated on the alleged assistance to Madoff Securities' Ponzi scheme, "which indisputably engaged in purported investments in covered securities on U.S. exchanges." *Id.* at 118–19. On a motion for reconsideration following *Troice*, the Second Circuit affirmed its logic and concluded that Plaintiffs, though acting through an intermediary, had "'tried to take . . . an ownership position in the statutorily relevant securities,' *i.e.*, covered securities." *Herald II*, 753 F.3d at 113. Thus, the defendants established a sufficient connection between the material misrepresentation at the

heart of the Madoff Securities fraud, and ultimate purchase of covered securities. *See id.*

Following *Troice* and *Herald II*, a judge in the Southern District of New York was presented with a similar motion for reconsideration of a 2013 decision dismissing claims as precluded by SLUSA. *Harbinger*, 2014 WL 3694991 at *1. *Harbinger* involved plaintiff-investors who held investments in a family of hedge funds, and who claimed that defendant hedge fund managers had, through misrepresentations or omissions regarding the funds' investment in a certain covered security, "induced investors to hold . . . their investments in the Harbinger funds." *Id.* The plaintiffs' investments in the hedge funds, which provided them with an indirect interest in covered securities, nonetheless reflected plaintiffs' intent to have some personal ownership interest in the covered securities. *Id.* at *4. "In short," the court found that "*Herald II* affirms that *Herald I* remains binding precedent," and denied plaintiffs' motion for reconsideration on the issue. *Id.*

In light of these recent clarifications in the law, the misrepresentations and omissions alleged by Plaintiffs in the instant action are more than sufficient to satisfy SLUSA's requirement that Plaintiffs allege a "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." On the face of the Complaint, Plaintiffs allege that "Barry, operating through Leverage, made a number of misrepresentations to induce investors to invest in or to maintain their investments with Leverage. For example, Barry falsely represented that he would use the investors' funds to trade in options or other securities," and that "he would trade securities for the benefit of Leverage investors." (Compl. ¶¶ 91, 93.) Plaintiffs state that Barry's alleged Ponzi scheme was designed such that "money [was] deposited by each bank's customer into each account to purportedly buy and sell securities." (*Id.* ¶ 1.) They allege that Barry promised "investment returns" to each investor, and

was otherwise "operating a legitimate investment business." (*Id.* ¶¶ 95–96.) He "routinely fabricated quarterly statements for investors that reported lofty investment performance. (*Id.* ¶ 94.) Each of these allegations is repeated and realleged in support of each cause of action. (*Id.* ¶¶ 244, 255, 267, 280, 292, 298, 314.)

In addition to these general allegations, Plaintiffs make additional allegations in support of each claim which relate to Barry's purported investment advisory business and false promises to trade in covered securities. First, to support a cause of action for knowing participation in a breach of trust, Plaintiffs allege that Barry owed Plaintiffs a fiduciary duty because he was "purporting to act as an investment advisor" and "purporting to operate an investment advisory business." (Compl. ¶ 246.) Similarly, in support of their cause of action for aiding and abetting breach of fiduciary duty, Plaintiffs allege that Barry had "various agreements with customers, [in which Barry] agreed to take customers' money and invest it in securities. . . . [Barry] purported to be an investment advisor who would invest customers' funds in various securities." (*Id.* ¶¶ 271–72.) Third, to support the cause of action for aiding and abetting fraud, Plaintiffs allege that "Barry told customers that their money would be invested in securities . . . but instead, Barry stole the money and did not purchase securities as he claimed." (*Id.* ¶ 259.) Fourth, in support of the cause of action for aiding and abetting conversion, Barry's alleged conversion is premised on the fact that he "fail[ed] to invest [customers'] funds in securities" as promised. (*Id.* ¶ 282.) The fifth, sixth, and seven causes of action, for unjust enrichment, fraud on the regulator and negligence, respectively, all refer back to Barry's "misconduct," "illegal activity," and breach of fiduciary duty as detailed above. (*Id.* ¶¶ 296, 302, 317.) Furthermore, documents outside the Complaint reinforce these allegations. The marketing materials sent to Leverage investors clearly indicated that the funds produced annual returns ranging from 12.55% to 21%, based on a

strategy of trading in exchange-based options for the group.  (Leverage Group Marketing Materials, annexed to Def. Opp'n Mem. as Ex. E, at ECF No. 2–3.)  In contrast to *Troice*, Plaintiffs in the instant action allege that Barry purported to be an investment advisor who executed transactions in covered securities *on behalf of Plaintiffs* in discretionary investment accounts set up at Leverage.  (*See, e.g.*, Compl. ¶¶ 114–15, 272–73, 285.)  The fraud alleged by Plaintiffs turns on the fact that Plaintiffs were induced to buy into the fund on the premise that their accounts, albeit accounts that were held through Leverage, would directly benefit from the purchase of covered securities, based on the performance of those investments.

Plaintiffs argue that the court's opinion in *In re Tremont Securities Law, State Law, and Insurance Litigation*, No. 08-CV-11117, 2014 WL 1465713 (S.D.N.Y. April 14, 2014) should persuade the Court otherwise.  (Pl. Letter dated Nov. 20, 2014, Docket Entry No. 32, at 2.) *Tremont* involved plaintiffs who purchased limited partnership interests in funds, which funds entrusted plaintiffs' capital, in part, to Bernard Madoff's brokerage firm.  The complaints alleged violations of Florida state law, premised on allegations that the defendants, the limited partnerships which entrusted their capital to Madoff Securities, had made representations about the quality of the investment strategies the funds would employ.  *Tremont*, 2014 WL 1465713, at *1.  Similar to the analysis in *Herald*, the court in *Tremont* noted that "the crucial issue [is] about whether plaintiffs' [*sic*] had 'an ownership interest' in a 'covered security' . . . ."  *Id.* at *3. However, unlike those in *Herald*, the court determined that the plaintiffs in *Tremont* intended only to purchase an interest in a limited partnership which subsequently invested some of its total capital to purchase covered securities for itself.  *Id.*  The focus of the allegations in *Tremont* related to "acquiring a limited partnership interest," similar to the allegations in *Troice*.  *Id.* Thus, the court declined to apply *Herald I*.  Here, however, Plaintiff's allegations are closer to

those in *Herald*, in that the allegations are focused on the falsely promised securities purchases and the return premised on securities bought for Plaintiffs' benefit.  Furthermore, *Tremont* did not have the benefit of the Second Circuit's clarifying decision in *Herald II*, which affirms the decision of *Herald I* in light of *Troice*.  Thus, the Court declines to rely primarily on *Tremont* as Plaintiffs urge.

In support of the motion to remand, Plaintiffs argue that "Barry's fraudulent scheme would have been successful without the representations about Leverage's alleged transactions in any covered securities," and that Plaintiffs were truly induced to invest in the scheme by the guaranteed rate of return, not the promise that the return would be premised on securities investments.  (Pl. Mem. 19.)  Plaintiffs also now argue that the victims were promised "a stake in the whole — like a CD — with a guaranteed return."  (Plaintiff Letter Brief dated June 4, 2014, Docket Entry No. 30, at 4.)  In support of the motion to remand, Plaintiffs attempt to shoehorn their allegations into an entirely different factual pattern, arguing that Barry was merely operating a bank and not trading on behalf of depositors.  (Declaration of Nicholas Timko in Support of Motion to Remand ("Timko Decl."), annexed to Pl. Mot. to Remand, Docket Entry No. 17, ¶¶ 7–12.)

Plaintiffs' hypothetical situation and post-hoc characterization of Barry's fraud contradict Plaintiffs' initial allegations and the facts before the Court.  The Second Circuit has "employed a functional approach" in determining whether the purpose of a plaintiff's investment is to take an interest in a covered security.  *See Harbinger*, 2014 WL 3694991, at *3 (citing *Herald II*, 753 F.3d at 113).  Despite Plaintiffs' current assertions that their investments were similar to the certificates of deposit found too remote from the purchase of a covered security in *Troice*, it is clear from the face of Plaintiffs' Complaint that this action was brought on a premise more

similar to the facts in *Herald*, and that Plaintiffs themselves sought to take an interest in covered securities through individual investment accounts managed by Barry.  With the Second Circuit's affirmance in *Herald II*, *Herald I* remains good law and thus controls this case.  While the Court notes that at least some of the quarterly statements issued to Plaintiffs by Leverage did not list specific securities purchased or sold, (*see generally* Account Statements, annexed to Timko Decl. as Ex. 3), the allegations in the Complaint make clear that Plaintiffs, acting through Barry, "tried to take . . . an ownership position in the statutorily relevant securities."  *See Herald II*, 753 F.3d at 113.  Plaintiff's papers in support of their motion to remand explicitly contradict Plaintiffs' theory that their investments were like certificates of deposit.  (Pl. Reply Mem. 4–5 (noting that Leverage had promised variable returns and that Barry had falsely promised to segregate accounts for investors).)  Furthermore, Plaintiffs' speculation that Barry's scheme would have succeeded without reference to covered securities has no bearing on the issue before the Court.  Plaintiffs allege in the Complaint that Barry did promise to purchase covered securities, and did induce Plaintiffs to invest with the promise that he would purchase covered securities on their behalf and for their benefit.

Plaintiffs also assert that Defendants' alleged facilitation of Barry's fraud was not "in connection with" the purchase, sale or holding of covered securities, because the alleged conduct of Defendants did not "coincide" with the purchase, sale, or holding of a covered security.  (Pl. Mem. 21–23.)  Plaintiffs concede that several of the seven causes of action sound in fraud, because "fraud is an integral part of the conduct on the part of Barry that gives rise to the claim." (Pl. Mem. 22.)  However, Plaintiffs focus on the conduct of the *Defendants*, arguing that Defendants' conduct is too far removed from any securities transaction to be "in connection with" any such transaction.  (Pl. Mem. 23.)  Because Defendants have only shown that *Barry's*

fraud may be in connection with the purchase or sale of a security, which Plaintiffs dispute, and not Defendants' own actions, Plaintiffs argue that the "in connection with" requirement cannot be met.[11]

A defendant's conduct need not be the fraud which induced a plaintiff to sell or purchase a covered security in order to satisfy the "in connection with" requirement when removal is based on allegations of misrepresentations or omissions in connection with a covered security. *See Herald II*, 753 F.3d at 113 (affirming dismissal of claims against defendant banks alleged to have been involved with the fraudulent securities transactions of Madoff Securities); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 430 (S.D.N.Y. 2010) ("[The] [p]laintiffs allege false and misleading statements and omissions regarding '[d]efendants' due diligence and monitoring of Madoff and [Madoff Securities],' including 'the performance and feasibility of Madoff's purported trading strategy' utilizing indisputably covered securities. These allegations are sufficient to meet SLUSA's broad requirement of a misrepresentation or omission in connection with the purchase or sale of a covered security."). Where a complaint has been crafted so that the liability of the defendant bank is predicated on the defendant banks' relationship with, and alleged assistance to, a fraudster, the inquiry turns on the fraudster's conduct in inducing the plaintiff to buy or sell securities, and the defendant bank's alleged assistance to the defrauder in furthering that fraudulent scheme. *See Herald*, 2011 WL 5928952, at *8 (holding that

---

[11] In their opening brief, Plaintiffs concede that

> [T]he misrepresentation or omission at issue need not in all instances be made by the defendants for SLUSA to preempt the claim. In the case of an aiding and abetting claim, where the underlying conduct that was aided or abetted sounds in fraud, it might be sufficient for the misrepresentation or omission at issue to have been made by the person aided and abetted by defendant.

(Pl. Mem. 19.) Given that Plaintiffs appear to argue that *Troice* changes the legal landscape as to this issue, the Court will address their later argument despite this concession.

allegations regarding defendant banks' knowledge of Madoff Securities' fraud, decision to ignore that fraud, and failure to fulfill federal obligations to monitor accounts, *inter alia*, met the "in connection with" requirement); *Beacon*, 745 F. Supp. 2d at 430 (dismissing, pursuant to SLUSA, state law claims predicated on omissions regarding "[d]efendants' due diligence and monitoring of Madoff and [Madoff Securities]"); *Newman*, 748 F. Supp. 2d at 313 ("Plaintiffs allege misrepresentations . . . regarding due diligence, monitoring of investments, and investment strategies [of Madoff's Ponzi scheme] utilizing indisputably covered securities. These allegations are sufficient to meet SLUSA's broad requirement of a misrepresentation or omission in connection with the purchase or sale of a covered security."), *aff'd*, 530 F. App'x 21 (2d Cir. 2013).

Here, the allegations in the Complaint are sufficient to satisfy the "in connection with" requirement, just as the allegations in *Herald*, *Beacon* and *Newman* did. For the reasons discussed above, the allegations centered around Defendants' assistance and furtherance of Barry's fraud satisfies the "misrepresentation or omission" requirement, and the allegations connecting that fraud to covered securities are sufficient to meet the "in connection with" requirement.

Thus, for all the reasons discussed above, the Court finds the "in connection with" requirement met.

### III. Conclusion

As each of the requirements of SLUSA has been met for each cause of action, the

Complaint was properly removed to this Court.[12]  For the foregoing reasons, the Court denies

Plaintiffs' motion to remand and dismisses the Complaint in its entirety.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: February 6, 2015
      Brooklyn, New York

---

[12]  Because the Court has determined that this action falls within the scope of SLUSA, the Court declines to reach the merits of Plaintiffs' alternative argument in support of remand, namely, that there are no other statutory bases for removal.